Maurice B. VerStandig, Esq.
Bar No. MD18071
Christianna A. Cathcart, Esq.
Bar No. ND0008
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 991-1101
mac@mbvesq.com
christianna@dcbankruptcy.com
*Proposed Counsel for the Debtors*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 26-464-ELG |
| | ) | (Chapter 11) |
| Synergy Reorg, LLC.[1] | ) | |
| | ) | |
| Debtors. | ) | Joint Administration Motion Pending |

**MOTION TO APPROVE COMPROMISE WITH JACK ROSS**

Come now Synergy Reorg, LLC.; Synergy CHC Corp.; Synergy CHC Inc.; Hand MD Corp.; Synergy CHC Mexico; and NomadChoice Pty, Ltd. (collectively, the "Debtors"), by and through undersigned proposed counsel, pursuant to Federal Rule of Bankruptcy Procedure 9019, and moves to approve a compromise of any claims held against Jack Ross ("Mr. Ross"), and in support thereof states as follows:

## I. Introduction

The Debtors transparently look to use the chapter 11 process to efficiently liquidate for the benefit of all creditors and stakeholders. For proud entities that serve as custodians of two preeminent brands on store shelves the world over, such is neither easy nor welcome. But, faced

[1] The Debtors in these cases are Synergy Reorg, LLC.; Synergy CHC Corp.; Synergy CHC Inc.; Hand MD Corp.; Synergy CHC Mexico; and NomadChoice Pty, Ltd.

with the loss of a major retail partnership, the loss of funds to a merchant cash advance ("MCA") entity, and the escalating collection efforts of its senior secured creditor, the Debtors have arrived at this juncture nonetheless.

To aide in the funding of these cases with monies not subject to any creditor's lien, *see* 11 U.S.C. § 552, and to ensure the ongoing cooperation of a chief executive whose institutional knowledge is critical to the success of this process, the Debtors propose to settle with that executive: Jack Ross ("Mr. Ross"). Insofar as the Debtors do *not* have director and officer ("D&O") insurance, such a settlement is particularly important to securing the ongoing cooperation of Mr. Ross during the chapter 11 process while providing certainty with respect to potential claims against him that might otherwise distract from the Debtors' restructuring efforts.

Critically, the potential claims being resolved through this compromise were subject to a detailed pre-petition review and assessment by the Debtors' chief restructuring officer, Lauren P. Berret of Eisner Advisory Group LLC ("Ms. Berret"). She was given every book and record she requested and offered answers to her questions. She poured through transaction after transaction, with the aid of the materials furnished and those already available on account of Synergy CHC Corp. ("SCC") being a NASDAQ-traded entity. And what she found was, generally speaking, the typical activities of a chief executive whose compensation is board-approved and whose use of company credit cards is subject to periodic reconciliations and true ups.

While there may be some *de minimis* claim to be maintained, such is not one the Debtors would bring for the simple reason that the costs of suit would far outweigh the potential upsides of success therein. And, even then, the odds of success appear slimmer-than-desirable. Ms. Berret believes the proposed compromise represents a reasonable resolution under the circumstances, knowing it will help fund these cases, knowing no genuine rights are being bartered away, and

knowing Mr. Ross' release is coterminous with his having been forthcoming during the pre-petition investigation (as any withheld material information would invite recission of the proposed agreement).

**II. Agreement Terms**

A copy of the parties' proposed agreement (the "Agreement") is attached hereto as Exhibit A. While the terms thereof shall control over the summary set forth herein, the Debtors believe the following provisions pertinent to share:

i. Within three (3) business days of the entry of an order granting this motion, Mr. Ross will pay to the bankruptcy estate of SCC the sum of One Hundred Thousand Dollars and No Cents ($100,000.00), in the lawful currency of the United States (the "Settlement Sum"), via wire, certified funds, or other immediately available monies;

ii. Upon receipt of the Settlement Sum, the Debtors will be deemed to have released Mr. Ross from any claims sounding in law or equity, from the beginning of time through the present, subject to the caveat below;

iii. Should Mr. Ross be found to have withheld any material information from Ms. Berret, during her pre-petition investigation correlative to entry into the Agreement, the Debtors will have the right (but not the obligation) to seek recission of the Agreement.

**III. Standard**

The Federal Rules of Bankruptcy Procedure specifically provide for the approval of compromises and settlements upon a motion and hearing:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

The United States District Court for the District of Columbia has previously set forth the criteria by which a motion under Federal Rule of Bankruptcy Procedure 9019 is to be evaluated:

> . . . a bankruptcy judge "need not hold a mini-trial or write an extensive opinion every time he approves or disapproves a settlement." While neither the Bankruptcy Code nor Bankruptcy Rule 9019 offers guidance as to the criteria a bankruptcy court applies in evaluating a proposed settlement, the parties generally agree that, following the principles of *TMT Trailer Ferry*, the bankruptcy court should consider: (1) probability of success in the litigation; (2) difficulties, if any, with collection; (3) the complexity of the litigation, including the expense, inconvenience and delay attendant to the litigation; and (4) the interest of creditors.

*Advantage Healthplan, Inc. v. Potter*, 391 B.R. 521, 554 (D. D.C. 2008), aff'd sub nom. *Greater Se. Cmty. Hosp. Found., Inc. v. Potter*, 586 F.3d 1 (D.C. Cir. 2009) (quoting *In re Fishell*, 47 F.3d 1168 (6th Cir.1995); citing *Southern Med. Arts Companies, Inc.*, 343 B.R. 250, 256 (10th Cir. BAP 2006); *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 425 (1968)).

## IV. Argument: The Agreement Merits Approval

The Agreement promotes the best interests of the Debtors' estates, allows for these cases to be quickly funded with post-petition monies not subject to any creditor's lien, resolves any issues that may arise through Mr. Ross seeking indemnity from one or more of the Debtors (which do *not* have D&O insurance), and meaningfully advances the interests of justice. There is an enduring belief Mr. Ross' actions have been well within the normative scope of the executive of a publicly traded entity. But the absence of insurance, coupled with the reckless aggression of at least one creditor, has created a prism whereby Mr. Ross is incentivized to nonetheless pay valuable funds as and for a release. The Debtors would be remiss to not seize upon this opportunity.

Considering the first *Advantage Healthplan* element, likelihood of success on the merits is genuinely low. There are two varieties of claims that could be brought against Mr. Ross: those related to his compensation and those related to his fiduciary actions. Yet his compensation

(including his bonus) was always approved by the board of directors of a publicly traded entity, in open sunlight for the world to see. And there does not exist any cogent suggestion he failed his fiduciary charge; these cases are precipitated by the loss of shelf space at a national retailer and increasingly aggressive actions of a senior secured lender, not the errors or omissions of an executive.

To be sure, Ms. Berret has poured through Mr. Ross' compensation records. She has also reviewed—in detail—his use of company credit cards and the corporate payment of his various expenses. There may be room to quibble over minor items here and there. But such items are uniformly *de minimis* in nature, relative to the funds involved and the size of these cases. And it is difficult to posit such *de minimis* quibbles would warrant the expenditure of legal fees on litigation.

In consideration of the difficulties with collecting, the absence of D&O insurance is a significant consideration. There is no pool of money to be easily accessed through the presentation of flimsy claims against an insured party. And the finances of Mr. Ross are largely unknown and have not formed a material portion of Ms. Berret's business judgment in entering into the Agreement. Collection is always a finicky and difficult task, however, and there is no reason to believe that, even if favorable judgment were entered, Mr. Ross would simply cut a check for the full sum thereof.

The third consideration is complexity of any ensuing litigation. Trying to recover compensation from the chief executive of a publicly traded company, when that compensation was already approved by the board of directors, would be enormously difficult. For there to be any cognizable chance of success on the merits, the claims would need to be horrendously complex so as to end-run the protections baked into executive compensation in the first instance. And any claims pegged to a failure of fiduciary care would need to be equally complex, especially given

that Mr. Ross has largely allowed his helm of the Debtors to command the nearly every waking hour of his care and attention for years on end. Mr. Ross (with the aid of others, including a proud Mainer) built these companies and made them the titans they are; suggesting he then neglected the entities is simply not plausible.

Finally, the Agreement is clearly consistent with the best interests of creditors. While not the largest financial sum to grace the docket of this Honorable Court, $100,000.00 does denote valuable consideration that will fund these cases and allow for the meaningful operation of the Debtors' ongoing businesses *and* the pursuit of chapter 5 claims against the aforesaid MCA entity. By reaching an expedient and efficient resolution, the parties have largely guarded against the ongoing accrual of legal fees that would eat into the Settlement Sum in an outsized fashion. Pushing ahead with litigation, by contrast, would not only take an undetermined quotient of time but, too, would invariably invite a demand for indemnity, throw these cases into unfettered chaos, distract from the process of an orderly liquidation, and deprive the Debtors of monies needed to advance these cases.

## V. Conclusion

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) approve the Agreement; and (ii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

Respectfully submitted,

Dated: September 7, 2026 By: /s/ Maurice B. VerStandig

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 991-1101
mac@mbvesq.com

Christianna A. Cathcart, Esq.
Bar No. ND0008
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 655-2066
christianna@dcbankruptcy.com
*Proposed Counsel for the Debtors*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of September, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig