Maurice B. VerStandig, Esq.
Bar No. MD18071
Christianna A. Cathcart, Esq.
Bar No. ND0008
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 991-1101
mac@mbvesq.com
christianna@dcbankruptcy.com
*Proposed Counsel for the Debtors*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 26-465-ELG |
| | ) | (Chapter 11) |
| Synergy CHC Corp.[1] | ) | |
| | ) | |
| Debtors. | ) | Jointly Administered |

**MOTION TO ABANDON ENCUMBERED ASSETS**

Come now the debtors in the above-referenced cases (the "Debtors"), by and through undersigned proposed counsel, pursuant to section 554 of title 11 of the United States Code, and move to abandon all assets of the Debtors' estates subject to the perfected liens of ACP Agency, LLC and/or Acme Credit Partners, LLC (collectively, "Acme"), and in support thereof state as follows:

## I. Introduction

As has now become quite apparent, Acme opposes—zealously—any use of its cash collateral to support the ongoing operation of the Debtors' businesses, any liquidation of the Debtors' assets, or the maintenance of these bankruptcy cases. Such is deeply unfortunate for

[1] The Debtors in these cases are Synergy Reorg, LLC.; Synergy CHC Corp.; Synergy CHC Inc.; Hand MD Corp.; Synergy CHC Mexico; and NomadChoice Pty, Ltd.

myriad reasons. But if the Debtors are not to be afforded the use of Acme's cash collateral, the Debtors assuredly are not in a position to continue as stewards and custodians of Acme's non-cash collateral. And the Debtors thusly now ask that all assets of their estates, subject to the perfected liens of Acme, be immediately abandoned so the estates are no longer burdened by the costs of storing, insuring, and overseeing such collateral.

Permitting such abandonment will permit the Debtors to focus on assets not subject to Acme's liens (of which they are several), will streamline these cases, and will ultimately promote the efficient administration of these cases.

## II. Delineation of Assets

For want of ambiguity, certain assets of the Debtors are subject to Acme's liens and certain assets of the Debtors are not subject to Acme's liens. The assets subject to Acme's liens—and for which abandonment is herein sought—are as follows:

1. Banc of California accounts of the Debtors (which are subject to account control agreements and thereby encumbered by properly perfected liens, *see* Nev. Rev. Stat. § 104.9104; Nev. Rev. Stat. § 104.9312; Nev. Rev. Stat. § 104.9314);

2. Inventory located in the United States (which is subject to a perfected lien filed in the State of Nevada, *see* Nev. Rev. Stat. § 104.9310);

3. Inventory located in Canada (which is subject to the Canadian security agreement appended hereto as Exhibit A, the perfection of which the Debtors do not dispute for purposes of this motion);

4. Intellectual property rights in the United States and Canada (which are the subject of the security agreements attached hereto as Exhibits B and C);[2] and

5. Accounts receivable of the Debtors, *see* Nev. Rev. Stat. § 104.9315, *except* for Synergy CHC Mexico (for which no lien on underlying inventory exists in the first instance, *see* § II(8), *infra*).

The assets the Debtors posit to *not* be subject to Acme's liens—and for which abandonment is *not* herein sought unless this Honorable Court finds liens to be properly perfected and enforceable under the laws of pertinent jurisdictions—are as follows:[3]

6. TD Bank accounts (with no account control agreements being in place for these accounts, *see* Nev. Rev. Stat. § 104.9104; Nev. Rev. Stat. § 104.9312; Nev. Rev. Stat. § 104.9314);

7. Paypal accounts (also lacking account control agreements and being of *de minimis* value in any event);

8. Inventory located in Mexico (for which no security agreement—cognizable under Mexican law—exists, and which belongs to Synergy CHC Mexico, an entity without any secured creditors);

9. Intellectual property rights granted by any country other than the United States and Canada (for which no security agreement—cognizable under pertinent law—exists and for which no actions toward perfection have occurred in any event); and

[2] There is some question as to whether or not a third party holds senior rights in connection with one or more of the Debtors' Canadian marks. This is an issue that can be determined between Acme and that party, should that third party elect to assert any rights.

[3] To the extent there is any dispute over the encumbrance of assets the Debtors maintain to not be subject to a perfected lien, such can be addressed through subsequent motions practice—whether when the Debtors seek to sell such assets or, if appropriate, sooner. The Debtors do not herein seek a finding as to the unencumbered nature of these assets.

10. Causes of action arising—or properly pursuable—under chapter 5 of title 11 of the United States Code (which are, innately, not subject to pre-petition creditor liens).

## III. Standard

Familiarly, "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). *See also* 11 U.S.C. § 1107(a) (providing a debtor-in-possession with the rights of a trustee).

As observed by a sister court: "Courts apply the business judgment standard to a trustee's decision to abandon estate property. To meet that burden, the trustee 'need only demonstrate that he has exercised sound business judgment in making the determination to abandon.'" *In re Ditech Holding Corp*., 2023 Bankr. LEXIS 1363, at *22 (Bankr. S.D.N.Y. May 24, 2023) (citing *In re Cult Awareness Network, Inc.*, 205 B.R. 575, 579 (Bankr. N.D. Ill. 1997); *In re Slack*, 290 B.R. 282, 284 (Bankr. D.N.J. 2003). *See also Church Joint Venture, L.P. v. Bedwell (In re Blasingame)*, 598 B.R. 864, 871 (B.A.P. 6th Cir. 2019) (accord).

## IV. Argument: Abandonment is Appropriate

Transparently, the Debtors herein seek to abandon fully encumbered assets that are subject to the oversized lien of a creditor that is not consenting to the use of cash collateral. The underlying analysis is accordingly quite simple in nature: the Debtors' estates do not appear prone to realize any benefit from liquidating or using these assets and, as such, ought not be burdened by the ongoing expense of storing, insuring, and otherwise preserving these assets. If the lienholder was willing to permit its cash collateral to be expended on the upkeep and orderly liquidation of these

assets, such would be one thing; absent such consent or permission from this Honorable Court, however, the encumbered assets are "burdensome to the estate," 11 U.S.C. § 554(a).[4]

Even those assets with no cognizable maintenance cost (i.e., bank accounts) are burdensome to the estates, insofar as their ongoing maintenance will require the expenditure of resources addressing concerns raised by the US Trustee about accounts outside that program's depository program. This might be a minimal burden, since the Debtors will continue to address such issues in connection with unencumbered accounts (i.e., those at TD Bank), but the Debtors also see little benefit to expending future time responding to issues with encumbered depository accounts that are "of inconsequential value and benefit to the estate," 11 U.S.C. 554(a).

Moreover, by shedding these properly-liened assets, the Debtors create a prism whereby there now exist only unsecured creditors. Such not only simplifies the chapter 11 process but, with

---

[4] [4] The Debtors in these cases are Synergy Reorg, LLC.; Synergy CHC Corp.; Synergy CHC Inc.; Hand MD Corp.; Synergy CHC Mexico; and NomadChoice Pty, Ltd.

[4] The Debtors still believe cash collateral use ought to be allowed whilst respectfully disagreeing with this Honorable Court's ruling thereupon. There does exist precedent for adequate protection to be premised on a lien on litigation proceeds, s*ee In re Gosnell Dev. Corp*., 221 B.R. 776, 777 n.1 (Bankr. D. Ariz. 1998) ("The Court previously ordered that Reppel be given a replacement lien against any recovery by the estate in certain other litigation as adequate protection of its purported lien, pending resolution of this claim objection."). *Cf. Official Comm. of Unsecured Creditors of Qualitech Steel Corp. v. Bank Grp. (In re Qualitech Steel Corp.)*, 2001 U.S. Dist. LEXIS 11768, at *10 (S.D. Ind. July 5, 2001) (addressing a case where adequate protection took the form of a replacement lien and avoidance actions were "the only post-petition asset of significant value").

reduced asset heft, allows the Debtors to focus on efficiently liquidating unencumbered assets whilst also efficiently pursuing litigation claims against third parties.[5]

It is assuredly a sound exercise of business judgment to dispose of assets for which the Debtors' estates can realize no benefit, while retaining only those assets for which a benefit may be realized. Such is neither fanciful nor complex. And, most importantly, this arrangement is also the only logical and sensible mechanism of heeding this Honorable Court's ruling on cash collateral utilization, *vel non*, while acting to ensure these estates remain tightly guided and efficiently administered for the benefit of all creditors.

## V. Conclusion

WHEREFORE, the Debtors respectfully pray this Honorable Court (i) permit the Debtors to abandon—and deem abandoned—those assets delineated in §II(1-5), *supra*; and (ii) afford such other and further relief as may be just and proper.

*[Signature and Certificate of Service on Following Page]*

---

[5] The burden will now shift to Acme to properly liquidate abandoned assets. While the Debtors do not anticipate opposing an appropriate motion for stay relief to proceed with one or more UCC sales, the Debtors also note that it will be Acme's obligation to hold such sales and to comply with the underlying sales processes. *See, e.g.*, 5 Collier on Bankruptcy P 554.02 ("Abandonment should not be considered a judicial sale of the property. Therefore, when property is subject to a security interest, abandonment does not take the place of a proper foreclosure sale. Even if the secured party is given possession, it will still have to comply with any nonbankruptcy law requirements for sale.") (citing U.C.C. Revised §§ 9-610–9-624).

Respectfully submitted,

Dated: September 14, 2026 By: /s/ Maurice B. VerStandig

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 991-1101
mac@mbvesq.com

Christianna A. Cathcart, Esq.
Bar No. ND0008
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 655-2066
christianna@dcbankruptcy.com
*Proposed Counsel for the Debtors*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of September, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein and with copies also being sent to all parties on the master service list, ECF No. 32, who have an e-mail address listed thereupon (except where such party is already receiving notice via CM/ECF).

/s/ Maurice B. VerStandig
Maurice B. VerStandig