**EXECUTION VERSION**

# CANADIAN TRADEMARK SECURITY AGREEMENT

This **CANADIAN TRADEMARK SECURITY AGREEMENT** (this "Canadian Trademark Security Agreement") is made as of May 30, 2025 by and among the Grantors listed on the signature pages hereof (collectively, jointly and severally, "Grantors" and each individually "Grantor"), and **ACP AGENCY, LLC** ("ACP"), in its capacity as collateral agent for the lenders (collectively, the "Lender") party to the Credit Agreement (as hereinafter defined) (in such capacity, together with its successors and assigns in such capacity, if any, the "Collateral Agent").

W I T N E S S E T H:

WHEREAS, ACP, in its capacities as the administrative agent for the Lender (in such capacity, together with its successors and assigns in such capacity, if any, the "Administrative Agent") and as the Collateral Agent and the Lender have agreed to make certain financial accommodations available to *inter alios* the Grantors from time to time pursuant to the terms and conditions of the Credit Agreement, dated of even date herewith, by and among the Administrative Agent, the Collateral Agent, the Lender, the Grantors and the other loan parties party thereto (as amended, restated, supplemented, or otherwise modified from time to time, the "Credit Agreement");

WHEREAS, in order to induce the Administrative Agent, the Collateral Agent and the Lender to enter into the Credit Agreement and to provide financial accommodations to *inter alios* the Grantors as set forth therein, the Grantors have agreed to execute and deliver to the Collateral Agent the Canadian Security Agreement, dated as of the date hereof (as amended, restated, supplemented, or otherwise modified from time to time, the "Security Agreement"); and

WHEREAS, pursuant to the Security Agreement, Grantors are required to execute and deliver this Canadian Trademark Security Agreement to the Collateral Agent, for the benefit of the Secured Parties.

NOW, THEREFORE, for and in consideration of the recitals made above and other good and valuable consideration,

1. DEFINED TERMS. All initially capitalized terms used but not otherwise defined herein have the meanings given to them in the Security Agreement or, if not defined therein, in the Credit Agreement, and this Canadian Trademark Security Agreement shall be subject to the rules of construction set forth in Sections 1.2 and 1.4 of the Security Agreement, which rules of construction are incorporated herein by this reference, *mutatis mutandis*.

2. GRANT OF SECURITY INTEREST IN TRADEMARK COLLATERAL. Each Grantor hereby unconditionally grants, assigns, and pledges to the Collateral Agent, for the benefit of the Secured Parties, to secure the Secured Obligations, a continuing security interest (referred to in this Canadian Trademark Security Agreement as the "Security Interest") in all of such Grantor's right, title and interest in and to the following, whether now owned or hereafter acquired or arising (collectively, the "Trademark Collateral"):

(a) (i) all of its Trademarks to which it is a party including those referred to on Schedule I, (ii) all renewals thereof, (iii) all income, royalties, damages and payments now and hereafter due or payable under and with respect thereto, including payments under all licenses entered into in connection therewith and damages and payments for past or future infringements or dilutions thereof, (iv) the right to sue for past, present and future infringements and dilutions thereof, (v) the goodwill of each Grantor's business symbolized by the foregoing or connected therewith, and (vi) all of each Grantor's rights corresponding thereto throughout the world; and

(b) all products and proceeds (as that term is defined in the PPSA) of the foregoing, including any claim by such Grantor against third parties for past, present or future (i) infringement or dilution of any Trademark or any Trademarks exclusively licensed under any Intellectual Property License, including right to receive any damages, (ii) injury to the goodwill associated with any Trademark, or (iii) right to receive license fees, royalties, and other compensation under any Intellectual Property License related to Trademarks.

3. SECURITY FOR SECURED OBLIGATIONS. This Canadian Trademark Security Agreement and the Security Interest created hereby secures the payment and performance of the Secured Obligations, whether now existing or arising hereafter. Without limiting the generality of the foregoing, this Canadian Trademark Security Agreement secures the payment of all amounts which constitute part of the Secured Obligations and would be owed by Grantors, or any of them to the Secured Parties, whether or not they are unenforceable or not allowable due to the existence of an Insolvency Proceeding involving any Grantor.

4. SECURITY AGREEMENT. The Security Interest granted pursuant to this Canadian Trademark Security Agreement is granted in conjunction with the security interests granted to the Collateral Agent, pursuant to the Security Agreement. Each Grantor hereby acknowledges and affirms that the rights and remedies of the Collateral Agent with respect to the Security Interest in the Trademark Collateral made and granted hereby are more fully set forth in the Security Agreement, the terms and provisions of which are incorporated by reference herein as if fully set forth herein. To the extent there is any inconsistency between this Canadian Trademark Security Agreement and the Security Agreement, the Security Agreement shall control.

5. AUTHORIZATION TO SUPPLEMENT. If any Grantor shall obtain rights to any new trademarks, the provisions of this Canadian Trademark Security Agreement shall automatically apply thereto. Grantors shall give prompt notice in writing to the Collateral Agent with respect to any such new trademarks or renewal or extension of any trademark registration. Without limiting Grantors' obligations under this Section, Grantors hereby authorize the Collateral Agent unilaterally to modify this Canadian Trademark Security Agreement by amending Schedule I to include any such new trademark rights of each Grantor. Notwithstanding the foregoing, no failure to so modify this Canadian Trademark Security Agreement or amend Schedule I shall in any way affect, invalidate or detract from the Collateral Agent's continuing security interest in all Collateral, whether or not listed on Schedule I.

6. COUNTERPARTS. This Canadian Trademark Security Agreement is a Loan Document. This Canadian Trademark Security Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, taken together, shall constitute but one and the same Canadian Trademark Security Agreement. Execution of any such counterpart may be by means of (a) an electronic signature that complies with the Electronic Transactions Act, as in effect from time to time, or any other relevant and applicable electronic signatures law; (b) an original manual signature; or (c) a faxed, scanned, or photocopied manual signature. Each electronic signature or faxed, scanned, or photocopied manual signature shall for all purposes have the same validity, legal effect, and admissibility in evidence as an original manual signature. Any party delivering an executed counterpart of this Canadian Trademark Security Agreement by faxed, scanned or photocopied manual signature shall also deliver an original manually executed counterpart, but the failure to deliver an original manually executed counterpart shall not affect the validity, enforceability and binding effect of this Canadian Trademark Security Agreement.

7. CHOICE OF LAW AND VENUE, JURY TRIAL WAIVER, AND JUDICIAL REFERENCE PROVISION. THIS CANADIAN TRADEMARK SECURITY AGREEMENT SHALL BE SUBJECT TO THE PROVISIONS REGARDING GOVERNING LAW, FORUM NON CONVENIENS, WAIVER OF

JURY TRIAL, SUBMISSIONS TO JURISDICTION AND WAIVER OF CLAIMS SET FORTH IN SECTION 8 OF THE SECURITY AGREEMENT, AND SUCH PROVISIONS ARE INCORPORATED HEREIN BY THIS REFERENCE, *MUTATIS MUTANDIS*.

[signature page follows]

IN WITNESS WHEREOF, the parties hereto have caused this Canadian Trademark Security Agreement to be executed and delivered as of the day and year first above written.

**ACCEPTED AND ACKNOWLEDGED BY:**

**COLLATERAL AGENT:**

**ACP AGENCY, LLC**

By:____________________________
Name: Peter Eschmann
Title: Authorized Person

**GRANTORS:**

**SYNERGY CHC CORP.**, a Nevada corporation

By:____________________________
Name: Jack Ross
Title: Chairman and Chief Executive Officer

IN WITNESS WHEREOF, the parties hereto have caused this Canadian Trademark Security Agreement to be executed and delivered as of the day and year first above written.

**ACCEPTED AND ACKNOWLEDGED BY:**

**COLLATERAL AGENT:**

**ACP AGENCY, LLC**

By: ______________________________
Name: Peter Eschmann
Title: Authorized Person

**GRANTORS:**

**SYNERGY CHC CORP.**, a Nevada corporation

Signed by:

By: ______________________________
CAE4FF7E52AA41F...
Name: Jack Ross
Title: Chairman and Chief Executive Officer

**SCHEDULE I**
**to**
**CANADIAN TRADEMARK SECURITY AGREEMENT**

**Trademark Registrations/Applications**

| Grantor | Mark | Application No. | Application Date | Registration No. | Registration Date |
|---|---|---|---|---|---|
| Synergy CHC Corp. | THE SYNERGY EFFECT | 1847584 | 2017-07-14 | TMA1023459 | 2019-06-04 |
| Synergy CHC Corp. | FLAT TUMMY | 1827463 | 2017-03-15 | TMA1028125 | 2019-06-18 |
| Synergy CHC Corp. | FOCUS FACTOR | 1827502 | 2017-03-15 | TMA1101412 | 2021-06-03 |
| Synergy CHC Corp. | SNEAKY VAUNT | 1811715 | 2016-11-29 | TMA1028071 | 2019-06-18 |
| Synergy CHC Corp. | BLACKOTTER | 1881477 | 2018-02-05 | TMA1101411 | 2021-06-03 |
| Synergy CHC Corp. | THE SYNERGY EFFECT | 1822013 | 2017-02-08 | TMA1047043 | 2019-08-06 |
| Synergy CHC Corp. | SYNERGY EFFECT | 1780879 | 2016-05-05 | TMA1046990 | 2019-08-05 |
| Synergy CHC Corp. | FLAT TUMMY ABS | 1827470 | 2017-03-15 | TMA1028111 | 2019-06-18 |
| Synergy CHC Corp. | SYNERGY A CONSUMER HEALTHCARE COMPANY | 1824842 | 2017-02-27 | TMA1046985 | 2019-08-05 |
| Synergy CHC Corp. | SYNERGY EFFECT | 1822010 | 2017-02-08 | TMA1046986 | 2019-08-05 |
| Synergy CHC Corp. | THE SYNERGY EFFECT | 1780883 | 2016-05-05 | TMA1046991 | 2019-08-05 |
| Breakthrough Products, Inc. (merged into | URGENTRX | 1647123 | 2013-10-09 | TMA926000 | 2016-01-14 |

| | | | | | |
|---|---|---|---|---|---|
| Synergy CHC Corp.) | | | | | |
| Breakthrough Products, Inc. (merged into Synergy CHC Corp.) | URGENTRX | 1600756 | 2012-11-01 | TMA906488 | 2015-06-17 |