**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **In re:** | |
| **Synergy CHC Corp.,**[1] | **Case No. 24-00465-ELG** |
| **Debtors.** | **Chapter 11 – Jointly Administered** |

**THE UNITED STATES TRUSTEE'S OBJECTION TO THE APPLICATION TO APPROVE EMPLOYMENT OF LAUREN P. BERRET OF EISNER ADVISORY GROUP LLC AS CHIEF RESTRUCTURING OFFICER**

Matthew W. Cheney, the Acting United States Trustee for Region 4 (the "U.S. Trustee"), by and through his undersigned counsel, hereby files this objection (the "Objection") to the Application to Approve Employment of Lauren P. Berret of Eisner Advisory Group LLC as Chief Restructuring Officer (the "Application") (Doc. No. 8) filed by Synergy CHC Corp., *et al.* (the "Debtors" or "Synergy"). In support of this Objection, the U.S. Trustee states as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(1). Venue is proper in this district under 28 U.S.C. § 1408.

[1] The Debtors in these cases are Synergy Reorg, LLC, Case No. 26-464-ELG.; Synergy CHC Corp., Case No. 26-465-ELG; Synergy CHC Inc., Case No. 26-466-ELG; Hand MD Corp., Case No. 26-467-ELG; NomadChoice Pty, Ltd., Case No. 26-468-ELG; and Synergy CHC Mexico, Case No. 26-469-ELG.

Kristen S. Eustis, Trial Attorney
Federal Bar No. MD28984
Office of the United States Trustee
1725 Duke St., Suite 650
Alexandria, VA 22314
(703) 557-7227- Direct Dial
Kristen.S.Eustis@usdoj.gov

2. Pursuant to 11 U.S.C. § 307, the U.S. Trustee for Region 4, which includes the District of Columbia, under 28 U.S.C. § 581(a)(7), has standing to appear and be heard on any issue in a case or proceeding under the Bankruptcy Code.

3. Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is statutorily obligated to monitor the administration of cases commenced under the Bankruptcy Code, 11 U.S.C. § 101 *et seq*. Specifically, he is charged with a number of supervisory responsibilities in reorganization bankruptcy cases under chapter 11 of the Bankruptcy Code, including monitoring applications filed under section 327 of title 11. 28 U.S.C. § 586(a)(3)(I).

**BACKGROUND**

4. On September 4, 2026 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Columbia.

5. In total, six entities filed bankruptcy:

a. Synergy Reorg, LLC, Case Number 26-00464, which was created on August 28th as a D.C. LLC. According to D.C. business records, it is wholly owned by Synergy CHC Corp.

b. Synergy CHC Corp., Case Number 26-00465, which is a Nevada corporate entity. This entity is owned 23.16% by Jack Ross, is publicly traded on the NASDAQ and discloses 20,711,110 shares of common stock. Case No. 26-00465, Dkt. 1, p. 12.

c. Synergy CHC Inc., Case Number 26-00466, a Canadian corporate entity located in Ontario. Upon information and belief, this entity is owned 100% by Synergy CHC Corp. Case No. 26-00465, Dkt. 1, p. 20.

d. Hand MD Corp., Case Number 26-00467, a Maine corporate entity. Upon information and belief, this entity is owned 100% by Synergy CHC Corp. Case No. 26-00465, Dkt. 1, p. 20.

e. NomadChoice Pty, LTD., Case Number 26-00468, an Australian corporate entity. Upon information and belief, this entity is owned 100% by Synergy CHC Corp. Case No. 26-00465, Dkt. 1, p. 20.

f. Synergy CHC Mexico, Case Number 26-00469, a Mexican corporate entity. Upon information and belief, this entity is owned 100% by Synergy CHC Corp. Case No. 26-00465, Dkt. 1, p. 20.

6. On September 7, 2026, the Debtors filed the Application, wherein they seek the entry of an order authorizing the employment of Lauren P. Berret of Eisner Advisory Group LLC ("Ms. Berret") as chief restructuring officer ("CRO") of the Debtor pursuant to Sections 327 and 363 of the Bankruptcy Code. The Application was accompanied by a Declaration of Ms. Berret in support of the Application.

7. The Debtors did not attach a proposed form of Order to the Application and no proposed Order has been provided to the U.S. Trustee.

8. The Debtors did not attach the engagement agreement between the Debtors and Ms. Berret or Eisner Advisory Group to the Application.

9. Ms. Berret was appointed as CRO of Synergy by its board of directors, with her engagement being expressly ratified by the board, pre-petition on September 2, 2026. *See* Resolution of Board of Directors of Synergy CHC Corp. Case No. 26-465, Doc. No. 1, p. 6 of 81.

10. The September 2nd Board Resolution was signed solely by Jack Ross as CEO.

11. At some point after the Resolution, upon information and belief, all board members except for Mr. Ross resigned from the company, leaving him as the sole remaining member of the board.

12. Undersigned counsel requested a copy of the engagement agreement from Ms. Berret and was provided same on the morning of September 10, 2026, prior to the Court holding a hearing to consider the Application and other alleged "first-day" matters in the above-referenced cases. A true and correct copy of the engagement agreement (the "Engagement Agreement") is attached hereto as **Exhibit A**.

13. The Engagement Agreement, dated August 26, 2026, memorializes the agreement between Synergy CHC Corp. ("Synergy") and Eisner Advisory Group LLC ("EA Group") whereby Synergy engaged EA Group to provide certain consulting services to Synergy to assist with the restructuring of the Company.

14. The Engagement Agreement explicitly states that "EA Group will provide the services of [Ms. Berret] to serve as a temporary consultant with the title "Chief Restructuring Officer" (the "CRO") reporting directly to the Company's Board of Directors (the "Board") and/or you in your capacity as "Chief Executive Officer."" Exhibit A, page1.

15. In its Resolution, Synergy provided that "Lauren Berret of Eisner Advisory Group LLC shall serve as the chief restructuring officer of each of the Affiliates, on the terms and conditions previously agreed upon in connection with her engagement by Synergy."

16. The Application seeks "to cement" the pre-petition appointment of Ms. Berret and to "establish an added layer of credibility by ensuring [her] employment not be compromised by threat of non-judicial removal." Application at p. 7.

17. At the September 10th hearing the Debtors requested the Court to rubber stamp the Board's retention of Ms. Berret and order that she could not be subsequently removed by the Debtors' boards, equity interests, or other officers or directors absent further order of the Bankruptcy Court.

18. During testimony on September 11, 2026 in support of the Debtors' cash collateral motion by Ms. Berrett, she was asked who she reports to (as a CRO is not in complete control of a company and has fiduciary duties to the board, equity and the company):

Q. As CRO, whom do you report to?
A. It's -- I -- I report to me. I'm -- I'm the CRO of the company.
Q. You don't report to the board?
A. The -- there is no board. The -- the board resigned.

Transcript, Line 21:25, Page 57, September 11th, 2026.

19. At a status hearing held on September 15, 2026, the Debtors put forth the terms of an agreement reached with Acme Credit Partners, LLC ("Acme")[2] on the record whereby Acme agreed to withdraw its objections to the Application provided the Court entered an order with conditions. Per counsel, "And I'm pleased to share that we've reached a procedural . . . substantive agreement on the following lines: Acme will drop any opposition to an order appointing Ms. Berret as Chief Restructuring Officer provided that she is removable only by the court and further providing that she has all authority to act for the Debtors in the Chapter 11 cases and is not it will not be subject to any direction of the board or Mr Ross. Acme will endorse such an order as seen."

[2] Acme is the Debtors' primary secured creditor.

20. Lastly, Ms. Berret, in her declaration in support of employment, disclosed that EA Group has previously provided services to Synergy:

a. EA Group was previously engaged in September 2022 through November 2023 for undisclosed services "performed at the direction of and in connection with counsel to Synergy CHC Corp."

b. EA Group was previously engaged in November 2024 to provide limited accounting and consulting services.

c. No disclosures were made as to whether Ms. Berrett was involved with or performed any of these services.

20. The U.S. Trustee is in the process of soliciting for an Unsecured Creditor's Committee. As the original petition did not include e-mail addresses, solicitations were sent out by regular mail and supplemented by e-mail when counsel provided same after the September 15th hearing.

21. Without a proposed Order, exactly what the Debtor is seeking is unclear. It appears that the Debtor is seeking to approve the employment of Ms. Berret as CRO under Sections 327(a) and 363 of the Bankruptcy Code. Based on the Application, Ms. Berret's testimony, and the agreement with Acme, the Debtors are seeking to vest Ms. Berrett with "complete decision-making authority." Application, page 3. In other words, it appears the Debtors are requesting that Ms. Berret be given control the Debtors without the involvement of the sole remaining member of the board (Mr. Ross) or any of the shareholders of any of the Debtors. *See* Application at page 3. And finally, the Debtors are asking the Court, pursuant to Sections 105(a) and 1107(a) of the Bankruptcy Code, to prevent the Debtors' boards, equity interests, or other offices or directors from removing Ms. Berret without Court approval. *See* Application, page 7 fn. 3.

**ARGUMENT**

The Application is brought pursuant to Sections 327 and 363 of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules.[3] Neither of those Code Sections permit the retention or employment of Ms. Berret with the authority that the Debtors seek to endow her with – total control over the Debtors without any oversight by the Debtors' board of directors or shareholders.

**A. The Proposed CRO Retention is an End Run Around the Bankruptcy Code's Protections and Remedies for Stakeholders and Should Not be Approved.**

As these cases have developed the ground underlying Ms. Berret's appointment as CRO and the Application have shifted. It is now apparent that the members of the boards of directors of the Debtors have resigned or are compromised and that the Debtors are seeking to have the Court approve Ms. Berret's installation as the managing person of the Debtors who will control the Debtors' actions in these cases without any supervision or oversight by the Debtors. Under the circumstances of this case, the Debtors' attempt to "cement" the pre-petition appointment of a CRO is an extra-statutory remedy that cannot be approved and will add unnecessary ambiguity to the prosecution of the cases and ignores the interests of stakeholders not before the Court.

Typically, a CRO is retained as an officer of a debtor who reports to, seeks direction from and acts as an agent for a governing body such as board of directors or managing agent. Here, given the breadth and scope of the Engagement Agreement and Board Resolution, Ms. Berret has been vested with the express and irrevocable authority to make any and all strategic and operational decisions for the Debtors and, based on the representation of counsel at the status hearing on September 15th, she will operate without reporting to or seeking direction from the Board or management for the Debtors (which consist, at the present time, solely of Jack Ross). Thus, Ms.

[3] This is contrary to the express language of the Engagement Agreement, which provides, that in the event of a bankruptcy filing, the Debtors will "file an application to retain EA Group to provide CRO services, nunc pro tunc to the Petition Date pursuant to Section 363 of the Bankruptcy Code." Exhibit A, page 3.

Berret, with sole and unfettered authority of a debtor in possession, has been vested with the powers of a responsible person or privately appointed Chapter 11 Trustee. This relief starkly deviates from other CRO arrangements approved by Bankruptcy Courts, where managerial authority remained with a managing member or a board of directors to whom the CRO, an officer of the company, reported. In Ms. Berret's own testimony, she stated that she "reports to no one." Transcript, Line 21:25, Page 57, September 11th, 2026.

The Bankruptcy Code already provides for a mechanism for a case to stay in chapter 11 if the management of a debtor needs to be removed from possession – a chapter 11 trustee. Under Section 1104, the Court shall direct the appointment of a trustee based on either (1) cause, including fraud, dishonesty, incompetence, or gross mismanagement, or (2) the best interest of creditors. If the Court does not order the appointment of a trustee, to the extent a requesting party-in-interest meets the burden of section 1104(c), the Court shall order the appointment of an examiner.[4]

"A debtor-in-possession in a Chapter 11 case has the same fiduciary duties as a trustee appointed by a court." *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 524 (Bankr. E.D.N.Y. 1989). A debtor-in-possession cannot turn over its fiduciary duties to an employed professional. *See In re Coin Phones, Inc.*, 148 B.R. 391, 394-95 (Bankr. S.D.N.Y. 1992) ("The fiduciary powers and duties of a trustee are imposed on the debtor in possession and not on those who deal with the debtor in possession. There is nothing in 11 U.S.C. § 1107 that imposes a fiduciary duty on third parties who transact business with a debtor in possession.") (rejecting breach of fiduciary duty claim against company employed to manage the debtor; employment had been approved by the court).

[4] The United States Trustee has filed a Motion to Appoint Trustee under Section 1104 of the Bankruptcy Code contemporaneously with the filing of this Objection.

There is no Code provision (Sections 327(a) and 363(b) included) that allows a bankruptcy court to appoint of a CRO or "quasitrustee" to control a debtor. Section 327(a) authorizes the "trustee" (here the debtor-in-possession) to retain professionals "to represent or assist the trustee in carrying out the trustee's duties under this title." Section 363(b)(1) permits the trustee (again, the debtor-in-possession) to use property of the estate "other than in the ordinary course of business" after "notice and a hearing." Neither of these statutes permit the appointment of a person (regardless of title) to displace the debtor-in-possession. A party must point to explicit statutory authority if it seeks to depart from one of the fundamental structures of the Bankruptcy Code. *See Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 465 (2017) ("The importance of the priority system leads us to expect more than simple statutory silence if, and when, Congress were to intend a major departure.").

Unlike a CRO or other person retained pre-petition by the debtor, a chapter 11 trustee is a creature of the Bankruptcy Code and his or her appointment undoubtedly lies within a Bankruptcy Court's authority. Further, chapter 11 trustee's powers and duties are established by the Bankruptcy Code (Sections 1104, 1105 1106, 1108) and there is established caselaw regarding chapter 11 trustees, which provides a framework for the progress of the case and the expectations of the parties. Alternatively, the Court can consider a trustee under Chapter 7 to remove the debtor's management and to install an independent, neutral third party in the form of a panel trustee to review and liquidate the debtor's assets. These two sections, 11 U.S.C. §§ 1104 and 704, exist as exclusive mechanisms for the Court to remove a debtor's management under the Bankruptcy Code.

The Debtors cite cases in support of the Application, but none are on point here. *Matter of Gaslight Club, Inc.*, 782 F.2d 767 (7th Cir. 1986), is not a Section 327 or Section 363 case. There,

the appeals court upheld, "on the very special facts of [the] case" the bankruptcy court's order authorizing an individual to "operate [the debtors] and exercise their debtor in possession powers." *Id.* at 770, 769. That decision was reached approximately eight months post-petition after the debtors had failed to file a plan and, critically, the decision was made upon a request of the unsecured creditors' committee, with the agreement of the principal of the debtors and with the support of the U.S. Trustee. *See id.* at 769. Here, the Debtors are seeking Court imprimatur of their unilateral pre-petition decision to retain Ms. Berret, to imbue her with all the authority to function as the debtors in possession, at the beginning of the case, with only the agreement of their primary secured creditor, and without the buy-in of the unsecured creditors, the equity holders or the U.S. Trustee.

*In re K.G. IM, LLC*, 620 B.R. 469 (Bankr. S.D.N.Y.), was before the court on a motion under Rules 59(e) and 60(b). *See id.* at 476-77. *K.G. IM* involved Delaware limited liability companies, not publicly traded corporations. *See id.* at 479. The CRO was appointed as part of a settlement of a motion for relief from stay filed by the primary secured creditor and appointed a third-party that apparently was selected jointly by the debtors and the secured creditor as the CRO.[5] *See id.* at 475-76. The court there expressly found that the delegation of management authority from the managers to a CRO was permitted under Delaware law and the various LLC operating agreements at issue. *See id.* at 481. The Debtors here have not made any attempt to demonstrate that applicable corporate law authorizes them to invest a CRO appointed pre-petition with total management authority or permits the Court to protect that individual from efforts to remove him or her from that position of total authority without Court approval.

*In re 1031 Tax Group, LLC*, 2007 WL 2085384 (Bankr. S.D.N.Y. July 17, 2007), does not

[5] The CRO was not appointed unilaterally pre-petition by the debtors.

support the Debtors' position. At issue there was the replacement of the original manager of the debtor (Okun) with a third-party bankruptcy professional (Moran) selected by a consultant (Lukenda) retained by the pre-petition manager. *See id.* at *2. Okun was facing "very serious" allegations of wrongdoing. *Id.* at *2. The bankruptcy held that, while the debtors have broad discretion to retain consultants, they did not have authority to fill the positions of manager or director of the debtors because those positions are creatures of state law – governed by state limited liability company and corporation codes. *See id.* at *3. "The Bankruptcy Code does not authorize the bankruptcy court to fill these positions, or to bypass the procedure that the state statutes mandate." *Id.* In other words, the bankruptcy court could not approve the retention of someone under Section 363(b)(1) with ultimate control over the debtor. In *1031 Tax Group*, the court permitted the retention of Moran, but only temporarily and on the condition that the debtors follow state law to name him as a manager or director of each debtor within 10 days. *See id.* at *5. Again, the Debtors here have made no showing that applicable corporate law permits the retention of a CRO (officer level position) with total control over the Debtors or that they have abided with applicable corporate law in investing Ms. Berret with that authority.

**B. <u>Alternatively, the Application to Employ is a Disguised Motion to Appoint a Responsible Party.</u>**

The Application to Employ bestows Ms. Berret all of the powers and duties to operate the Debtors' businesses, as the Debtors' sole representative and request that she be unable to be removed by the Debtors' boards or equity interests. Further, the Debtors argue both that the chief executive, Jack Ross, and other key figures do not want for credibility, while simultaneously arguing that there is a need for an independent party of Ms. Berret's caliber "who can bring command and ethos to the instant cases." Application, pp. 3-4. This is inappropriate. In *In re 1031 Tax Group, LLC*, 2007 WL 2085384 (July 17, 2007), the Court stated that "positions of manager

or director are creatures of state law specifically governed by the applicable state limited liability company acts and state corporation codes". *Id*. at *9. These state laws must be followed to make the proposed appointment of a manager or director. Id. The Bankruptcy Court in *In re 1031 Tax Group, LLC* settled, "[t]he Bankruptcy Code does not authorize the bankruptcy court to fill these positions, or to bypass the procedures that the state statutes mandate." *Id*. While Ms. Berret's job title in this case is CRO, her true role is that of a responsible person with responsibilities akin to those performed by a trustee or a debtor-in-possession. Her duties give complete latitude and authority to chart the course of the Debtors' estate and to operate the Debtors' business. Ms. Berret is accountable to no one. Significantly, in *In re 1031 Tax Group, LLC*, the Court in the Southern District of New York rejected the argument that the Section 105(a) and 1107(a) grants the Court with independent power of appointment of a responsible officer. *Id*. at n. 4. While appointment of a CRO can be an effective tool to handle a debtor's day-to-day operations or help guide a company through bankruptcy, the CRO is, at the end of the day, a professional that must report to someone who is vested with ultimate managerial authority for the debtor in possession. Consequently, the Application to Employ is a disguised request for this Court to bless Ms. Berret with the powers and responsibilities of a responsible party, where no such independent power of appointment exists. *Id*. at n. 4 ("Sections 105(a) and 1107(a) may empower a bankruptcy court to prevent a debtor from removing a manger, officer or director, but they do not provide the Court with an independent power of appointment.").

For these reasons, the Application must be denied.

### C. **The Motion Fails to Comport with and Follow the Terms of the Engagement Agreement Between the Debtors and EA Group.**

While the Debtor filed a motion to specifically employ Ms. Berret as CRO, it is, in reality, a request to have the Court approve the pre-petition board decision and grant it legitimacy. The

Motion and its representations, however, are at odds with the very Engagement Agreement (Exhibit A) it references and relies upon. The board entered into an agreement with EA Group on August 26, 2026, with the Engagement Agreement addressed to Jack Ross as Chairman and CEO. The Debtor should only be permitted to seek approval of the pre-petition agreement it signed, not another agreement.

First, the Engagement Agreement is between Synergy and EA Group to provide certain services which include more than just CRO related activity: it includes a broad swath of services which fall more under the scope of financial advisory matters. Exhibit A, pp 1-2. These services include:

- Assess the Company's current financial condition, operations, liquidity, and cash requirements.
- Develop and maintain short-term cash flow forecasts and liquidity analyses.
- Evaluate assets, liabilities, contractual obligations, and other commitments.
- Review historical transactions, including executive compensation, bonuses, insider payments, and related-party transactions.
- Evaluate restructuring, sale, wind-down, and liquidation alternatives.
- Develop and, with Company's approval, implement restructuring and wind-down strategies.
- Advise the Company in relation to creditors, lenders, vendors, and other stakeholder communications and negotiations.
- Coordinate with the Company's legal, financial, and other professional advisors.
- Assist with preparations for and implementation of a potential Chapter 11 filing, including assessing, developing and negotiating settlement agreements with applicable D&O's of the Company
-

Post filing, the scope of services is set forth as follows:

- Oversee financial and operational matters during any Chapter 11 proceedings.
- Assist with the preparation of bankruptcy schedules, statements, cash flow reporting, and other required financial information.
- Assist with asset disposition, claims resolution, and other liquidation activities, as applicable.
- Oversee the orderly wind-down of the Company's operations and affairs.
- Evaluate and assist in obtaining appropriate Directors and Officers ("D&O"), CRO, and other applicable insurance coverage.
- Perform such other restructuring and financial advisory services as may be necessary or appropriate in connection with the engagement.

Second, the Engagement Agreement explicitly states that "CRO services will be performed under the direction of management and management accepts responsibility for all management decisions. Management, in this scenario, consists of the board, all of whom tendered their resignation leaving only Jack Ross as Chairman and CEO for the company.

Importantly, the Application fails to pass muster, as it does not require the CRO to report to an independent board (which also contradicts the Engagement Agreement that was entered into). CROs are, by nature of their engagement and position, part professional advisor and part operational decision maker. CROs and their advisory firms provide both professional advisory services and operational services and thus, CROs do not qualify as traditional, salaried, corporate officers capable of being hired by debtors in possession without court authority. And a debtor in possession's decision to engage a restructuring professional is, by definition, outside the ordinary course of business. The USTP recognizes the dual nature of CRO engagements, the litigation risk arising from a CRO's legally uncertain status under a Bankruptcy Code that never contemplated their existence, and the debtors' legitimate need for CRO services at the time of a crisis.

In order to be employed as the CRO post-petition, a CRO must fully meet the disclosure and retention standards under Section 327, except for having served as an officer prepetition. Statutory interpretation is a "holistic" endeavor that should avoid (1) rendering other statutory provisions unnecessary and (2) interpreting them inconsistently with the policy of another provision. *United Sav. Ass'n v. Timbers of Inwood Forest Assocs. Ltd.*, 484 U.S. 365, 371 (1988); *Ratzlaf v. United States*, 510 U.S. 135, 140 (1994).

In this instance, the CRO appointment is not appropriate as (i) it is unclear whether the Court is being asked to approve the CRO duties described in the Motion versus the duties described in the Engagement Agreement, and (ii) if the intent is to approve the Engagement Agreement, it is

improper because the CROs proposed total control of the Debtors, reporting to no one and being a *de facto* CEO, render her an insider, and as such she is ineligible to be retained as a financial advisor or any other kind of 327 professional because she is no longer disinterested.

Because Ms. Berret served as an officer of the Debtors prepetition pursuant to the Board Resolution, she seeks retention under both § 327(a) (to be compensated as a professional) and pursuant to § 363. As noted above, they cannot evade the requirements of § 327 that apply when seeking retention of a professional of the estate. Further, the Engagement Agreement sets out that retention will be pursued only under § 363. It is beyond dispute that any professional seeking retention by the Bankruptcy Court must make full disclosure of any connections that may affect disinterestedness and that the obligation to do so is a continuing one pursuant to the provisions of Section 328(c). In *In re Leslie Fay Companies*, 175 B.R. 525 (Bankr. S.D.N.Y. 1994), where the Debtor's counsel had failed to disclose to the court its ongoing representation of the Audit Committee and its members, in reducing compensation, the Court held:

> All facts that may have any bearing on the disinterestedness of a professional must be disclosed. Consistent with the duty placed on the professional, it is the responsibility of the professional, not of the court, to make sure that all relevant connections have been brought to light. [citations omitted]. So important is the duty of disclosure that the failure to disclose relevant connections is an independent basis for the disallowance of fees or even disqualification.

175 B.R. at 533 (citations omitted).

The proposed engagement of Ms. Berret as CRO arises amidst the circumstances that would allow her to be the sole representative of all of the Debtors' estates and be exclusively vested with all of the powers and duties to operate the Debtors' businesses, reporting to no one. Under these conditions, to whom would Ms. Berret report? There are no known active independent board members or managing members to oversee and make decisions about the operation of the Debtors with the exception of Jack Ross. Ms. Berret would have complete autonomy as an officer of the

Debtors without any oversight by an independent Board of Directors. As the person who would make all decisions regarding the Debtors' bankruptcy cases, she would be the equivalent of a director and certainly in control of the Debtors. Thus, Ms. Berret is an insider and not disinterested. See 11 U.S.C. § 101(31)(B)(i)-(iii). Moreover, the Engagement Letter states that the CRO reports "directly to the Company's Board of Directors. . ." Engagement Agreement, p. 1. Debtors' counsel is obviously not the appropriate party to make ongoing strategic business decisions about the Debtors, the sale of their assets, and distribution of money obtained. Equally availing is that Debtors' counsel – an estate professional – is not the proper fiduciary in this case.

More simply stated, the CRO appointment is not appropriate as (i) it is unclear whether the Court is being asked to approve the CRO duties described in the Motion versus the duties described in the Engagement Agreement, and (ii) if the intent is to approve the Engagement Agreement, it is improper because the CROs proposed total control of the Debtors, reporting to no one and being a *de facto* CEO, render her an insider, and as such she is ineligible to be retained as a financial advisor or any other kind of 327 professional because she is no longer disinterested.

It is often said that "the conduct of bankruptcy proceedings not only should be right but must seem right." *Knapp v. Seligson (In re Ira Haupt & Co.)*, 361 F.2d 164, 168 (2d Cir. 1966). Ms. Berret is not disinterested within the meaning of Section 327(a) of the Bankruptcy Code. Consequently, she may not be retained by this estate due to these infirmities.

Finally, the Debtors' request to retain Ms. Berret in what appears to be a veiled request to appoint a responsible party and the lack of disinterestedness of these parties underscores the vital need for a truly independent, untainted fiduciary in these cases. The absence of such a fiduciary here supports the entry of an order appointing a chapter 11 trustee.

**Reservation of Rights**

The U.S. Trustee reserves and any all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter, substitute and/or modify this Objection, file a Motion or seek any other relief deemed appropriate and necessary and conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent.

**CONCLUSION**

The motion before the Court seeks to undermine a fundamental aspect of chapter 11 – control of the debtor's estate by the debtor-in-possession. . As one court has said, "the Bankruptcy Code provides that there is a debtor in possession or a trustee. There is no alternative. It is the Bankruptcy Code, not the Bankruptcy Suggestions." *In re Briar Hill Foods, LLC*, 2017 WL 4404274 at *2 (Bankr. N.D. Ohio September 29, 2017). The Court should deny the Application in the form currently before the Court.[6]

Wherefore, the U.S. Trustee requests that the Court sustain the objection, deny the Application, and grant such further relief as is just.

Dated: September 22, 2026

Matthew W. Cheney
Acting United States Trustee, Region 4

By: */s/ Kristen S. Eustis*
Kristen S. Eustis, Trial Attorney
Federal Bar No. MD28984
Office of the United States Trustee
1725 Duke St., Suite 650
Alexandria, VA 22314
(703) 557-7227- Direct Dial
Kristen.S.Eustis@usdoj.gov

[6] If the Debtor were to seek employment of Ms. Berret and/or her firm under Section 363(b) subject to the authority of the applicable Debtors' board of directors that might be a different matter.

**Certificate of Service**

I hereby certify that on September 22, 2026, I electronically filed the foregoing Objection with the Clerk of the Court and transmitted a true and correct copy of said documents electronically through the electronic case filing system to the following:

Christianna Annette Cathcart christianna@dcbankruptcy.com

Ted Cohen tcohen@sheppardmullin.com

Kevin M Davis jessica-giglio-8668@ecf.pacerpro.com

Kristen S. Eustis Kristen.S.Eustis@usdoj.gov, Robert.W.Ours@usdoj.gov

Nir Maoz nmaoz@ktbslaw.com

Katharine Toledo katharine.i.toledo@usdoj.gov, Robert.W.Ours@usdoj.gov

Dylan G. Trache dylan.trache@nelsonmullins.com,
linnea.hann@nelsonmullins.com;alex.reilly@nelsonmullins.com

U. S. Trustee for Region Four USTPRegion04.DC.ECF@USDOJ.GOV

Maurice Belmont VerStandig mac@mbvesq.com, lisa@mbvesq.com; mac@dcbankruptcy.com;
verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

*/s/ Robert W. Ours*
Robert W. Ours
Paralegal Specialist