**<u>CHIEF RESTRUCTURING OFFICER AGREEMENT</u>**

This agreement for the provision of chief restructuring officer services (the "Agreement") is entered into this 27th day of February 2026, between Generations on 1st, LLC (the "Debtor") and Michael T. Schmitz (the "CRO"), but shall not become effective unless and until formally approved by the United States Bankruptcy Court for the District of North Dakota (the "Bankruptcy Court").

WHEREFORE, the Debtor filed a petition for chapter 11 relief, in the Bankruptcy Court, on January 6, 2025, thereby commencing a case therein (the "Bankruptcy Case"); and

WHEREFORE, the Debtor is—and, at all times relevant, has been—a debtor-in-possession in the Bankruptcy Court; and

WHEREFORE, the Debtor is desirous of engaging the services of an independent CRO to guide the Debtor through the Bankruptcy Case, to operate the Debtor, to helm the Debtor's business affairs, to investigate the potential litigation rights and liabilities of the Debtor, and to continue in such capacity—if so permitted by a confirmed plan of reorganization—following the Debtor's emergence from chapter 11;

IT IS, THEREFORE, HEREBY AGREED as follows:

1. **<u>Employment</u>.** Commencing on the date when this Agreement is approved by the Bankruptcy Court, the CRO shall be deemed engaged by the Debtor as the entity's chief restructuring officer, and shall have the powers delineated in Section 2 hereof.

2. **<u>Powers.</u>** The CRO shall have a duty to expend her/his best professional judgment, in a solely fiduciary capacity, operating the Debtor, and shall be (i) required to (a) work with Debtor's counsel to carry out those tasks requisite of a debtor-in-possession in chapter 11 (including, but not limited to, those enumerated in Section 1106 of the Bankruptcy Code, as made

applicable by Section 1107 thereof); (b) ensure the Debtor is compliant with the reporting duties of a chapter 11 debtor-in-possession; (c) assess the causes of action held by the Debtor against third parties, including any insiders of the Debtor; (d) assess the liabilities of the Debtor to third parties, including through a review of the Debtor's already-filed schedules in the Bankruptcy Case; (e) attend such hearings in the Bankruptcy Court as may be appropriate (with said attendance being via Zoom when approved by the Bankruptcy Court); (f) attend any court-ordered (or voluntary) mediation; (g) ensure the Debtor remain current with all tax filings and government obligations required of an operating entity (regardless of whether or not said entity is a debtor in bankruptcy, but without imposing on the Debtor any governmental obligations otherwise forgiven of a debtor-in-possession); and (ii) permitted to (1) direct counsel to bring such suits in the name of the Debtor as may be in the Debtor's best interests to pursue and pursuable in good faith; (2) negotiate settlements and compromises (subject to the approval of the Bankruptcy Court where so required by law or rule); (3) pursue formal—and informal—discovery of facts and circumstances relevant to the Debtor's affairs, historic operations, and litigation rights; (4) review the propriety of the Debtor's contracts with third parties, renegotiate said contracts, or terminate said contracts (with approval of the Bankruptcy Court where required by law); (5) enter into new contracts on behalf of the Debtor (with approval of the Bankruptcy Court where required by law); (6) review the work of Debtor's general reorganization counsel; (7) engage new—or special—counsel on behalf of the Debtor (with approval of the Bankruptcy Court where required by law); and (8) perform such other tasks and duties as may be reasonably necessary to carry out the duties herein enumerated or as may be consistent with the role of a chief restructuring officer. The CRO shall *not* require the further authority of any person to make any decisions consistent with these powers, except where such decision making requires approval of the Bankruptcy Court.

3. **Compensation.** The CRO shall be compensated for her/his services at the ordinary rate charged by the CRO, as a professional, to other clients of the CRO, with such compensation being subject to review and approval by the Bankruptcy Court in accord with governing law, *except* that no such review or approval shall be required following confirmation of a plan of reorganization, for efforts thereafter undertaken, unless so provided for in the correlative plan of reorganization or by court order.

4. **Termination.** The CRO may resign at any time, for any reason or no reason at all, by tendering notice to the Bankruptcy Court. The services of the CRO shall be deemed to automatically terminate upon the occurrence of (i) the CRO's death; (ii) the CRO's mental incapacity, as certified by at least one board certified physician in the community in which the CRO receives medical treatment; (iii) the bringing of criminal charges against the CRO—in any federal, state, or tribal court—punishable by imprisonment, except for those correlative to an offense solely related to the speed of operation of a motor vehicle; (iv) the CRO being suspended or barred from her or his professional practice, by any licensing body, except for where such suspension or bar is a result of (A) a voluntary decision to assume "inactive" (or comparable) status; (B) a failure to timely pay dues; or (C) a failure to timely complete professional education courses; (v) the CRO ceasing to be a person who may lawfully perform work in the United States; and/or (vi) the CRO being declared *persona non grata* by the United States or any constituent state or territorial possession thereof. The CRO may otherwise only be removed by order of the Bankruptcy Court (or any court enjoying appellate jurisdiction over the Bankruptcy Court or hearing the Bankruptcy Case by virtue of a withdrawal of a reference to the Bankruptcy Court), for good cause shown. While the Bankruptcy Court shall have plenary authority to determine what

Case 26-00465-ELG Document 62-3 Filed 09/28/26 Page 4 of 5

does, or does not, constitute "good cause shown," it is agreed that gross negligence and/or willful misconduct shall necessarily constitute "good cause shown."

5. **No Employee Relationship.** Notwithstanding the vernacular of being "employed" by the Debtor, including where such terminology is used in title 11 of the United States Code, the CRO shall *not* be deemed an employee of the Debtor or otherwise entitled to any perquisites or rights as an employee of the Debtor. To the extent any person shall ever urge otherwise, the CRO agrees s/he is a "learned professional" as that term is used in Section 541.301 of title 29 of the Code of Federal Regulations and, as such, that the CRO is fully exempt under the Fair Labor Standards Act as codified at Section 201, *et seq.* of title 29 of the United States Code.

6. **No Relationships.** By executing this Agreement, the CRO represents that (i) the declaration s/he has previously signed, in connection with an application to be appointed CRO, is true and accurate; (ii) the CRO has not since developed any relationships or obligations that would materially change any attestation in said declaration; and (iii) the CRO is not aware of any facts that, upon reasonable consideration, would be likely to call into question the disinterestedness of the CRO or the ability of the CRO to carry out those duties herein enumerated.

7. **Choice of Law/Venue.** This Agreement shall be construed in accord with the laws of the United States (including, but not limited to, those enumerated in title 11 of the United States Code) and, where applicable, the laws of the State of North Dakota. Any suit arising from this Agreement or related to the subject matter hereof shall be subject to the exclusive venue of the Bankruptcy Court and the parties irrevocably consent to the jurisdiction of said court. Should such court lack subject matter jurisdiction, any suit may then—and only then—be brought solely in the state courts of North Dakota situated in Cass County, without prejudice to the rights of any party

to then remove said suit to the United States District Court for the District of North Dakota or to thereafter petition for a transfer of venue to any other court of the United States.

Signed, this 27th day of February, 2026:

Generations on 1st, LLC

DocuSigned by:
351F4038ED65436... [SEAL]
By: Jesse Craig
Its: Managing Member

Signed by:
Michael T Schmitz
B14FEA7CABE949F... [SEAL]
Michael T. Schmitz