**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

In re:

**Joint Administration Pending**

EPIC Companies Midwest, LLC,
EPIC Companies Midwest 2023, LLC,
EPIC Employee, LLC,
EOLA Capital, LLC, and
EC West Fargo, LLC,

Debtors.[1]

Case No. 24-30281
Case No. 24-30282
Case No. 24-30283
Case No. 24-30284
Case No. 24-30285

Chapter 11 Cases

# MOTION FOR ORDER AUTHORIZING THE RETENTION OF LIGHTHOUSE MANAGEMENT GROUP UNDER 11 U.S.C. § 363 AS THE DEBTORS' CHIEF RESTRUCTURING OFFICER

1. EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, EPIC Employee, LLC, EOLA Capital, LLC, and EC West Fargo, LLC (collectively, the "Debtors") hereby file this Motion for an Order Authorizing the Retention of Lighthouse Management Group Under 11 U.S.C. § 363 as the Debtor's Chief Restructuring Officer (the "Motion"). This Motion should be granted because the retention of Lighthouse Management Group ("LMG") is within the sound business judgment of the Debtors, and its involvement with the Debtors postpetition is vital to the Debtors' efforts to maximize the value of its assets for the benefit of its estate, investors, creditors, and other parties in interest.

2. In support of this Motion, the Debtors respectfully state as follows:

[1] In accordance with Fed. R. Bankr. P. 2002(n) and 1005 and 11 U.S.C. § 342(c), as applicable, the Debtors' address is 400 10th Street SE, Minot, ND 58701 and their Employer Identification Numbers (EINs) are as follows: 83-2840705 (EPIC Companies Midwest, LLC), 88-3709518 (EPIC Companies Midwest 2023, LLC), 88-4112082 (EPIC Employee, LLC), 88-0554720 (EOLA Capital, LLC) and 82-5331354 (EC West Fargo, LLC).

## JURISDICTION

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Fed. R. Bankr. P. 5005. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The petitions commencing these Chapter 11 cases were filed on July 8, 2024 (the "Petition Date"). The cases are currently pending before this Court.

4. This Motion arises under 11 U.S.C. §§ 105(a) and 363(b). This Motion is filed under Fed. R. Bankr. P. 6004, 9013, 9014 and Local Rules 9013-1 and 9014-1. Notice of the hearing on this Motion is provided pursuant to the Federal Rules of Bankruptcy Procedure and the Notice and Service Requirements adopted pursuant to Local Rule 2002-1.

## BACKGROUND

### I. THE BANKRUPTCY CASE.

5. On the Petition Date, the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. There is presently no pending request or motion for the appointment of a trustee or examiner, and no official committee of unsecured creditors has been appointed.

6. Further background information about the Debtors and these cases is set forth in the Declaration of Patrick Finn in Support of First Day Motions.

### II. THE DEBTORS APPOINT LMG AS CRO.

7. On June 11, 2024, the Debtors appointed LMG as the Chief Restructuring Officer ("CRO") of the Debtors.

8. The Debtors thereafter executed a certain Engagement Letter and Consulting Agreement dated June 17, 2024 (together, the "Consulting Agreement") with LMG. The

Consulting Agreement governs the terms and conditions of the Debtors' retention of LMG as CRO. A true and correct copy of the Consulting Agreement is attached hereto as **Exhibit A**.

**III. LMG'S QUALIFICATIONS.**

9. LMG has extensive experience providing crisis management assistance to distressed companies both in and outside of the bankruptcy process. Specifically, LMG professionals hold significant expertise in interim crisis management, including balance sheet restructuring, consolidation and wind-down initiatives, sale and divestiture activities, and cash management. LMG also previously served numerous times as a court-appointed receiver in both federal and state courts. LMG enjoys an excellent reputation for the services it rendered in large and complex Chapter 11 cases on behalf of debtors and creditors.

10. The Debtors selected LMG to provide crisis management and related bankruptcy services because of LMG's experience and reputation for providing services in Chapter 11 cases. The Debtors believe that LMG will provide effective and efficient services in these Chapter 11 cases that will complement the services being offered by the Debtors' other restructuring professionals.

**IV. SERVICES TO BE PROVIDED.**

11. As set forth in the Consulting Agreement, LMG agreed to serve as the Debtors' CRO. Working collaboratively with the Debtors' senior management team and board members, as well as the Debtors' other professionals, LMG agreed to assist the Debtors as follows:

a. Assist in the preparation of a Chapter 11 bankruptcy filing, including taking all necessary steps to file the bankruptcy petition including signing such petition and any other necessary documents;

b. Working with legal counsel, taking all necessary steps upon the filing of the bankruptcy case to manage the case;

c. Direct and manage legal counsel in the preparation and filing of the Chapter 11 bankruptcy petition and during the pendency of the bankruptcy case;

d. Assist in developing cash flow projections, forecasts, and strategic plans in connection with the Chapter 11 filing;

e. Assist counsel in filing and confirmation of a liquidating plan;

f. Any additional services as may be identified and agreed upon as needed.

12. The Debtors and LMG agree that all the services that LMG will provide to the Debtors will be: (a) appropriately directed so as to avoid unnecessary duplicative efforts among the other professionals retained in this Chapter 11 case; and (b) performed in accordance with applicable standards of the profession.

## V. PROFESSIONAL COMPENSATION.

13. LMG's decision to accept this engagement to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment and compensated for its services and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices.

14. Pursuant to the Consulting Agreement, the Debtors agreed to pay LMG a retainer of $50,000 that will be held for the length of the engagement. In addition, the Debtors agreed to pay LMG on an hourly basis at the following rates:

a. Partner: $475-$515 per hour;

b. Director: $450-$475 per hour;

c. Consultant: $235-$300 per hour; and

d. Administrative Support: $95-$125 per hour.

15. In addition to compensation for professional services rendered by LMG, LMG will seek reimbursement for reasonable direct expenses incurred in connection with its engagement.

16. LMG's fee rates listed above are consistent with and typical of compensation arrangements entered into by LMG and other comparable firms in connection with the rendering of similar services under similar circumstances. The Debtors believe that LMG's rates are in fact reasonable, market based, and designed to fairly compensate LMG for its work and its fixed and routine overhead expenses related to this matter.

**VI. INDEMNIFICATION.**

17. Pursuant to Paragraph 6 of the Consulting Agreement, the Debtors agreed to indemnify and hold harmless LMG and any of its employees, members, principals, affiliates, independent contractors and their respective directors, officers, agents and employees (the "Indemnified Persons") from and against any and all claims, demands, suits, proceedings, judgments, awards, liabilities, losses, damages and expenses incurred by any Indemnified Person as defined in the Consulting Agreement (including but not limited to the Indemnified Person's reasonable counsel fees and disbursements and the reasonable cost of the Indemnified Person's professional time), which are related to or arise in any manner out of the engagement; provided, however, that the Debtors "shall not be responsible for any claims, liabilities, losses, damages or expenses pursuant to this paragraph which are finally determined to have resulted from the gross negligence or willful misconduct of any Indemnified Person."

**VII. LMG'S DISINTERESTEDNESS.**

18. The Debtors do not believe that LMG is a "professional" whose retention is subject to approval under 11 U.S.C. § 327. Nevertheless, LMG conducted a diligent review of

relationships between itself and the list of significant individuals and entities in these cases provided by the Debtors.

19. To the best of the Debtors' knowledge, LMG does not hold any interest adverse to the Debtors, its investors, creditors, or any party in interest or its respective representatives, or any person employed by the Office of the United States Trustee, in matters for which LMG is proposed to be retained.

20. LMG will periodically review its files during the pendency of this Chapter 11 case to ensure that no conflicts or other disqualifying circumstances exist or arise. To the extent that LMG discovers any new relevant facts or relationships bearing on the matters described herein during the period of LMG's retention, LMG will use reasonable efforts to promptly file a supplemental declaration.

**RELIEF REQUESTED**

21. By this Motion, the Debtors requests entry of an order authorizing the retention and employment of LMG as the Debtors' CRO to provide management and assistance to the Debtors in accordance with the terms and conditions set forth in the Consulting Agreement.

22. The decision to retain LMG should be authorized because it is a sound exercise of the Debtors' business judgment. As set forth above, LMG holds extensive experience as an advisor for many companies undertaking restructuring efforts and is well qualified and equipped to fulfill its duties to the Debtors. Since its initial retention as CRO to the Debtors, LMG has been involved in many facets of the Debtors' day-to-day business operations and has extensively reviewed the books and records. LMG's continued involvement postpetition is important to continuing the Debtors' efforts to maximize the value of their assets for the benefit of its estate, its creditors, and

other parties in interest. LMG, in its capacity as CRO, will provide services that are in the best interests of all parties in interest in the Chapter 11 case.

## BASIS FOR RELIEF REQUESTED

### I. THE DEBTORS SHOULD BE AUTHORIZED TO RETAIN AND EMPLOY LMG AS CHIEF RESTRUCTURING OFFICER BECAUSE IT IS AN EXERCISE OF THEIR SOUND BUSINESS JUDGMENT.

23. The Debtors seek to employ and retain LMG as CRO pursuant to 11 U.S.C. § 363. Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor in possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b).

24. In reviewing a debtor's decision to use estate property pursuant to 11 U.S.C. § 363(b), courts have routinely held that, if such use represents the reasonable business judgment on the part of the debtor, such use should be authorized. *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir. 1983) (requiring a "good business reason" to authorize a sale pursuant to 11 U.S.C. § 363(b)); *In re W.A. Mallory Co.*, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997) ("This Court follows the 'sound business purpose' test when examining § 363(b) sales.") (citing *In re WBQ P'ship*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)); *see also In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining an 11 U.S.C. § 363(b) application must find from the evidence presented before him or her a good business reason to grant such application); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining an 11 U.S.C. § 363(b) motion is "a good business reason").

25. Courts emphasize that the business judgment rule is not an onerous standard and may be satisfied "as long as the proposed action *appears* to enhance the Debtor's estate."

*Crystalin, LLC v. Selma Props. Inc. (In re Crystalin, LLC)*, 293 B.R. 455, 463-64 (B.A.P. 8th Cir. 2003) (quoting *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 566 n.16 (8th Cir. 1997)) (emphasis in original, internal alterations and quotations omitted); *see also In re AbitibiBowater*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (the business judgment standard is "not a difficult standard to satisfy"). Under the business judgment rule, "management of a corporation's affairs is placed in the hands of its board of directors and officers, and the Court should interfere with their decisions only if it is made clear that those decisions are, *inter alia*, clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code." *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (citing *In re United Artists Theatre Co.*, 315 F.3d 217, 233 (3d Cir. 2003), *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985), and *In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992)).

26. The Debtors submit that the requested relief represents a sound exercise of its business judgment and is justified under 11 U.S.C. §§ 105(a) and 363(b). The services of LMG will substantially enhance the Debtors' ability to maximize the value of their assets, which will benefit all parties in interest. LMG is well-qualified to provide the services because of its extensive experience advising financially troubled companies, their creditors, and other economic stakeholders in both Chapter 11 and out-of-court workouts. Additionally, through arms-length negotiations, the Debtors secured the services of LMG on reasonable and market economic terms.

## II. RETAINING AND EMPLOYING LMG AS CRO UNDER SECTION 363 IS PERMITTED UNDER THE BANKRUPTCY CODE.

27. As discussed above, 11 U.S.C. § 363 permits the Debtors to use property of the estate outside of the ordinary course of business where there is a sound reason for doing so. Courts typically recognize the ability to retain interim corporate officers and other temporary employees as an acceptable use of property of the estate. Bankruptcy courts previously analyzed the propriety of a debtor in possession's employment of corporate restructuring officers under 11 U.S.C. § 363 on numerous occasions and determined it to be appropriate to employ a corporate restructuring officer in such manner. *See, e.g., In re Gander Mountain Co.*, No. 17-30673 (Bankr. D. Minn. Mar. 30, 2017), ECF No. 278 (approving employment of LMG as chief restructuring officer); *In re Radio Shack Corp.*, 15-10197 (BLS) (Bankr. D. Del. Mar. 3, 2015), ECF No. 954; *In re Caché, Inc.*, No. 15-10172 (MFW) (Bankr. D. Del. Mar. 3, 2015), ECF No. 253; *In re Allens, Inc.*, No. 13-73597 (BTB) (Bankr. D. Ark. Nov. 27, 2013), ECF No. 256; *In re Lutheran Soc. Servs. of N.D.*, No. 21-30203 (SKH) (Bankr. D.N.D. June 21, 2021), ECF No. 95 (approving employment of LMG as chief restructuring officer). Accordingly, and in light of the Debtors' demonstrated business purpose for doing so, this Court should grant the Motion and authorize the Debtors to retain and employ LMG as its CRO.

## <u>CONCLUSION</u>

28. For the foregoing reasons, the Debtors respectfully request that the Court grant the relief requested in the Motion.

29. Pursuant to Fed. R. Bankr. P. 9006(d), this Motion is supported by the verification of facts in the Affidavit of Patrick Finn attached hereto.

30. Pursuant to Local Rule 9014-1(B), the Debtors hereby gives notice that they may, if necessary, call Patrick Finn, a Partner at Lighthouse Management Group, Inc., and the CRO of

the Debtors, whose business address is 900 Long Lake Road, Suite 180, New Brighton, MN 55112, to testify regarding the facts set forth in the Motion.

31. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

**WHEREFORE**, the Debtors requests entry of an order:

A. Authorizing the retention and employment of LMG as the Debtors' CRO; and

B. Granting such other relief as the Court deems just and equitable.

Dated: July 8, 2024

/e/ *Steven R. Kinsella*

Michael S. Raum (#05676)
**FREDRIKSON & BYRON, P.A.**
51 Broadway, Suite 400
Fargo, ND 58102-4991
701.237.8200
mraum@fredlaw.com

Steven R. Kinsella (#09514)
Katherine A. Nixon (*pro hac vice motion pending*) **FREDRIKSON & BYRON, P.A.**
60 South 6th Street, Suite 1500
Minneapolis, MN 55402-4400
612.492.7000
skinsella@fredlaw.com
knixon@fredlaw.com

**PROPOSED ATTORNEYS FOR DEBTOR**

## AFFIDAVIT

I, Patrick Finn, am a Director of Lighthouse Management Group, the proposed Chief Restructuring Officer for EPIC Companies Midwest, LLC; EPIC Companies Midwest 2023, LLC.; EPIC Employee, LLC; EOLA Capital, LLC; EC West Fargo, LLC; (collectively, the "Debtors"), and I declare under penalty of perjury that the facts set forth in the preceding Motion for an Order Approving the Retention of Lighthouse Management Group Under 11 U.S.C. § 363 as the Debtors' Chief Restructuring Officer are true and correct, according to the best of my knowledge, information, and belief.

Dated: July 8, 2024 Signed:

DocuSigned by:
PATRICK FINN
0939B83D88F04EF...

Patrick Finn

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In re: | **Joint Administration Pending** |
| EPIC Companies Midwest, LLC,<br>EPIC Companies Midwest 2023, LLC,<br>EPIC Employee, LLC,<br>EOLA Capital, LLC, and<br>EC West Fargo, LLC, | Case No. 24-30281<br>Case No. 24-30282<br>Case No. 24-30283<br>Case No. 24-30284<br>Case No. 24-30285 |
| Debtors. | Chapter 11 Cases |

**NOTICE OF MOTION FOR ORDER AUTHORIZING THE RETENTION OF LIGHTHOUSE MANAGEMENT GROUP UNDER 11 U.S.C. § 363 AS THE DEBTORS' CHIEF RESTRUCTURING OFFICER**

TO: The parties-in-interest as specified in the Federal Rules of Bankruptcy Procedure and the Notice and Service Requirements adopted pursuant to Local Rule 2002-1.

1. **NOTICE IS HEREBY GIVEN** that EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, EPIC Employee, LLC, EOLA Capital, LLC, and EC West Fargo, LLC (collectively, the "Debtors"), by and through their counsel, filed a motion seeking an order authorizing the retention of Lighthouse Management Group under 11 U.S.C. § 363 as the Debtors' Chief Restructuring Officer (the "Motion").

2. **NOTICE IS FURTHER GIVEN** that any response to the Motion must be filed and served no later than **July ___, 2024**, pursuant to Fed. R. Bankr. P. 6004(b). **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

Dated: July 8, 2024

*/e/ Steven R. Kinsella*

Michael S. Raum (#05676)
**FREDRIKSON & BYRON, P.A.**
51 Broadway, Suite 400
Fargo, ND 58102-4991
701.237.8200
mraum@fredlaw.com

Steven R. Kinsella (#09514)
Katherine A. Nixon (*pro hac vice motion pending*) **FREDRIKSON & BYRON, P.A.**
60 South 6th Street, Suite 1500
Minneapolis, MN 55402-4400
612.492.7000
skinsella@fredlaw.com
knixon@fredlaw.com

**PROPOSED ATTORNEYS FOR DEBTOR**

# Exhibit A

LIGHTHOUSE
MANAGEMENT GROUP

651.439.511
900 Long Lake Road, Ste. 18
New Brighton, MN 5551
www.lighthousemangement.cor

June 17, 2024

EOLA Capital, LLC
3140 Bluestem Dr #101
West Fargo, ND 58078

EPIC Employee, LLC
3140 Bluestem Dr #101
West Fargo, ND 58078

EC West Fargo
3140 Bluestem Dr #101
West Fargo, ND 58078

EPIC Companies Midwest 2023, LLC
3140 Bluestem Dr #101
West Fargo, ND 58078

EPIC Companies Midwest LLC
3140 Bluestem Dr #101
West Fargo, ND 58078

RE: Engagement as Chief Restructuring Officer

Dear Governors:

Lighthouse Management Group, Inc. ("Lighthouse") is pleased to offer this proposal to serve as Chief Restructuring officer for:

- EOLA Capital, LLC;
- EPIC Employee, LLC;
- EC West Fargo;
- EPIC Companies Midwest 2023 LLC; and
- EPIC Companies Midwest LLC (collectively, "Client").

**Background**

Client was formed to provide financing to real estate projects in North Dakota and Minnesota. Client and related entities are unable to pay their obligations as they come due.

Client would like to engage Lighthouse to serve as Chief Restructuring Officer to manage Client through the Chapter 11 bankruptcy process.

**Scope of Engagement and Services**

Duties that Lighthouse will be responsible for performing while serving in the capacity of Chief Restructuring Officer include:

- The Chief Restructuring Officer shall have full operational authority and control over the business operations of Client;
- Preparation of a Chapter 11 bankruptcy filing, including taking all necessary steps to file the bankruptcy petition including signing such petition and any other necessary documents;
- Working with legal counsel, taking all necessary steps upon the filing of the bankruptcy case to manage the case including managing the sale processes for the remaining assets of Client and any activities required after the sale of the Client's assets;
- Direct and manage legal counsel in the preparation and filing of the Chapter 11 bankruptcy petition and during the pendency of the bankruptcy case;
- Preparation of cash flow projections, forecasts, and strategic plans in connection with business operations and the Chapter 11 filing;
- Assist counsel in filing and confirmation of a liquidating plan;
- Communication with creditors, customers, investors, and other stakeholders; and
- Any additional services as may be identified and agreed upon as needed.

Lighthouse's services will consist of the scope and objectives set forth above but may be modified upon mutual agreement of Client and Lighthouse.

**Fees and Billing**

Lighthouse typically bills for its services on an hourly basis at our normal and customary rates. Our rates are periodically adjusted to reflect professional growth of our staff and current market conditions. Lighthouse's current rates are:

| | |
|---|---|
| Partner | $475-$515 per hour |
| Director | $450-$475 per hour |
| Consultant | $235-$300 per hour |
| Administrative Support/Accounting | $95-125 per hour |

Lighthouse will provide an invoice for its services on a monthly basis. Reimbursable expenses include travel, overnight mail, research, etc. and will be billed at cost. A retainer of $50,000 will be required for the length of the engagement. Lighthouse is available to begin work on this engagement immediately.

If this proposal is acceptable, please sign the attached Consulting Agreement and return it to my attention. We look forward to working with you on this engagement.

Sincerely,

Patrick Finn
Partner

**CONSULTING AGREEMENT**

1. **Parties:** EOLA Capital, LLC, EPIC Employee, LLC, EC West Fargo, LLC, EPIC Companies Midwest 2023, LLC, and EPIC Companies Midwest LLC (collectively, "Client")
3140 Bluestem Dr #101
West Fargo, ND 58078

Lighthouse Management Group, Inc. ("Consultant(s)" or "LMG")
900 Long Lake Road, Ste. 180
New Brighton, MN 55112

2. **Effective Date:** June 17, 2024

3. **Scope of Work:** Defined in attached Engagement Letter dated June 17, 2024.

4. **Results.** LMG will exercise its best professional judgment and exert reasonable best efforts on your behalf. However, we are not guarantors of any specific results.

5. **Billing.** LMG to render invoice to Client accounting for all time and expenses on a bi-weekly basis. Payment of said invoice will be due upon presentation. A retainer of $50,000 will be required for this engagement.

The following standard hourly rates shall apply:

| | |
|---|---|
| Partner | $475-$515 per hour |
| Director | $450-$475 per hour |
| Consultant | $235-$300 per hour |
| Administrative Support/Accounting | $95-125 per hour |

LMG's hourly rates are periodically adjusted to reflect professional growth of our staff and current market conditions. Reimbursable expenses include travel, overnight mail, research, etc. and will be billed at cost.

6. **Indemnification.** Client hereby agrees to indemnify and hold harmless LMG, its officers, employees, members, principals, affiliates, independent contractors and their respective directors, officers, agents and employees (collectively the "Indemnified Persons") from and against any and all claims, demands, suits, proceedings, judgments, awards, liabilities, losses, damages and expenses incurred by any Indemnified Person (including but not limited to Indemnified Person's reasonable counsel fees and disbursements and the reasonable costs of such Indemnified Person's professional time (such professional time will be reimbursed at our rates in effect when such time is required), as they are incurred, arising

Case 24-30281 Document 42-6 Filed 05/28/24 Page 19 of 21


in connection with investigating, preparing for or defending any action, formal or informal claim, investigation, inquiry or other proceedings, whether or not in connection with pending or threatened litigation) which are related to or arise in any manner out of the engagement contemplated hereby, including any legal proceeding in which any Indemnified Person may be required or agree to participate, but in which such Indemnified Person is not a party; provided, however, that Client shall not be responsible for any claims, liabilities, losses, damages or expenses pursuant to this paragraph which are finally determined to have resulted from the gross negligence or willful misconduct of any Indemnified Person.

Client shall defend any such claim with counsel reasonably acceptable to LMG or may permit LMG to defend at Client's expense. Client further agrees that it shall not, without the prior written consent of the Indemnified Parties, which shall not be unreasonably withheld, settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder unless such settlement, compromise or consent includes an unconditional release of LMG and each other Indemnified Person hereunder from all liability arising out of such claim, action, suit or proceeding. LMG further agrees that it shall not, without the prior written consent of Client (which shall not be unreasonably withheld) settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder.

7. **Termination.** This Agreement can be terminated by either LMG or Client upon (7) seven days written notice to the other party (the "Termination"). If Client terminates, then full payment for all costs and expenses incurred are immediately due and payable.

8. **Non-Assignment.** Neither this Agreement nor any of the rights and obligations hereunder may be transferred or assigned by either party hereto without the prior written consent of the other party. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors and permitted assigns.

9. **Limitation on Liability**. The Consultant's sole obligation under this Agreement is to the Client, and any advice (written or oral) given by the Consultant to the Client in connection with the Consultant's engagement under this Agreement is solely for the use and benefit of the Client. In no event, regardless of the legal theory advanced, shall the Consultant be: (i) responsible other than for gross negligence or willful misconduct or (ii) liable to any third party. The obligations of the Consultant are solely corporate obligations, and no officer, director, employee, agent, independent contractor, member, shareholder(s) or controlling person(s) of the Consultant shall be subject to any personal liability whatsoever to any person or entity, nor will any such claim be asserted by the Client, whether on its own behalf or on behalf of any other person or entity.

10. **Standard of Care.** The Consultant performs its services in accordance with standards of skill and care generally observed by "turnaround" consultants in the United

States. If the Consultant fails to meet such standards the sole remedy of Client shall be to terminate this Agreement and recover any direct damages Client may prove. Neither the Consultant nor any of its directors, shareholders, officers, employees, consultants, independent contractors or other agents (collectively with the Consultant the "the Consultant Parties") shall be liable for any lost or loss of profits, any special, punitive, indirect, incidental or consequential damages, or any claim, loss or expense for which indemnification would be provided under Section 6 of this Agreement.

11. **Warranty Disclaimer**. In performing its services under this Agreement, the Consultant is not assuming any responsibility for the Client's decision to pursue or not to pursue any business strategy or to affect or not to affect any restructuring, business combination, refinancing or other transaction. It is also important to understand that in this engagement Consultant serves as an advisor to the Client, not as a decision maker. All decisions regarding the Client's future must be made by the Client's officers, and Consultant by no means serves as a substitute for the exercise by the Client's officers of their fiduciary duty on behalf of the Client. Additionally, the Consultant shall not be responsible for providing any tax, legal or other specialist advice. The Consultant makes no representations or warranties, express or implied, concerning the value of its services or the results that may be obtained therefrom. The Consultant's engagement shall not constitute an audit, review, compilation or any other type of financial statement reporting or consulting engagement that is subject to the rules of the AICPA or other state and national professional bodies.

12. **Waiver, Modification and Amendment**. No modification, amendment or waiver of any of the provisions contained in this Agreement, or any future representation, promise or condition in connection with the subject matter of this Agreement, shall be binding upon any party to this Agreement unless made in writing and signed by a duly authorized representative or agent of such party. The failure by either party to enforce, or the delay by either party in enforcing, any of said party's rights under this Agreement shall not be construed as a continuing waiver of such rights, and said party may, within such time as is provided by the laws established by any government with applicable jurisdiction, commence appropriate suits, actions or proceedings to enforce any or all of such rights. A waiver by either party of a default in one or more instances shall not be construed as a waiver in other instances.

13. **Survival.** The obligations of the parties pursuant to paragraphs 4, 5, 6, 7, 9, 10 and 11 shall survive Termination of the Agreement along with any other section that expressly provides that it shall survive the Termination.

14. **Entire Agreement.** This Agreement incorporates the entire understanding between the parties with respect to its subject matter and supersedes all previous agreements or understandings that might exist or have existed. This Agreement may not be amended or modified except in writing, executed by the parties hereto.

15. **Severability.** Any provision of this Agreement that shall be determined to be invalid or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any jurisdiction.

16. **Counterparts.** This Agreement may be signed in counterparts and all such counterparts shall be deemed to be a single original Agreement. A facsimile copy shall be as good as an original signed copy for all purposes whatsoever.

17. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Minnesota, without giving effect to the conflict of law principles thereof. Client consents to exclusive jurisdiction over any and disputes being exercised by Hennepin County District Court and further agrees that all actions arising from such disputes shall be venued in Hennepin County District Court. Client specifically waives any objection on the grounds of personal jurisdiction or venue. No action under this Agreement may be brought by either party more than four (4) years after the claim or cause of action has accrued.

**Lighthouse Management Group, Inc.**

By: Patrick Finn
Its: Vice President

**EOLA Capital, LLC**

By: D Campbell
Its: Secretary

**EPIC Employee, LLC**

By: D Campbell
Its: Secretary

**EC West Fargo** LLC

By: D Campbell
Its: Secretary

**EPIC Companies Midwest 2023, LLC**

By: D Campbell
Its: Secretary

**EPIC Companies Midwest LLC**

By: D Campbell
Its: Secretary