ROBERT E. OPERA -- State Bar No. 101182
ropera@wcghlaw.com
ANDREW B. LEVIN – California State Bar No. 290209
alevin@wcghlaw.com
**WINTHROP COUCHOT**
**GOLUBOW HOLLANDER, LLP**
1301 Dove Street, Suite 500
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

STEPHEN R. HARRIS – Nevada State Bar No. 001463
steve@harrislawreno.com
**HARRIS LAW PRACTICE LLC**
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
Telephone: (775) 786-7600

[Proposed] General Insolvency Counsel
for Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

In re:

☐ X-TREME BULLETS, INC.,
☐ AMMO LOAD WORLDWIDE, INC.,
☐ CLEARWATER BULLET, INC.,
☐ FREEDOM MUNITIONS, LLC,
☐ HOWELL MACHINE, INC.,
☐ HOWELL MUNITIONS & TECHNOLOGY, INC.,
☐ LEWIS-CLARK AMMUNITION COMPONENTS, LLC,
☐ COMPONENTS EXCHANGE, LLC, an
☒ All Debtors.

Debtors and Debtors-in-Possession.

Jointly Administered under Case No. 18-50609-btb with

Case Nos. 18-50610-btb; 18-50611-btb; 18-50613-btb; 18-50614-btb; 18-50615-btb; 18-50616-btb; and 18-50617-btb

Chapter 11 Proceedings

**MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO: (1) ENGAGE J. MICHAEL ISSA AS CHIEF RESTRUCTURING OFFICER OF THE DEBTORS; AND (2) EMPLOY GLASSRATNER ADVISORY & CAPITAL GROUP, LLC TO ASSIST THE CHIEF RESTRUCTURING OFFICER; MEMORANDUM OF POINTS AND AUTHORITIES**

**[Declarations of David C. Howell and J. Michael Issa in Support of the Motion Filed Concurrently Herewith]**

DATE: July 25, 2018
TIME: 2:00 p.m.
EST. TIME FOR HEARING: 15 minutes
PLACE: Courtroom 2 (5th Floor)
C. Clifton Young Federal Bldg.
300 Booth Street
Reno, NV 89509

X-Treme Bullets Inc.; Ammo Load Worldwide, Inc.; Clearwater Bullet, Inc.; Freedom Munitions, LLC; Howell Machine, Inc.; Howell Munitions & Technology, Inc.; Lewis-Clark Ammunition Components, LLC (collectively, the "HMT Debtors"); and Components Exchange, LLC ("Components Exchange" and, together with the HMT Debtors, the "Debtors"), hereby file this motion ("Motion") for entry of an order authorizing the Debtors to (i) engage J. Michael Issa ("Mr. Issa") as the Debtors' Chief Restructuring Officer ("CRO") in their Chapter 11 cases pursuant to Sections 105(a) and 363 of the Bankruptcy Code, and (ii) employ, pursuant to Section 327 of the Bankruptcy Code, GlassRatner Advisory & Capital Group, LLC ("GlassRatner") to provide to the CRO administrative and other services that will be needed by the CRO to fulfill his duties in these cases.

In support of this Motion, the Debtors hereby represent and allege as follows.

On June 7, 2018, the Debtors engaged Mr. Issa, a principal of GlassRatner, to act as CRO of the Debtors.

On June 8, 2018 ("Petition Date"), the Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code commencing these cases. It is the Debtors' current intention to attempt to reorganize their financial affairs, and/or to sell assets of Debtors to realize value for distribution to the Debtors' creditors, for the benefit of the Debtors' creditors.

As CRO, Mr. Issa will be responsible for overseeing the operations of the Debtors and for supervising the administration of the Debtors' Chapter 11 cases. As CRO, Mr. Issa will act as the senior officer of the corporate Debtors and manager of the limited liability company Debtors.

Mr. Issa is very qualified to render services as CRO in these cases. Mr. Issa is a Certified Public Accountant and has more than 30 years' experience in bankruptcy consulting, debt and financial restructuring and forensic accounting. Mr. Issa has been involved in more than 100 bankruptcy cases in a variety of capacities, including liquidating trustee, interim CEO, responsible officer and financial advisor. Mr. Issa has served as a chief restructuring officer in a number of Chapter 11 cases, and has served as a court-appointed liquidating trustee and a Chapter 11 trustee. Mr. Issa also has knowledge of the gun and ammunition industry, having served as the financial advisor for the acquisition of Turner's Outdoorsman, a multi-unit gun store chain similar in size to

the Debtors. A copy of Mr. Issa's resume is attached as Exhibit "2" to the Declaration of J. Michael Issa ("Issa Declaration") filed concurrently herewith.

Given Mr. Issa's substantial experience and expertise in bankruptcy matters and knowledge of the gun and ammunition industry, he is uniquely qualified to serve as CRO in these Chapter 11 cases. Moreover, as addressed in detail hereinbelow, Mr. Issa's proposed compensation for his services as CRO is reasonable, and will not impose a burden on the administration of the Debtors' cases.

Mr. Issa will need the services of GlassRatner personnel ("GlassRatner Personnel") in order for Mr. Issa to perform efficiently and effectively his duties as CRO in these cases. GlassRatner Personnel will provide to Mr. Issa assistance with respect to overseeing the Debtors' operations and the administration of these Chapter 11 cases, such as by assisting in the preparation of financial reports required by the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules (together, "Bankruptcy Rules") and by the Office of the United States Trustee ("U.S. Trustee").

The Debtors believe that the services of Mr. Issa and GlassRatner Personnel are necessary to a successful resolution of these Chapter 11 cases for the benefit of the Debtors' creditors.

This Motion is made and based upon the foregoing allegations and representations, the Memorandum of Points and Authorities appended hereto, the Declaration of David C. Howell ("Howell Declaration") and the Issa Declaration filed concurrently herewith, the pleadings and other documents on file in these Chapter 11 cases, and upon such other and additional evidence, both oral and documentary, that may be presented to the Court at or before the time of the hearing to be held with respect to this Motion.

**WHEREFORE,** the Debtors respectfully request that this Court enter an order granting to the Debtors the following relief:

1. Authorizing the Debtors, effective as of the Petition Date (June 8, 2018), to engage Mr. Issa as the Debtors' CRO, pursuant to Sections 105(a) and 363 of the Bankruptcy Code, in accordance with the terms of GlassRatner's engagement agreement with the Debtors

("Engagement Agreement"), a copy of which is attached as Exhibit "1" to the Issa Declaration, and the terms of this Motion;

2. Authorizing the Debtors, effective as of June 8, 2018, to employ GlassRatner to provide GlassRatner Personnel to assist the CRO to perform the CRO's duties in these cases, pursuant to Sections 327 and 330 of the Bankruptcy Code and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure, in accordance with the terms of the Engagement Agreement and this Motion; and

3. Granting to the Debtors, Mr. Issa and to GlassRatner such other and further relief as the Court deems just and appropriate under the facts and circumstances of these cases.

DATED: June 27, 2018

**WINTHROP COUCHOT GOLUBOW HOLLANDER, LLP**

By: */s/ Robert E. Opera*
Robert E. Opera
Andrew B. Levin
[Proposed] General Insolvency Counsel for Debtors and Debtors-in-Possession

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

**I.**

**<u>STATEMENT OF FACTS</u>**

**A. <u>Background of the Debtor</u>.**

David C. Howell ("Mr. Howell") is the principal of each of the Debtors. Mr. Howell owns 95% of the issued and outstanding shares of stock in Howell Munitions & Technology, Inc. ("HMT"). HMT, in turn, is the sole shareholder of the following Debtors: X-Treme Bullets, Inc.; Clearwater Bullet, Inc.; Ammo Load Worldwide, Inc.; and Howell Machine, Inc.. HMT owns 100% of the membership interests in Freedom Munitions, LLC. Mr. Howell owns 100% of the membership interests in Lewis-Clark Ammunition Components, LLC, and 90% of the membership interests in Components Exchange.

The Debtors are in the business of manufacturing and selling small arms ammunition components and assembling ammunition. The Debtors also custom build ammunition manufacturing equipment, and repair and refurbish existing ammunition manufacturing equipment. The Debtors sell ammunition from company-owned brands, which they manufacture in-house, as well as ammunition from third-party manufacturers, which they source as finished goods. The Debtors manufacture ammunition using raw materials from outside suppliers, but make most bullets and cases at their facilities.

The Debtors operate four facilities in Idaho, including three production facilities and one distribution center, and operate a production facility in Carson City, Nevada. The Debtors also operated a retail ammunition store located in Houston, Texas.

B. **<u>Retention of Mr. Issa as Chief Restructuring Officer</u>.**

On June 7, 2018, the Debtors engaged Mr. Issa of GlassRatner to act as CRO of the Debtors. Mr. Issa has been acting as CRO of the Debtor since June 7, 2018.

**C. <u>Initiation of the Chapter 11 Cases</u>.**

On June 8, 2018, the Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code commencing these cases. It is the Debtors' current intention to attempt to reorganize their

financial affairs, and/or to sell assets of Debtors to realize value for distribution to the Debtors' creditors, for the benefit of the Debtors' creditors.

On June 13, 2018, the Court entered its *Order Authorizing Joint Administration of Cases* [Docket No. 37], pursuant to which the Court ordered the joint administration of the Debtors' cases, with X-Treme Bullets, Inc. designated as the lead case.

## II.

## RELIEF REQUESTED

By this Motion, the Debtors request the entry of an order, pursuant to Sections 363 and 105(a) of the Bankruptcy Code, authorizing the Debtors to engage Mr. Issa as CRO pursuant to the provisions of the Engagement Agreement (Exhibit "1" to the Issa Declaration). Mr. Issa will serve as CRO of the Debtors to administer these cases and to pursue expeditiously a resolution of these cases.

The relief requested herein is necessary to the administration of the Debtors' bankruptcy cases. As CRO, Mr. Issa will be responsible for managing the Debtors' financial affairs and supervising all aspects of these Chapter 11 cases. As CRO, Mr. Issa effectively will serve as a chief executive officer of the Debtors to guide the Debtors through the restructuring of the Debtors' operations and the resolution of these Chapter 11 cases.

As CRO, Mr. Issa will perform, among others, the following services for the Debtors: supervise the operations of the Debtors' businesses and all aspects of the Debtors' financial affairs; assist the Debtors to fulfill their reporting obligations under the Bankruptcy Code and to the Office of the United States Trustee ("U.S. Trustee"); identify, and pursue recovery from the disposition of, assets of the Debtors' estates; address and resolve disputed claims asserted against the Debtors; and provide business plan analysis and assistance to the Debtors' counsel with respect to the formulation and preparation of a plan of reorganization and accompanying disclosure statement.

The engagement of Mr. Issa as CRO in the Debtors' cases will help to ensure that the cases are administered in a fair and competent manner, for the benefit of the Debtors' creditors. The involvement of Mr. Issa as CRO will allow creditors to have confidence in the independence, integrity and competence of the Debtors' management during these cases. In particular, the

involvement of Mr. Issa will alleviate concerns that the Debtors' primary pre-petition secured lender, Z.B., N.A. dba Zions First National Bank ("Bank"), had regarding the Debtors' pre-petition management and, accordingly, may facilitate a non-adversarial resolution of the Debtors' cases, thereby enhancing the prospects for an expeditious and efficient resolution of these cases.

In addition to the engagement of the CRO, the Debtors need the services of additional GlassRatner Personnel to assist Mr. Issa, as CRO, to perform his duties in these cases, including by providing assistance regarding the preparation of reports required under the Bankruptcy Rules or by the U.S. Trustee. Without the services of such additional GlassRatner Personnel, it would be difficult for the CRO to perform efficiently and effectively his services as CRO in these cases.

**III.**

**QUALIFICATIONS OF CRO AND GLASSRATNER**

Mr. Issa is a principal of GlassRatner. GlassRatner is a financial advisory services firm. GlassRatner has extensive experience and expertise in Chapter 11 proceedings. Consistently ranked as one of the most active bankruptcy consulting firms in the nation, GlassRatner is regularly employed as a court-appointed receiver, trustee, liquidating agent, plan administrator or other fiduciary. GlassRatner employs approximately 95 professionals in offices in eight (8) major U.S. cities.

Mr. Issa is a Certified Public Accountant and he has more than 30 years' experience in bankruptcy consulting, debt and financial restructuring and forensic accounting. Mr. Issa has been the lead professional on numerous high-profile and complex engagements, including engagements providing financial restructuring and reorganization services to companies in Chapter 11 cases, companies in out-of-court restructurings, and to creditors of companies in Chapter 11 cases. Mr. Issa personally has managed several billion dollars of debt restructurings on behalf of clients. Mr. Issa is a two-time winner of category awards in Middle Market Deal of the Year competitions (2005 and 2013).

Mr. Issa has served as a chief restructuring officer in a number of Chapter 11 cases. Mr. Issa has served also as a court-appointed liquidating trustee and as a Chapter 11 trustee. Mr. Issa has knowledge of the gun and ammunition industry, having served as the financial advisor

for the acquisition of Turner's Outdoorsman, a multi-unit gun store chain similar in size to the Debtors.

A copy of Mr. Issa's resume is attached as Exhibit "2" to the Issa Declaration.

Since being retained by the Debtors on June 7, 2017, Mr. Issa has acquired substantial knowledge of the Debtors' financial affairs. In his capacity as proposed CRO, Mr. Issa has provided and will continue to provide management services to the Debtors, supervision over the Debtors' business operations, and assistance in the administration of the Debtors' cases. Mr. Issa's services are necessary to the administration of the Debtors' cases and to the maximizing of the recovery by the creditors of the Debtors' estates. Accordingly, the Debtors believe that the retention of Mr. Issa as CRO and the employment of GlassRatner to assist the CRO are in the best interests of the Debtors' estates.

## IV.

## SERVICES TO BE PROVIDED

By this Motion, the Debtors seek an order authorizing the Debtors to retain Mr. Issa as CRO in accordance with the terms of the Engagement Agreement. As CRO, Mr. Issa will provide, among others, the following services to the Debtor:

- Management of the financial affairs of the Debtors and supervision of the Debtors' business operations;
- Supervision of the administration of the Debtors' Chapter 11 cases, including the preparation of the Debtors' Schedules of Assets and Liabilities and Statement of Financial Affairs and the financial reporting required by the U.S. Trustee;
- Review and evaluation of claims asserted against the Debtors and the resolution of disputed claims asserted against the Debtors;
- Assistance in evaluating the assets of the Debtors' estates and the recovery of value from such assets, including possible sales of assets of Debtors;
- Review and evaluation of pleadings, financial reports and other documents filed by creditors or other parties-in-interest in the Debtors' Chapter 11 cases;
- Appearance at any proceedings or hearings in this Court, as appropriate;

- Assistance to the Debtors' counsel in the negotiation, formulation, confirmation and implementation of a Chapter 11 plan;
- Coordination with the Debtors' counsel, and assistance to the Debtors' counsel, with respect to the preparation of pleadings for proceedings in the Debtors' cases;
- Communicating with creditors, including the Bank, and any Official Committee of Unsecured Creditors ("Committee") that may be appointed in the Debtors' cases and with other parties-in-interest in the Debtors' cases; and
- Performance of the services typical of a CRO in a Chapter 11 case, and such other services as may be mutually agreed upon by the Debtors and GlassRatner in furtherance of a resolution of these cases.

The services listed above are vital to the efficient administration of the Debtors' Chapter 11 cases and to a successful resolution of these cases for the benefit of the Debtors' creditors. For the reasons described herein, the Debtors believe that Mr. Issa is well qualified to perform these services, and, accordingly, that this Court can and should authorize the Debtors to retain Mr. Issa, as CRO, to perform these services for the Debtors.

GlassRatner will provide to the Debtors the services of Mr. Issa as CRO. Additional GlassRatner Personnel will perform services needed by the CRO in these cases, such as by assisting in overseeing the Debtors' operations (including on-site management of the Debtors' operations) and by providing assistance to the Debtors with respect to complying with the reporting obligations imposed upon the Debtors in these cases. The services of all GlassRatner Personnel will be provided pursuant to the terms and conditions of the Engagement Agreement, including the billing rates set forth therein.

The services listed above are vital to the success of the Debtors' Chapter 11 cases. For the reasons described herein, the Debtors believe that GlassRatner and Mr. Issa should be authorized to perform these services.

## V.

## COMPENSATION

**A. Compensation of Mr. Issa.**

The Debtors and GlassRatner have agreed to the following compensation for Mr. Issa to act as CRO in these Chapter 11 cases.

(1) Monthly Fee. The Debtors have agreed to pay to GlassRatner a monthly, non-refundable fee of $20,000 for Mr. Issa's services as CRO (the "Monthly Fee").

(2) Reimbursement of Expenses. GlassRatner will be reimbursed by the Debtors for any reasonable out-of-pocket expenses that Mr. Issa incurs in connection with his services as CRO, such as reasonable travel expenses, messenger and telephone charges ("Expense Reimbursement").

(3) Retainer for Mr. Issa's Services. Mr. Howell provided to GlassRatner on behalf of the Debtors a retainer payment in the amount of $40,000 ("Retainer") for the services of Mr. Issa as CRO and for the services of the additional GlassRatner Personnel. GlassRatner will be entitled each month to draw down on the Retainer in order to receive payment of the Monthly Fee for Mr. Issa's services as CRO and the Expense Reimbursement, with no need for any further order or approval of the Court or notice to creditors. Similarly, after the Retainer is exhausted, GlassRatner will be entitled to be paid each month the Monthly Fee for Mr. Issa's services as CRO and the Expense Reimbursement, with no need for any further order or approval of the Court or notice to creditors.

(4) Allocation of fees and costs. The proposed allocation of the Monthly Fee will be 87.5% to the HMT Debtors and 12.5% to Components Exchange (i.e., based upon seven HMT Debtors and (one) Components Exchange). The Expense Reimbursement for expenses incurred by the CRO on behalf solely of the HMT Debtors will be paid by the HMT Debtors. The Expense Reimbursement for expenses incurred by the CRO on behalf solely of Components Exchange will be paid by Components Exchange. The Expense Reimbursement for expenses incurred on behalf of all Debtors will be paid 87.5% by the HMT Debtors and 12.5% by Components Exchange.

Case 18-50609-btb Doc 69 Entered 06/27/18 16:04:37 Page 11 of 21

(5) Joint and Several Liability. The Debtors will be jointly and severally liable for all Monthly Fees and Expense Reimbursements.

The Debtors propose to employ Mr. Issa as CRO in the ordinary course pursuant to Sections 105(a) and 363 of the Bankruptcy Code. Mr. Issa is not being employed as a "professional" under Section 327 of the Bankruptcy Code. The Debtors propose, then, that Mr. Issa be excused from any need to keep track of his time by means of billing statements in these cases, and that GlassRatner be excused from any need to submit fee applications pursuant to Sections 330 or 331 of the Bankruptcy Code in order to obtain compensation for Mr. Issa's services as CRO in these cases. The Debtors believe that such payment arrangement is fair under the circumstances of these cases. GlassRatner will be receiving, as and for Mr. Issa's monthly compensation as CRO in these cases, a $20,000 flat-fee Monthly Fee. Accordingly, any lack of opposition to this Motion should be deemed to be consent to the payment of such compensation with no further need for any notice or hearing.

**B. Compensation of GlassRatner Personnel.**

The Debtors and GlassRatner have agreed to the following compensation for the additional GlassRatner Personnel.

(1) Hourly Billing Rates. The CRO will need the assistance of the additional GlassRatner Personnel to assist the CRO to oversee the management of the Debtors' business operations and the Debtors' financial affairs and to provide to the CRO administrative and support services. GlassRatner will be entitled to be compensated for services rendered by GlassRatner Personnel based upon the number of hours worked by the GlassRatner Personnel at their standard hourly billing rates. GlassRatner's current standard hourly billing rates for GlassRatner Personnel who may be rendering services in these cases range from $95 to $550 per hour.

- George Demos - $350 per hour
- Other Staff - $95 to $295 per hour

(2) Billing Increments. GlassRatner Personnel will record their time in one-tenth of an hour increments.

(3) Reimbursement of Expenses. GlassRatner will be entitled to be reimbursed for reasonable out-of-pocket expenses incurred by GlassRatner Personnel on behalf of the Debtors.

(4) Monthly Compensation. As set forth hereinabove, GlassRatner has received a Retainer in the amount of $40,000 in these cases. The Retainer will be used to pay the Monthly Fees and Expense Reimbursement of the CRO and, at the discretion of GlassRatner, to pay fees and costs of the GlassRatner Personnel.

GlassRatner has advised the Debtors, and the Debtors have acknowledged, that the amount of the Retainer will not be sufficient to satisfy the entire amount of the fees and costs which will be incurred by GlassRatner on behalf of the Debtors in these cases. Accordingly, subject to the approval of the Court, GlassRatner has requested that the Debtors agree, and the Debtors have agreed, that, after the Retainer is exhausted, the Debtors will pay to GlassRatner, on a monthly basis, the amount of GlassRatner's accruing fees and costs for the GlassRatner Personnel. **The Debtors have filed concurrently herewith a motion to establish procedures for paying professional fees on a monthly basis in these cases.**

(5) Fee Applications. GlassRatner intends to apply to this Court for compensation for the GlassRatner Personnel from funds of the Debtors' estates in conformity with the requirements of Sections 330 and 331 of the Bankruptcy Code. GlassRatner understands that its compensation from funds of the Debtors' estates for the GlassRatner Personnel will be subject to the approval of the Court.

At the conclusion of these cases, GlassRatner will file an appropriate application seeking final allowance of all fees and costs of GlassRatner Personnel proposed to be paid from funds of the Debtors' estates, regardless of whether interim compensation has been paid to GlassRatner for such fees and costs of the GlassRatner Personnel. GlassRatner understands and agrees that any proposed compensation for the fees and costs of the GlassRatner Personnel from the Debtors' estates is subject to the provisions of Sections 327 and 330 of the Bankruptcy Code. In accordance with the provisions of

Section 330 of the Bankruptcy Code, GlassRatner's request for compensation for the fees and costs of the GlassRatner Personnel from funds of the Debtors' estates will be subject to review by the Court relative to the reasonableness thereof. Upon allowance of such fees and costs, the Debtors will pay to GlassRatner the difference between the amounts allowed to GlassRatner for the fees and costs of the GlassRatner Personnel and any interim compensation paid to GlassRatner for the fees and costs of the GlassRatner Personnel from funds of the Debtors' estates. GlassRatner understands and agrees that, if aggregate interim payments made to GlassRatner for the fees and costs of the GlassRatner Personnel from funds of the Debtors' estates exceed the amount that is ultimately allowed to GlassRatner for the fees and costs of the GlassRatner Personnel, Glass Ratner will be required to, and will, promptly repay to the Debtors such difference.

(6) Allocation of fees and costs. The fees and expenses of GlassRatner Personnel incurred on behalf solely of the HMT Debtors will be paid by the HMT Debtors. The fees and expenses of GlassRatner Personnel incurred on behalf solely of Components Exchange will be paid by Components Exchange. The fees and expenses of GlassRatner Personnel incurred on behalf of all Debtors will be paid 87.5% by the HMT Debtors and 12.5% by Components Exchange.

(7) Joint and Several Liability. The Debtors will be jointly and severally liable for all fees and expenses of GlassRatner Personnel.

The Debtors believe that the proposed compensation arrangements are very fair in light of industry practice, market rates both in and out of Chapter 11 proceedings, the amount of time that Mr. Issa will spend rendering services as CRO to the Debtors, and Mr. Issa's experience and expertise in Chapter 11 cases.

## VI.

## DISINTERESTEDNESS OF GLASSRATNER AND MR. ISSA

Although the Debtors do not propose to employ Mr. Issa under Section 327 of the Bankruptcy Code, GlassRatner nonetheless has performed a computerized check with respect to conflicts in these cases. To the best of GlassRatner's knowledge, GlassRatner has no material

conflicts in these cases, and holds no interest adverse to the Debtors' estates. To the best of GlassRatner's knowledge, neither Mr. Issa, GlassRatner, nor any of GlassRatner's principals, members, employees or affiliates have any connection with the Debtors, their creditors, the U.S. Trustee or any other party with an actual or potential interest in the Debtors' cases or their respective attorneys or accountants, except as set forth in the Issa Declaration. By the Issa Declaration, Mr. Issa provides full and complete disclosure in order to demonstrate that GlassRatner and he satisfy all requirements that would be imposed by the Bankruptcy Code and the Bankruptcy Rules if Mr. Issa were to be employed in these cases.

Since the Debtors constitute a fairly sizeable enterprise with numerous creditors and other business relationships, GlassRatner is unable to state with certainty that every client relationship or other material connection with the Debtors' cases have been disclosed in the Issa Declaration. In this regard, if GlassRatner discovers additional information that requires disclosure, GlassRatner will file a supplemental disclosure with the Court.

GlassRatner has not been retained to assist any person or entity other than the Debtors on matters relating to, or in connection with, the Debtors' cases. If this Court approves the Debtors' proposed retention of Mr. Issa as CRO in these cases, GlassRatner will not accept any engagement or perform any services for any person or entity other than the Debtors with respect to the Debtors' cases. However, GlassRatner may continue to provide professional services to, and engage in commercial or professional relationships with, any persons or entities that may be creditors of the Debtors or parties-in-interest in the Debtors' cases, provided that such services do not relate to, or have any connection with, the Debtors' cases.

As of the Petition Date, the Debtors were not indebted to GlassRatner.

Based upon the foregoing, GlassRatner believes that it is a "disinterested person," as defined in Section 101(14) of the Bankruptcy Code.

## VII.

## THE ENGAGEMENT OF THE CRO AND GLASSRATNER SHOULD BE APPROVED

### A. The Court Has Authority to Approve the Debtors' Proposed Engagement of Mr. Issa as CRO.

Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor-in-possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Under applicable case law in this and other circuits, if a debtor's proposed use of its assets pursuant to Section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved.[1]

Bankruptcy courts have analyzed on numerous occasions the propriety of a debtor's employment of chief restructuring officers, interim corporate officers and crisis managers under Section 363 and have determined that it is an appropriate exercise of the debtor's business judgment to employ such entities under Section 363.[2]

---

[1] *See e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper*), 933 F.3d 513, 515 (7th Cir. 1991)); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to Section 363(b)); *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)) ("[T]he business judgment rule is a 'presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the actions were in the best interests of the company.'").

[2] *See*, *In re Westcliff Medical Laboratories, Inc.*, Case No. 10-16743 (Bankr. C.D. Cal. June 25, 2010); *In re Fatburger Restaurants of California, Inc., et al.*, Case No. 09-13965 (Bankr. C.D. Cal. Feb. 16, 2011); *In re Fairfield Residential LLC*, Case No. 09-14378 (Bankr. D. Del Jan 13, 2010); *In re Motor Coach Industries International, Inc.*, Case No. 08-12136 (Bankr. D. Del Oct. 15, 2008) (approving retention of chief restructuring officer and crisis managers); *In re Pappas Telecasting, Inc.*, Case No. 08-10916 (Bankr. D. Del June 26, 2008); *In re Linens Holding Co.*, Case No. 08-10832 (CSS) (Bankr. D. Del May 28, 2008); *In re Hoop Holdings, LLC*, Case No. 08-10544 (BLS) (Bankr. D. Del Apr. 22, 2008); *In re Leiner Health Products, Inc.*, Case No. 08-10446 (KJC) (Bankr. D. Del. Apr. 8, 2008); *In re TOUSA, Inc.*, Case No. 08-10928 (Bankr. S.D. Fla. Mar. 26, 2008); *In re American Home Mortgage Holdings, Inc.*, Case No. 07-11047 (Bankr. D. Del. Sept. 5, 2007); *In re Calpine Corp.*, Case No. 05-60200 (Bankr. S.D.N.Y. Jan 17, 2007). *In re Tokheim Corp.*, Case No. 02-13437 (RJN) (Bankr. D. Del. Feb. 25, 2003); *In re The Holliston Mill, Inc.*, Case No. 07-10687 (MFW) (Bankr. D. Del. June 6, 2007); *In re Sea Containers Ltd.*, Case No. 06-11156 (KJC) (Bankr. D. Del. May 8, 2007); *In re Adva-Lite, Inc.*, Case No. 07-10264 (KJC) (Bankr. D. Del. Mar. 16, 2007); *In re Global Home Products, LLC*, Case No. 06-10340 (KG) (Bankr. D. Del. May 4, 2006).

Additionally, the Court's general equitable powers, codified in Section 105(a) of the Bankruptcy Code, provide authority for the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code.]"[3]

In addition, the "Jay Alix Protocols" allow for the retention of chief restructuring officers under Section 363 of the Bankruptcy Code (a copy of the relevant portion of the Jay Alix Protocols is attached as Exhibit "3" to the Issa Declaration). The Jay Alix Protocols were adopted as a settlement between the United States Trustee for Region 3 (Delaware) and a financial advisory firm (Jay Alix & Associates) seeking engagement as a chief restructuring officer in a bankruptcy case in order to resolve disputes over the qualification and compensation of such financial advisory firm as chief restructuring officer in such case. The Jay Alix Protocols have been adopted by United States Trustees and by courts in numerous jurisdictions.

Consistent with the Jay Alix Protocols, Mr. Issa and GlassRatner agree as follows:

- In the event that the Debtors seek to have any of the GlassRatner Personnel assume executive officer positions other than Mr. Issa, or to materially change the terms of the engagement of GlassRatner, a motion to modify the employment as such will be filed.
- No principal, employee, or independent contractor of GlassRatner or any affiliate of GlassRatner will serve as a director of any of the Debtors during the pendency of the Debtors' Chapter 11 cases. In performing his duties as CRO in these cases, Mr. Issa will act under the direction, control, and guidance of the board of directors of the corporate Debtors.[4]

[3] *See* 11 U.S.C. § 105(a). *See also United States v. Energy Resources Co.*, 495 U.S.545, 549 (1990); *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code."); *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 2005 WL 435207, *14 (D.N.J. Feb. 25, 2005) (reciting the power of the bankruptcy court to "… issue any order … that is necessary or appropriate to carry out the provisions of … [title 11]").

[4] Mr. Howell has agreed that neither he nor the Debtors will seek to terminate the employment of the CRO except through the filing of a motion to terminate the employment of the CRO with the approval of the Court after notice to creditors and a hearing thereon.

- For a period of three (3) years after the conclusion of the Debtors' engagement of GlassRatner, neither GlassRatner nor any affiliate of GlassRatner will make any investments in the Debtors.

The Debtors believe that the proposed engagement of Mr. Issa as CRO and GlassRatner is in compliance with the Jay Alix Protocols.

**B. <u>Authorizing the Debtors to Retain Mr. Issa as CRO is in the Best Interests of the Debtors' Estates</u>.**

The Debtor's retention of Mr. Issa as CRO will benefit greatly the Debtors and the Debtors' creditors. Mr. Issa is highly qualified to perform the duties of CRO in these cases. Mr. Issa has served on a number of occasions as a chief restructuring officer or trustee in Chapter 11 cases. Mr. Issa has substantial experience and expertise in Chapter 11 proceedings. Further, Mr. Issa has knowledge of the gun and ammunition industry, having served as the financial advisor for the acquisition of Turner's Outdoorsman. Mr. Issa's services as CRO will facilitate an efficient and effective administration of these cases and will enhance the prospects for a successful resolution of these cases for the benefit of the Debtors' creditors.

The Bank, the Debtors' pre-petition secured lender, has asserted that it will not accept Mr. Howell's management and control of the Debtors. Accordingly, if the Debtors were not authorized to retain Mr. Issa, as CRO, in order to avoid the disruption, delay and expense associated with disputes with the Bank, the Debtors would be required to engage a new chief restructuring officer or other officer to manage the Debtors' businesses and to administer the Debtors' cases. The Debtors' need to engage a new chief restructuring officer or other officer in these cases would take substantial time and require the Debtors to incur significant expense, both in terms of finding and engaging a suitable individual and in bringing such individual "up to speed." Accordingly, if the Court were to decline to authorize the Debtors to retain Mr. Issa as CRO, there will be significant delay, disruption and added expense in the administration of these cases, to the substantial detriment of the Debtors' creditors.

In addition, the terms of the Engagement Agreement are very fair. GlassRatner's proposed compensation for Mr. Issa's services as CRO in these cases -- a $20,000 Monthly Fee – is very

reasonable particularly for an individual with Mr. Issa's extensive experience and expertise. Accordingly, the Debtors' decision to enter into the Engagement Agreement reflects an exercise of the Debtors' sound business judgment and satisfies Section 363 of the Bankruptcy Code.

Based upon the foregoing, the Court should authorize the Debtors to retain Mr. Issa as CRO in accordance with the terms of the Engagement Agreement and this Motion.

**C. <u>Good Cause Exists to Authorize the Debtors to Employ GlassRatner to Provide the Services of Additional GlassRatner Personnel Needed by the CRO</u>.**

In order for Mr. Issa to render his services as CRO in an efficient and economical manner, Mr. Issa will need the services of additional GlassRatner Personnel, primarily to provide assistance in overseeing the management of the Debtors' business operations and financial affairs and to provide administrative and support services for Mr. Issa, such as assisting the CRO in preparing reports required by the Bankruptcy Rules and complying with the other administrative obligations imposed upon the Debtors, and by assisting the CRO to prepare financial information that will be included in a disclosure statement that will accompany a Chapter 11 plan formulated by the Debtors in these cases. The services of the GlassRatner Personnel will be performed by GlassRatner Personnel at hourly billing rates ranging from $95.00 to $350.00 per hour, substantially less than the $535 per hour billing rate typically charged by Mr. Issa. For example, it is anticipated that George Demos, a principal of GlassRatner with approximately 35 years' experience providing financial consulting services, will devote a significant amount of time monitoring the Debtors' operations located in Lewiston, Idaho, and that Jordan Johnson, an individual with a billing rate of $250 per hour, will provide assistance in preparing the reports and forecasts required in these cases. Mr. Issa's Monthly Fee has been fixed in these cases based upon the assumption that these administrative and other services will be performed by the GlassRatner Personnel, and not by Mr. Issa, thereby allowing GlassRatner to charge the estate the amount of the Monthly Fee, and not a higher amount. Authorizing the Debtors to employ the GlassRatner Personnel, therefore, will facilitate an economical administration of these cases.

## VIII.

## GLASSRATNER'S COMPENSATION MAY BE PAID FROM SOURCES OUTSIDE OF THE DEBTORS' ESTATES, WITHOUT FURTHER COURT ORDER OR APPROVAL

As set forth hereinabove, the Retainer was funded not by the Debtors but by Mr. Howell from funds that are not property of the Debtors' estates. The following section addresses the disposition of such funds.

It is well established that fee applications are unnecessary when a professional is being compensated from sources outside a debtor's estate. See, In re McDonald Bros. Const., Inc., 114 B.R. 989, 994 (Bankr.N.D.Ill.1990) ("the fee application procedure only applies when a professional is seeking an award from the estate."); David & Hagner, P.C. v. DHP, Inc., 171 B.R. 429, 436 (D.D.C. 1994) *affirmed* 70 F.3d 637 (D.C. Cir. 1995) (Chapter 11 debtor's law firm was not required to apply to bankruptcy court for allowance of payments received from a third party).

A bankruptcy court has no jurisdiction, under Sections 330 or 331 of the Bankruptcy Code, with respect to a use of non-estate property to pay the fees and costs of a debtor's counsel. See, Roland v. UNUM Life Ins. of America, 223 B.R. 499, 503 (E.D.Va. 1998) (the bankruptcy court has no jurisdiction over the use of non-estate assets for the retention of counsel); Noble v. White, 85 Conn. App. 233, 239, 857 A.2d 362, 365 (2004) (a bankruptcy court does not have jurisdiction over fees paid from nonbankrupt estate assets).

See also, David & Hagner, P.C. v. DHP, Inc., 171 B.R. 429, 437 (D.D.C. 1994), affirmed 70 F.3d 637 (D.C. Cir. 1995) (a law firm representing a Chapter 11 debtor is not required to apply to the court for the approval of fees paid by a non-debtor entity); In re McDonald Bros. Construction, Inc., 114 B.R. 989, 993 (N.D.Ill. Bankr. 1990) (fee application procedures of Sections 330 and 331 of the Bankruptcy Code do not apply when compensation has been obtained from a non-debtor source); Matter of Hargis, 887 F.2d 77, 79 (5th Cir. 1989) (the Fifth Circuit Court of Appeals held that a bankruptcy court has "no authority to order disgorgement of the funds received by [counsel], which consisted wholly of non-estate assets").

The above-cited authority makes clear that, if a professional obtains compensation from non-estate assets, such compensation is not subject to review under Sections 330 or 331 of the Bankruptcy Code.

In this case, as set forth in the Issa Declaration, the Retainer was paid to GlassRatner by Mr. Howell, and not from funds of any Debtors' estates. GlassRatner intends to apply to the Court, in conformity with Sections 330 and 331 of the Bankruptcy Code, for allowance and payment of compensation for GlassRatner Personnel from the Debtors' estates after the Retainer is exhausted. GlassRatner acknowledges and agrees that, to the extent that GlassRatner seeks compensation of GlassRatner Personnel's fees and costs from funds of the Debtors' estates, such compensation is subject to the Court's review and approval under Sections 330 and 331 of the Bankruptcy Code. GlassRatner respectfully submits, however, that, to the extent that GlassRatner seeks compensation of GlassRatner Personnel from non-estate funds, such as the Retainer, such compensation should not be subject to review by the Court and can be paid to GlassRatner without GlassRatner's complying with any fee application procedures or order of the Court.

## IV.

## CAUSE EXISTS TO WAIVE THE STAY IMPOSED UNDER RULE 6004(h) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

Pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). The Debtors respectfully submit that, to the extent that Rule 6004(h) applies to the Debtors' proposed retention of Mr. Issa as CRO in these cases, cause exists to waive the 14-day stay imposed by Rule 6004(h). A 14-day stay of an order authorizing the Debtors' retention of Mr. Issa as CRO will serve only to delay, unnecessarily, the administration of these cases, to the detriment of the Debtors' creditors.

///

## X.

## CONCLUSION

Based upon the foregoing, the Debtors respectfully submit that good cause exists for this Court to enter an order granting to the Debtors the relief requested herein and such other and further relief as the Court may deem just and proper.

DATED: June 27, 2018

**WINTHROP COUCHOT**
**GOLUBOW HOLLANDER, LLP**

By: *\/s/ Robert E. Opera*
Robert E. Opera
Andrew B. Levin
[Proposed] General Insolvency Counsel for Debtors and Debtors-in-Possession

ROBERT E. OPERA – California State Bar No. 101182
ropera@wcghlaw.com
WINTHROP COUCHOT
GOLUBOW HOLLANDER, LLP
1301 Dove Street, Suite 500
Newport Beach, CA 92660
Telephone: (949) 720-4100/Facsimile: (949) 720-4111

STEPHEN R. HARRIS – Nevada State Bar No. 001463
steve@harrislawreno.com
HARRIS LAW PRACTICE LLC
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
Telephone: (775) 786-7600

[Proposed] General Insolvency Counsel
for Debtor and Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

*****

| | |
|---|---|
| In re:<br><br>☐ X-TREME BULLETS, INC.,<br>☐ HOWELL MUNITIONS & TECHNOLOGY, INC.,<br>☐ AMMO LOAD WORLDWIDE, INC.,<br>☐ CLEARWATER BULLET, INC.,<br>☐ HOWELL MACHINE, INC.,<br>☐ FREEDOM MUNITIONS, LLC,<br>☐ LEWIS-CLARK AMMUNITION COMPONENTS, LLC,<br>☐ COMPONENTS EXCHANGE, LLC,<br>☒ All Debtors.<br><br>Debtors.<br>_______________________________/ | Jointly Administered under<br><br>Case No. 18-50609-btb with<br><br>Case Nos. 18-50610-btb; 18-50611-btb; 18-50613-btb; 18-50614-btb; 18-50615-btb; 18-50616-btb; and 18-50617-btb<br><br>Chapter 11 Proceedings<br><br>**CERTIFICATE OF SERVICE** |

# CERTIFICATE OF SERVICE

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1301 Dove Street, Suite 500 Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled: **MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO: (1) ENGAGE J. MICHAEL ISSA AS CHIEF RESTRUCTURING OFFICER OF THE DEBTORS; AND (2) EMPLOY GLASSRATNER ADVISORY & CAPITAL GROUP, LLC TO ASSIST THE CHIEF RESTRUCTURING OFFICER; MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 6/27/2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **SHAWN CHRISTIANSON** schristianson@buchalter.com, cmcintire@buchalter.com
- **STEPHEN R HARRIS** steve@harrislawreno.com, hannah@harrislawreno.com;norma@harrislawreno.com
- **JAY W. HURST** jay.hurst@oag.texas.gov, sherri.simpson@oag.texas.gov
- **TIMOTHY A LUKAS** ecflukast@hollandhart.com
- **ROBERT E. OPERA** ropera@wcghlaw.com, pj@wcghlaw.com;stacyly@wcghlaw.com;Meir@virtualparalegalservices.com;Alevin@wcghlaw.com
- **U.S. TRUSTEE - RN - 11** USTPRegion17.RE.ECF@usdoj.gov

**2. SERVED BY UNITED STATES MAIL**: On 6/27/2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Bruce T. Beesley
U.S. Bankruptcy Court
C. Clifton Young Federal Building
300 Booth Street, 5th Floor
Reno, NV 89509

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/27/2018 | Stacy Ly | [signature] |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

ROBERT E. OPERA – California State Bar No. 101182
ropera@wcghlaw.com
WINTHROP COUCHOT
GOLUBOW HOLLANDER, LLP
1301 Dove Street, Suite 500
Newport Beach, CA 92660
Telephone: (949) 720-4100/Facsimile: (949) 720-4111

STEPHEN R. HARRIS – Nevada State Bar No. 001463
steve@harrislawreno.com
HARRIS LAW PRACTICE LLC
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
Telephone: (775) 786-7600

[Proposed] General Insolvency Counsel
for Debtor and Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

*****

In re:

☐ X-TREME BULLETS, INC.,

☐ HOWELL MUNITIONS & TECHNOLOGY, INC.,

☐ AMMO LOAD WORLDWIDE, INC.,

☐ CLEARWATER BULLET, INC.,

☐ HOWELL MACHINE, INC.,

☐ FREEDOM MUNITIONS, LLC,

☐ LEWIS-CLARK AMMUNITION COMPONENTS, LLC,

☐ COMPONENTS EXCHANGE, LLC,

☒ All Debtors.

Debtors.

____________________________________/

Jointly Administered under

Case No. 18-50609-btb with

Case Nos. 18-50610-btb; 18-50611-btb; 18-50613-btb; 18-50614-btb; 18-50615-btb; 18-50616-btb; and 18-50617-btb

Chapter 11 Proceedings

**<u>CERTIFICATE OF SERVICE</u>**

# CERTIFICATE OF SERVICE

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1301 Dove Street, Suite 500 Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled: **MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO: (1) ENGAGE J. MICHAEL ISSA AS CHIEF RESTRUCTURING OFFICER OF THE DEBTORS; AND (2) EMPLOY GLASSRATNER ADVISORY & CAPITAL GROUP, LLC TO ASSIST THE CHIEF RESTRUCTURING OFFICER; MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 6/27/2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **SHAWN CHRISTIANSON** schristianson@buchalter.com, cmcintire@buchalter.com
- **STEPHEN R HARRIS** steve@harrislawreno.com, hannah@harrislawreno.com;norma@harrislawreno.com
- **JAY W. HURST** jay.hurst@oag.texas.gov, sherri.simpson@oag.texas.gov
- **TIMOTHY A LUKAS** ecflukast@hollandhart.com
- **ROBERT E. OPERA** ropera@wcghlaw.com, pj@wcghlaw.com;stacyly@wcghlaw.com;Meir@virtualparalegalservices.com;Alevin@wcghlaw.com
- **U.S. TRUSTEE - RN - 11** USTPRegion17.RE.ECF@usdoj.gov

**2. SERVED BY UNITED STATES MAIL:** On 6/27/2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Bruce T. Beesley
U.S. Bankruptcy Court
C. Clifton Young Federal Building
300 Booth Street, 5th Floor
Reno, NV 89509

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/27/2018 | Stacy Ly | [signature] |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

Honorable Bruce T. Beesley
United States Bankruptcy Judge

Entered on Docket
August 06, 2018

ROBERT E. OPERA – California State Bar No. 101182 ropera@wcghlaw.com
1301 Dove Street, Suite 500
Newport Beach, CA 92660
Telephone: (949) 720-4100

STEPHEN R. HARRIS – Nevada State Bar No. 001463 steve@harrislawreno.com
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
Telephone: (775) 786-7600

[Proposed] General Insolvency Counsel
for Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>☐ X-TREME BULLETS, INC.,<br>☐ AMMO LOAD WORLDWIDE, INC.,<br>☐ CLEARWATER BULLET, INC.,<br>☐ FREEDOM MUNITIONS, LLC,<br>☐ HOWELL MACHINE, INC.,<br>☐ HOWELL MUNITIONS & TECHNOLOGY, INC.,<br>☐ LEWIS-CLARK AMMUNITION COMPONENTS, LLC,<br>☐ COMPONENTS EXCHANGE, LLC, an<br>☒ All Debtors.<br><br>Debtors and Debtors-in-Possession. | Jointly Administered under Case No. 18-50609-btb with<br><br>Case Nos. 18-50610-btb; 18-50611-btb; 18-50613-btb; 18-50614-btb; 18-50615-btb; 18-50616-btb; and 18-50617-btb<br><br>Chapter 11 Proceedings<br><br>**ORDER AUTHORIZING THE DEBTORS TO ENGAGE J. MICHAEL ISSA AS CHIEF RESTRUCTURING OFFICER OF THE DEBTORS AND GLASSRATNER ADVISORY & CAPITAL GROUP, LLC TO ASSIST THE CHIEF RESTRUCTURING OFFICER**<br><br>DATE: July 25, 2018<br>TIME: 2:00 p.m.<br>EST. TIME FOR HEARING:<br>PLACE: Courtroom 2 (5th Floor)<br>300 Booth Street<br>Reno, NV 89509 |

Case 18-50609-btb Doc 127 Entered 08/06/18 16:42:51 Page 2 of 7

The hearing on the *Motion of Debtors and Debtors-in-Possession for Entry of an Order Authorizing the Debtors to: (1) Engage J. Michael Issa as Chief Restructuring Officer of the Debtors; and (2) Employ GlassRatner Advisory & Capital Group, LLC to Assist the Chief Restructuring Officer* ("Motion") [Docket No. 69] filed by X-Treme Bullets Inc.; Ammo Load Worldwide, Inc.; Clearwater Bullet, Inc.; Freedom Munitions, LLC; Howell Machine, Inc.; Howell Munitions & Technology, Inc.; Lewis-Clark Ammunition Components, LLC; and Components Exchange, LLC, the debtors and debtors-in-possession in the above-captioned Chapter 11 cases (collectively, "Debtors"), was held on July 25, 2018 at 2:00 p.m., before the Honorable Bruce Beesley, United States Bankruptcy Judge, in the above-entitled Court. Robert E. Opera, Esq. of Winthrop Couchot Golubow Hollander, LLP and Stephen Harris, Esq. of Harris Law Practice LLC appeared on behalf of the Debtors. Jared Day, Esq. appeared on behalf of the Office of the United States Trustee ("U.S. Trustee"). Mona Burton, Esq. and Timothy A. Lukas, Esq. of Holland & Hart, LLP appeared on behalf of Z.B., N.A. dba Zions First National Bank ("Bank"). All other appearances made were as reflected on the Court's record of the hearing.

The Court having reviewed and considered the Motion; the Declaration of David C. Howell filed in support of the Motion [Docket No. 70]; the Declaration of J. Michael Issa filed in support of the Motion ("Issa Declaration") [Docket No. 71]; the Notice of hearing on the Motion [Docket No. 72]; the Supplement to the Motion [Docket No. 102]; and the Court having found that the notice given of the hearing on the Motion was proper, and that modifications which the Debtors made to the proposed terms of the Debtors' engagement of the Chief Restructuring Officer ("CRO") and GlassRatner Personnel pursuant to an agreement between the Debtors and the U.S. Trustee, as set forth in the Supplement, were appropriate and consistent with the interests of the Debtors' creditors; and for other good and sufficient cause,[1]

**IT IS HEREBY ORDERED:**

1. The Motion, as modified hereinbelow, is hereby approved.

2. The Debtors are hereby authorized, effective as of June 8, 2018, to engage J. Michael Issa ("Mr. Issa") of GlassRatner Advisory & Capital Group, LLC ("GlassRatner") as the

[1] Unless otherwise defined herein, the definitions of the capitalized terms set forth herein are as set forth in the Motion.

Debtors' CRO, and to engage GlassRatner Personnel to assist Mr. Issa to perform his duties as CRO, pursuant to Sections 105(a) and 363 of the Bankruptcy Code, in accordance with the terms set forth in the engagement agreement by and between GlassRatner and the Debtors ("Engagement Agreement"), a true and complete copy of which is attached as Exhibit "1" to the Issa Declaration, and the Motion, as such provisions are expressly modified hereinbelow.

3. Notwithstanding any provisions of the Motion to the contrary, the Debtors are hereby authorized to engage GlassRatner Personnel pursuant to Sections 105(a) and 363 of the Bankruptcy Code and not pursuant to Sections 327 or 330 of the Bankruptcy Code.

4. GlassRatner and its affiliates shall not act in any other capacity (for example, and without limitation, as a financial advisor, claims agent/claims administrator, or investor/acquirer) in connection with the above-captioned cases.

5. In the event that the Debtors seek to have GlassRatner Personnel assume executive officer positions that are different than the position(s) disclosed in the Motion, or to materially change the terms of the engagement by either (i) modifying the functions of GlassRatner Personnel, (ii) adding new personnel, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed by GlassRatner.

6. No principal, employee or independent contractor of GlassRatner and its affiliates shall serve as a director of any of the above-captioned Debtors during the pendency of the above-captioned cases.

7. Without limiting the provisions of any order regarding the Bank's cash collateral, the Debtors are hereby authorized to pay to GlassRatner a monthly non-refundable fee in the amount of $20,000 as compensation for Mr. Issa's services as CRO, and to reimburse GlassRatner for any reasonable out-of-pocket expenses that Mr. Issa incurs in connection with his services as CRO.

8. The Debtors are hereby authorized to compensate GlassRatner on a monthly basis for the services of GlassRatner Personnel to assist the CRO to perform the CRO's duties in this case, based upon the number of hours worked by the GlassRatner Personnel billed at their standard hourly billing rates, as set forth in the Motion. The time entries of GlassRatner

Case 18-50609-btb Doc 127 Entered 08/06/18 16:42:51 Page 4 of 7

Personnel shall identify the time spent completing each task in 1/10/hour increments and the corresponding charge (time multiplied by hourly rate).

9. GlassRatner shall file with the Court and serve, on at least a quarterly basis, reports of compensation earned and expenses incurred by the CRO and by GlassRatner Personnel ("Notice of Compensation"). The Notice of Compensation shall summarize the services provided, identify the compensation earned by the CRO and by GlassRatner Personnel, and itemize the expenses incurred by them. Time records shall (i) be appended to Notices of Compensation, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category.

a. The Notice of Compensation shall be served upon the Debtors, the U.S. Trustee, the Bank, those parties who request special notice in the Debtors' cases, and upon any counsel for an official committee of unsecured creditors ("Committee") if a Committee is appointed by the U.S. Trustee in the Debtors' cases and the Committee employs counsel, or, if not, upon the creditors holding the 20 largest general unsecured claims in the HMT Debtors' cases and in the Components Exchange case.

b. If a written objection to the Notice of Compensation is filed and served within 10 days after the service of the Notice of Compensation, the compensation to which the objection applies (i.e., the disputed compensation) shall be subject to review by the Court.

10. Success fees, transaction fees, or other back-end fees shall be approved by the Court at the conclusion of the case on a reasonableness standard and are not being pre-approved by entry of this Order. No success fee, transaction fee or back-end fee shall be sought upon conversion of the case, dismissal of the case for cause, or appointment of a trustee.

11. The Debtors are hereby authorized to indemnify the CRO on the same terms as the corporate Debtors' other officers and directors under the corporate bylaws and applicable state law, as well as provide to the CRO coverage under any D&O insurance policy of the Debtors. There shall be no indemnification of GlassRatner or its affiliates.

12. For a period of three years after the conclusion of the engagement, neither GlassRatner nor any of its affiliates shall make any investments in the Debtors or the Reorganized Debtors.

13. GlassRatner shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtors, their creditors, or other parties in interest. The obligation to disclose identified in this paragraph is a continuing obligation.

14. Persons furnished by GlassRatner for executive officer positions shall be retained in such positions upon the express approval thereof by the Debtors' Board of Directors whose members are performing their duties and obligations as required under applicable law ("Board"), and will act under the direction, control and guidance of the Board and shall serve at the Board's pleasure (*i.e.* may be removed by majority vote of the Board); provided, however, that neither David Howell nor the Debtors shall interfere with the services rendered by the CRO or by GlassRatner Personnel, nor terminate the engagement of the CRO or GlassRatner Personnel, except upon further order of the Court after appropriate notice and a hearing.

15. The 14-day stay provided for in Bankruptcy Rule 6004(h) is waived and this Order shall be effective immediately after entry of this Order.

///

16. No further notice or hearing shall be necessary to effectuate this Order.

**IT IS SO ORDERED.**

Prepared and Submitted by:
STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC

-and-

ROBERT E. OPERA, ESQ.
ANDREW B. LEVIN, ESQ.
WINTHROP COUCHOT
GOLUBOW HOLLANDER, LLP

______________________________
[Proposed] General Insolvency Counsel
for Debtors and Debtors-in-Possession

**CERTIFICATION RE: RULE 9021**

In accordance with Local Rule 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

____ The court has waived the requirement set forth in LR 9021(b)(1).

____ No party appeared at the hearing or filed an objection to the motion.

X___ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

*/s/ Timothy A. Lukas* — Approve
Timothy A. Lukas, Esq. — Approval/Disapproval
Holland & Hart LLP
Z.B., N.A.

*/s/ Jared Day* — Approve
Jared Day, Esq. — Approval/Disapproval
Office of the U S Trustee

####