Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, Nevada 89101
Telephone: (702) 385-5544
Facsimile: (702) 442-9887

*Proposed Attorneys for Debtor*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>MUSCLEPHARM CORPORATION,<br><br>Debtor. | Case No.: 22-14422-NMC<br><br>Chapter 11<br><br>Hearing Date: January 24, 2023<br>Hearing Time: 9:30 AM PST |

**APPLICATION FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 327(a), 328, 330, AND 331 AND FED. R. BANKR. P. 2014 AND 2016 AUTHORIZING THE EMPLOYMENT AND RETENTION OF PORTAGE POINT PARTNERS, LLC AS RESTRUCTURING ADVISORS FOR THE DEBTOR**

MusclePharm Corporation, a Nevada corporation (the "**Company**" or "**Debtor**"), the debtor and debtor-in-possession in the above-captioned Chapter 11 case, hereby submits this application (the "**Application**") for the entry of an order authorizing and approving the employment and retention of Portage Point Partners, LLC ("**Portage Point**") as the Debtor's restructuring advisors in its bankruptcy case, with the appointment of Jeffrey Gasbarra ("**Gasbarra**") as the Debtor's Chief Restructuring Officer (the "**CRO**") and with respect to all matters related thereto pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure.[1]

---

[1] Unless otherwise indicated, all chapter and section references are to the Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"). All references to a "**Chapter**" or "**Section**" shall refer to the Bankruptcy Code. "**Bankruptcy Rule**" references are to the Federal Rules of Bankruptcy Procedure 1001-9037. "**Civil Rule**" references are to the Federal Rules of Civil Procedure 1-86. "**Local Rule**" or "**LR**" references are to the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court, District of Nevada.

This Application is made and based on the *Declaration of Ryan Drexler in Support of Debtor's Chapter 11 Petition, First Day Motions, and Related Relief* (the "**First Day Declaration**") and the *Declaration of Jeffrey Gasbarra in Support of Debtor's Application for Entry of an Order Under 11 U.S.C. §§ 327(a), 328, 330, and 331 and Fed. R. Bankr. P. 2014 and 2016 Authorizing the Employment and Retention of Portage Point Partners, LLC as Restructuring Advisors for the Debtor* (the "**Gasbarra Declaration**"), filed contemporaneously herewith, the points and authorities set forth below, the pleadings and papers contained in this Court's file, judicial notice of which is respectfully requested, and any evidence or oral argument presented at the time of the hearing on this Application.

**JURISDICTION**

1. This Court has original and exclusive jurisdiction over the matter presented in this Application under to 28 U.S.C. §§ 157(b)(2)(A) and 1334(e)(2), LR 1001(b)(1), and the order of reference of all bankruptcy cases by the United States District Court for the District of Nevada to the Bankruptcy Court. Adjudication of this Application constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (b)(2)(O).

2. Venue of the Debtor's Chapter 11 case (the "**Chapter 11 Case**") and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016.

**BACKGROUND**

4. On December 15, 2022 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code with this Court.

5. The Debtor continues to operate as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. The Office of the United States Trustee for Region 17 (the "**UST**") has not appointed any case trustee or examiner in the Chapter 11 Case.

6. To date, the UST has not appointed a committee of unsecured creditors in the Chapter 11 Case. *See* Docket, Case No. 22-14422-NMC.

7. A detailed description of the Debtor's financial obligations, events leading up the Petition Date, and other matters are set forth in the First Day Declaration of Ryan Drexler.

8. Additional facts supporting the relief requested by Debtor through the Application are set forth herein and in the Gasbarra Declaration.

**RELIEF REQUESTED**

9. By this Application, the Debtor seeks entry of an order, pursuant to Sections 327(a) and 328 of the Bankruptcy Code, and Bankruptcy Rules 2014 and 2016, authorizing the employment and retention of Portage Point to serve as the Debtor's restructuring advisors in connection with prosecution of the Chapter 11 Case and all matters related thereto, and the appointment of Gasbarra as the Debtor's CRO according to the terms and conditions of the letter agreement dated December 21, 2022 (the "**Engagement Agreement**"), a copy of which is attached to the Gasbarra Declaration as **Exhibit 1**.[2]

10. The designation of Jeffrey Gasbarra as CRO is subject to, and will be effective only upon, the Debtor's compliance with Indemnification & D&O provisions of the Engagement Letter, including as it relates to acceptable insurance coverage for Portage Point personnel serving as directors or officers of the Debtor.

**BASIS FOR RELIEF REQUESTED**

11. The Debtor selected Portage Point as its restructuring advisors and Gasbarra as the Debtor's CRO because Portage Point and Gasbarra are well-qualified to advise the Debtor in connection with the types of financial advisory services that will be required by the Debtor in its Chapter 11 Case, including efforts to stabilize and reorganize the Debtor's assets. Portage Point is an advisory firm that specializes in financial and operational corporate restructuring, investment banking and asset sales, valuation, forensic accounting, complex litigation support, and computations involved in court proceedings and dispute resolution. Portage Point serves, among others, middle-market companies and their creditors, stakeholders, and professionals in roles

[2] Portage Point has agreed to reduce the retainer set forth in the Engagement Agreement from $150,000 to $75,000.

including financial advisor, interim manager, chief restructuring officer, trustee, expert witness, investment banker, and M&A advisor. Accordingly, the Debtor believes that Portage Point is both well-qualified and able to advise it in its Chapter 11 Case in an efficient and timely manner.

12. Since its retention, Portage Point's professionals have held numerous calls and reviewed numerous documents to become familiar with the Debtor's operations, assets, liabilities, expenses, and many of the potential financial and business issues that may arise in this Chapter 11 Case. In providing its services to the Debtor, Portage Point has worked closely with the Debtor, its professionals (both internal and external), and counsel. Accordingly, Portage Point has the experience, expertise, and relevant knowledge regarding the Debtor's financial affairs, operations, and assets to enable it to provide efficient and cost-effective financial advisory services to the Debtor. Accordingly, Portage Point has the relevant experience, expertise, and relevant knowledge regarding the Debtor's business and financial affairs to assist the Debtor in its Chapter 11 Case in an efficient and timely manner.

## SERVICES TO BE RENDERED

13. Subject to the Court's approval of this Application and as memorialized in the Engagement Agreement, Portage Point has agreed to render such professional services to the Debtor:

*CRO and Restructuring Advisory:*

(a) CRO shall be responsible for daily requirements of managing and administering the Company's Chapter 11 Case including, without limitation, serving as declarant and/or fact witness (as necessary and appropriate);

(b) evaluating and/or developing a short-term cash flow model and/or related liquidity management tools for the Company for such purpose(s) as the Company may require;

(c) evaluating and/or developing a business plan and/or such other related forecasts and analyses for the Company for such purpose(s) as the Company may require;

(d) evaluating and/or developing various strategic and/or financial alternatives and financial analyses for such purpose(s) as the Company may require;

(e) engaging and negotiating with the Company's various constituents, including, without limitation, holders of the Company's debt or equity, the Company's employees, and the Company's customers, vendors, and other commercial counterparties (collectively, "Constituents"), which assistance may include, without limitation, meeting with Constituents, developing presentations, and providing management with financial analytical assistance necessary to facilitate such negotiations;

(f) developing and distributing other information that may be required by the Company or the Constituents;

(g) obtaining and presenting information required by parties in interest in the Chapter 11 Case, including any statutory committees appointed in the Chapter 11 Case, or by the court presiding over the Chapter 11 Case (the "**Bankruptcy Court**");

(h) preparing other business, financial and/or other reporting related to the Chapter 11 Case, including, but not limited to, development and execution of asset sales, a chapter 11 plan of reorganization for the Company (a "**Plan**"), and a disclosure statement for the Plan; and

(i) providing the Company with assistance on such other matters as may be requested by the Company that are within Portage Point's expertise and otherwise mutually agreeable to Portage Point and the Company.

*General Services:*

(a) assisting the Company in preparing documentation within Portage Point's area of expertise that is required in connection with any Financing, Restructuring and/or Sale Transaction;

(b) attending Board meetings with respect to matters on which Portage Point has been engaged to advise hereunder;

(c) providing testimony, as necessary, with respect to matters on which Portage Point has been engaged to advise hereunder in any proceeding in the Chapter 11 Case; and

(d) providing the Company with other financial restructuring advice as may be specifically agreed upon in writing by the Company and Portage Point.

14. In addition, the Debtor has retained, and may further retain, estate professionals during the term of the engagement contemplated by the Application and Engagement Agreement. Portage Point will work cooperatively with such other estate professionals, as is otherwise appropriate under applicable law and as authorized by Debtor, to avoid any unnecessary duplication of services and their related fees, costs, and charges on behalf of Debtor's bankruptcy estate.

## PROFESSIONAL COMPENSATION

15. The Debtor has agreed to pay professional fees based on the actual hours charged at Portage Point's standard hourly rates then in effect when the services are rendered. The following are the standard hourly rates of the professionals anticipated to provide services to Debtor in and related to the Chapter 11 Case:

| Title | Hourly Rate |
|---|---|
| Managing Partner | $945 |
| Service Line Leader | $875 |
| CRO | $790 |

| | |
|---|---|
| Managing Director | $765 - $795 |
| Director | $645 - $695 |
| Vice President | $545 - $630 |
| Associate | $390 - $425 |

16. Portage Point generally adjusts its hourly rates on an annual basis and the above rates reflect rates for 2022.[3]

17. In addition to professional fees, Portage Point will be reimbursed for direct out-of-pocket expenses including, but not limited to, travel, costs of reproduction, research, communications, legal counsel, any applicable sales or excise taxes, and other direct expenses.

18. Portage Point will file an application with the Bankruptcy Court for an award and allowance of its compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the guidelines established by the U.S. Trustee, and the terms of any order establishing procedures for interim compensation that may be entered in the Chapter 11 Case. Portage Point's compensation for services rendered on Debtor's behalf shall be fixed by the Bankruptcy Court after due application, subject to the hourly rate structure and other terms set forth in the Engagement Agreement pursuant to 11 U.S.C. § 328(a).

**DISCLOSURES AND DISINTERESTEDNESS**

19. Section 327(a) incorporates a general disinterestedness standard, and Bankruptcy Rule 2014 requires that an application for employment disclose all connections with the Debtor, its estate, the Debtor's other professionals, creditors, other interested parties, and the U.S. Trustee. Based on the Debtor's disclosure of its equity security holders, officers, directors, affiliates, creditors, customers, and other parties in interest, Portage Point undertook a robust review to determine whether it had any conflicts or relationships and has not identified any connection with the Debtor, its insiders, creditors, any other party or parties in interest, their respective attorneys

[3] The hourly rates set forth herein are the 2022 hourly rates of Portage Point. Portage Point is currently in the process of reviewing and setting its 2023 hourly rates, and will file a supplement to the retention application when such rates are set.

Case 22-14422-nmc Doc 41 Entered 01/03/23 14:14:26 Page 7 of 14

and accountants, or any person employed in the Office of the United States Trustee, other than those set forth in the Gasbarra Declaration. *See* Gasbarra Decl., ¶ 14.

20. To the best of the Debtor's knowledge, information, and belief, and based upon and subject to disclosures made in the Gasbarra Declaration, Portage Point and its professionals are "disinterested" persons within the meaning of Sections 101(14) and 327 of the Bankruptcy Code, as modified by Section 1107(b). Neither Portage Point nor any of its professionals:

a. Holds or represents any interest adverse to the Debtor's estate;

b. Is a prepetition creditor, equity holder, or insider of the Debtor;

c. Is or has been, within two (2) years before the date of the filing of the petition herein, a director, officer or employee of the Debtor;

d. Has any interest materially adverse to the interest of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason; or

e. Is related, through its partners or employees, to the United States Trustee or a Bankruptcy Judge seated on the Bankruptcy Court.

*See* Gasbarra Decl., ¶15.

21. To the extent that Portage Point discovers any connection with any interested party or enters into any new relationship with any interested party, Portage Point will promptly supplement its disclosures to the Bankruptcy Court. In addition, if any new material relevant facts or relationships are discovered or arise, Portage Point will promptly file a supplemental declaration in accordance with Bankruptcy Rule 2014(a). *See* Gasbarra Decl., ¶ 17.

22. No promises have been received by Portage Point, nor any employee or independent contractor thereof, as to payment or compensation in connection with the Chapter 11 Case other than in accordance with the provisions of the Bankruptcy Code. Except for internal agreements among the employees and independent contractors of Portage Point regarding the sharing of revenue or compensation, neither Portage Point nor any of its employees or independent contractors

has entered into an agreement or understanding to share compensation with any other entity as described in Bankruptcy Rule 2016. *See* Gasbarra Decl., ¶ 18.

**<u>APPROVAL OF ENGAGEMENT AGREEMENT TERMS UNDER SECTION 328(a)</u>**

23. In accordance with the terms of the Engagement Agreement and subject to Bankruptcy Court approval, the Debtor seeks approval of the fee structure described herein pursuant to Section 328 of the Bankruptcy Code. Section 328 provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

24. Section 328(a) therefore permits the Court to approve the fee structure proposed in the Engagement Agreement in connection with the Debtor's retention of Portage Point, subject to Portage Point's filing of fee applications under Sections 330 and 331 of the Bankruptcy Code.

25. The fee structure outlined in the Engagement Agreement and summarized above is consistent with the typical arrangement Portage Point and other firms enter into when rendering similar services under similar circumstances and is the product of arm's-length negotiations. The fee structure is consistent with Portage Point's practices and no less favorable than the fee structure customarily employed by Portage Point and generally accepted by its clients. Portage Point's fee structure is reasonable, market-based, and designed to compensate Portage Point for its work in a fair and equitable manner. Furthermore, because Portage Point's experience and expertise will inure to the collective benefit of Debtor, its respective bankruptcy estate, its creditors, and other parties in interest in the Chapter 11 Case, and the value of Portage Point's services to the Debtor derives in substantial part from that experience and expertise, the structure and amount of the fees is reasonable within the meaning of 11 U.S.C. § 328(a), regardless of the number of hours to be expended by Portage Point's professionals in the performance of the services to be provided hereunder.

26. Accordingly, the Debtor requests that the Bankruptcy Court approve the terms of the Engagement Agreement as reasonable under 11 U.S.C. § 328(a).

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests that this Court enter an order substantially in the form attached hereto as **Exhibit 1**: (i) authorizing the Debtor to employ and retain Portage Point as its restructuring advisors according to the terms and conditions set forth in this Application and the Engagement Agreement; (ii) appoint Jeffrey Gasbarra as the CRO for the Debtor; and (iii) granting such other and further relief as is just and proper.

Dated: January 3, 2023.

By: *\/s/ Samuel A. Schwartz*
Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, Nevada 89101

*Proposed Attorneys for Debtor*

# EXHIBIT 1

Case 26-00465-ELG Document 65-2 Filed 10/01/26 Page 11 of 29

Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, Nevada 89101
Telephone: (702) 385-5544
Facsimile: (702) 442-9887

*Proposed Attorneys for Debtor*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>MUSCLEPHARM CORPORATION,<br><br>Debtor. | Case No.: 22-14422-NMC<br><br>Chapter 11<br><br>Hearing Date: January 24, 2023<br>Hearing Time: 9:30 AM PST |

**[*PROPOSED*] ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF PORTAGE POINT PARTNERS, LLC AS RESTRUCTURING ADVISORS FOR THE DEBTOR**

MusclePharm Corporation, the debtor and debtor-in-possession (the "**Debtor**"), filed its *Application for Entry of an Order Under 11 U.S.C. §§ 327(a), 328, 330, and 331 and Fed. R. Bankr. P. 2014 and 2016 Authorizing the Employment and Retention of Portage Point Partners, LLC as Restructuring Advisors for the Debtor* [ECF No. ___] (the "**Application**"),[1] which came on for hearing before the above-captioned Court on January 24, 2023, at 9:30 AM PST. All appearances

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Application.

were duly noted on the record at the hearing on the Application.

The Court, having reviewed the Application, the Declaration of Jeffrey Gasbarra filed in support of the Application, and other pleadings and papers in the Court's file, and being satisfied with the representations made in the Application and the Gasbarra Declaration that Portage Point Partners, LLC ("**Portage Point**") represents no interest adverse to the Debtor's estate, that Portage Point is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code, and that Portage Point's retention is necessary and in the best interests of the Debtor's estate, its creditors, and other parties in interest; and it appearing this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that this Court has exclusive jurisdiction over the subject matter of the Application pursuant to 28 U.S.C. § 1334(e)(2); and it appearing that venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and upon the record of the hearing held on the Application; and it appearing that proper and adequate notice of the Application has been given and that no other or further notice is necessary; and after due deliberation thereon, and all parties appearing having an opportunity to be heard; and good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED** that:

1. The Application is GRANTED.

2. The Debtor's retention of Portage Point as its restructuring advisors pursuant to Sections 327(a) and 328 of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016, and subject to the terms of the Engagement Agreement, is hereby authorized and approved.

3. Jeffrey Gasbarra of Portage Point is hereby appointed as the chief restructuring officer of the Debtor.

4. Portage Point shall be compensated in accordance with Sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, and other applicable Bankruptcy Rules, Local Rules, and orders of the Court.

5. Portage Point's hourly rates, including periodic increases of the same as contemplated by the Application and Engagement Agreement, are hereby approved under 11

Case 2:26-00265-ELG Document 65-2 Filed 10/01/26 Page 13 of 29

U.S.C. § 328(a).

6. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

**IT IS SO ORDERED.**

Prepared and submitted by:

SCHWARTZ LAW, PLLC

By: */s/ Samuel A. Schwartz*
Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
601 East Bridger Avenue
Las Vegas, Nevada 89101

*Proposed Attorneys for Debtor*

**LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐ The court has waived the requirement set forth in LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion.

☐ I have delivered a copy of this proposed order to all counsel and any unrepresented parties who appeared at the hearing, except those as to whom review was waived on the record at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of this order.

###

Terri H. Didion, Assistant United States Trustee
State Bar No. CA 133491
Jared A. Day, Trial Attorney
State Bar No. CA 275687
UNITED STATES DEPARTMENT OF JUSTICE
Office of the United States Trustee
300 Las Vegas Boulevard South
Las Vegas, Nevada 89101
Telephone: (775) 784-5335
Fax: (775) 784-5531
E-mail: *jared.a.day@usdoj.gov*

Attorneys for the United States Trustee for Region 17
TRACY HOPE DAVIS

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MUSCLEPHARM CORPORATION,<br><br>Debtor. | Case No: 22-14422-nmc<br><br>Chapter 11<br><br>Hearing Date: January 24, 2023<br>Hearing Time: 9:30 a.m.<br>Location: Telephonic or via Zoom |

**UNITED STATES TRUSTEE'S OPPOSITION AND RESERVATION OF RIGHTS TO DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF PORTAGE POINT PARTNERS, LLC AS RESTRUCTURING ADVISORS AND JEFFREY GASBARRA AS CHIEF RESTRUCTURING OFFICER**

Tracy Hope Davis, United States Trustee for Region 17 ("U.S. Trustee"), by and through her undersigned counsel, hereby files her *Opposition and Reservation of Rights* ("Opposition") *to the Application for Entry of an Order Authorizing the Employment and Retention of Portage Point Partners, LLC* ("PPP") *as Restructuring Advisors and Jeffrey Gasbarra* ("Mr. Gasbarra") *as Chief Restructuring Officer* ("Application," ECF No. 41)[1] filed by the Debtor Musclepharm Corporation ("Debtor").

[1] The U.S. Trustee requests that the Court take judicial notice of the pleadings and documents filed in this case pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201. To the extent that this Opposition contains factual assertions predicated upon statements made by the Debtor, any of its current or former affiliates, agents, attorneys, professionals, officers, directors, or employees, the U.S. Trustee submits that such factual assertions are

## INTRODUCTION

The U.S. Trustee opposes the retention of Mr. Gasbarra and PPP for three reasons.

First, Mr. Gasbarra cannot be employed under 11 U.S.C. § 327(a) because he is not disinterested. As an officer, Mr. Gasbarra is an insider of the Debtor. *See* 11 U.S.C. § 101(31)(B)(ii). Insiders are not disinterested. *See* 11 U.S.C. § 101(14)(A). By virtue of his officer position in the Debtor's top management, Mr. Gasbarra would also not be disinterested pursuant to 11 U.S.C. § 101(14)(B). In addition, Mr. Gasbarra should not be employed as the Debtor's restructuring advisor under 11 U.S.C. § 327(a) because he is a principal of, and was designated by, PPP, to serve as the Debtor's CRO. Similarly, PPP should not be employed under 11 U.S.C. § 327(a) because it may also not be disinterested and holds a potential adverse interest to the estate.

Second, even if Mr. Gasbarra and PPP are not disqualified for employment in this case under Section 327(a), the Debtor has not demonstrated that the request to approve the terms and conditions of their employment under 11 U.S.C. § 328(a), specifically, their proposed fee structure, is reasonable and appropriate in this case.

Finally, the U.S. Trustee opposes the retention of Mr. Gasbarra and PPP unless the conditions described in Paragraph 20 of this Opposition are included in any order approving the Application along with the disallowance of any pre-approved terms and conditions of their employment under Section 328(a). The U.S. Trustee reserves all rights with respect to this Application, including, but not limited to her right to take any appropriate action under the

---

supported by admissible evidence in the form of admissions of a party opponent under Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 801(d)(2).

Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for the U.S. Bankruptcy Court for the District of Nevada.

The U.S. Trustee's Opposition is supported by the following memorandum of points and authorities and any argument the Court may permit during the hearing.

**MEMORANDUM OF POINTS & AUTHORITIES**

**I. BACKGROUND**

1. On December 15, 2022, the Debtor filed a voluntary petition under Chapter 11 of the U.S. Bankruptcy Code commencing the above-captioned case. ECF No. 1.

2. The Court issued a *Notice of Incomplete and/or Deficient Filing* on December 16, 2022. ECF No. 6. To date, the Debtor has not filed any of its required schedules and statements and has requested a thirty-day extension of time through January 30, 2023, to file these important documents, which the U.S. Trustee has opposed. ECF Nos. 19 *and* 114.

3. The U.S. Trustee has not yet conducted the Initial Debtor Interview ("IDI") in this case, and the 11 U.S.C. § 341(a) Meeting of Creditors held on January 19, 2023, had to be continued to February 6, 2023, due to the lack of schedules and statements. ECF Nos. 3 *and* 127.

4. An official committee of unsecured creditors was just recently appointed by the U.S. Trustee on January 4, 2023. ECF No. 49.

5. Despite the case only being on file for just over four weeks, a myriad of substantive first and second day motions, applications, and supporting declarations have been filed by the Debtor. *See* ECF Docket *generally.*

6. The Debtor appeared before the Court at a lengthy hearing on its three first day motions on January 6, 2023, which included requests for orders pertaining to cash management/bank account maintenance; prepetition wages/benefits, and DIP financing/cash

collateral matters. *Id.* Further hearing on interim approval of the Debtor's first day DIP financing/cash collateral motion was conducted on January 13, 2023. *Id.*

7. On January 3, 2023, the Debtor filed the instant Application to employ PPP as its restructuring advisors and Mr. Gasbarra as the Debtor's CRO, including a request to pre-approve their proposed fee structure. ECF No. 41. Mr. Gasbarra is a managing director of PPP according to its website.[2]

8. The scope of PPP and Mr. Gasbarra's proposed services includes working with the Debtor's board of directors, officers, managers, employees, and estate professionals to perform a variety of restructuring and other functions outlined in the Application and the engagement agreement accompanying Mr. Gasbarra's verified statement. *See* ECF No. 41, Pgs. 4 *and* 5; *see also* ECF No. 42.

9. The Application indicates that it is also supported by the omnibus declaration of the Debtor's CEO, Ryan Drexler. ECF No. 41. However, the U.S. Trustee is unable to locate such declaration on the Court's ECF Docket. *See* ECF Docket *generally*.

**II. AUTHORITIES AND DISCUSSION**

10. Pursuant to 28 U.S.C. § 586(c)(3), the U.S. Trustee is charged with the responsibility of supervising the administration of cases under Chapters 7, 11, 12 and 13 of the United States Bankruptcy Code. The U.S. Trustee has standing to raise and be heard on any issues in any case or proceeding. *See* 11 U.S.C. § 307.

**A. Mr. Gasbarra cannot be employed under 11 U.S.C. § 327(a) because he is not disinterested.**

11. The Application should not be approved without conditions because it puts into direct conflict the distinction between corporate officers directly involved in the management of a

[2] https://portagepointpartners.com/team/jeffrey-gasbarra-2/ (last visited January 19, 2023).

corporate debtor and professional persons who represent or assist the debtor in possession in the performance of its duties.

12. Section 327(a) of the Bankruptcy Code provides, in pertinent part, that with the Court's approval, a trustee "may employ one or more attorneys, accountants … or other professional persons, that do not hold or represent an interest adverse to the estate, *and that are disinterested persons*, to represent or assist the trustee in carrying out the trustee's duties under this title." *See* 11 U.S.C. § 327(a) (emphasis added); *see also In re Tevis*, 347 B.R. 679, 687 (B.A.P. 9th Cir. 2006) ("Section 327(a) requires the application of a two-pronged test for employment of professional persons."); *In re Hammer*, 2007 WL 7540945, at *6 (B.A.P. 9th Cir. Aug. 17, 2007) ("[t]he bankruptcy court does not have authority to allow employment of a professional in violation of Section 327 or Section 101(14)").[3]

13. In *In re First Merchants Acceptance Corp.*, the bankruptcy court considered several factors in determining whether an individual is a "professional":

> (1) whether the employee controls, manages, administers, invests, purchases or sells assets that are significant to the debtor's reorganization, (2) whether the employee is involved in negotiating the terms of a Plan of Reorganization, (3) whether the employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations; (4) whether the employee is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate, *i.e.*, the qualitative approach, (5) the extent of the employee's involvement in the administration of the debtor's estate, *i.e.*, the quantitative approach; and (6) whether the employee's services involve some degree of special knowledge or skill, such that the employee can be considered a "professional" within the ordinary meaning of the term.

[3] In a chapter 11 case, a debtor in possession typically has the powers and duties of a trustee. *See* 11 U.S.C. § 1107(a).

No. 97-1500 JF, 1997 WL 873551, 1997 Bankr. LEXIS 2245 at *9-10 (Bankr. D. Del. Dec. 15, 1997). *See also That's Entertainment Mktg. Group v. Nolden,* 168 B.R. 226, 230 (N.D. Cal. 1994) (a professional person is one who plays a central role in the administration of the bankruptcy estate and in the bankruptcy proceeding). Mr. Gasbarra and PPP appear to meet all six criteria and should only be employed, if at all, under Section 327(a).

14. By definition, a CRO is an officer. Thus, from the moment of his engagement in that capacity, Mr. Gasbarra has been an insider. He is not a disinterested person under Sections 327(a) and 101(14). *See* 11 U.S.C. §§ 101(14)(A) and (B), 101(31)(B)(ii) (defining "insider" as an officer of a debtor-corporation). Moreover, the statutory definition of "insider" is not exhaustive and may include individuals who have a certain degree of control over the debtor regardless of the title. *See In re Longview Aluminum, LLC*, 657 F.3d 507, 509-10 (7th Cir. 2011).

**B. PPP should not be employed under 11 U.S.C. § 327(a) because it may also not be disinterested and holds a potential adverse interest to the estate.**

15. The scope of PPP's services suggests that the firm will provide CRO support and the possibility of acting as a financial advisor, workout specialist, and/or consultant. *See* ECF No. 41, Pgs. 3 - 5.

16. "'Generally, financial advisors, workout specialists and consultants are, for the purpose of Section 327 of the Bankruptcy Code, professionals.'…When employment is proposed for one of these positions, the procedures required by § 327 should be followed in order to further the policies of ensuring that employed persons are *impartial and that the costs and administrative expenses of a case remain subject to judicial oversight*." *See In re Copenhaver, Inc.*, 506 B.R. 757, 762 (Bankr. C.D. Ill. 2014) (emphasis added).

17. Thus, if a financial firm seeks retention as a professional person, that retention must be approved under 11 U.S.C. § 327(a). A member of a professional firm similarly cannot serve as

a member of the debtor's top management (such as a CRO) or the board of directors without disqualifying the professional firm from service as a professional; the firm will not be disinterested. *See* 11 U.S.C. § 101(14). However, courts within the Ninth Circuit have held that a professional's status as an officer of a debtor may not be imputed to the professional's law firm as a whole. *See In re Keravision, Inc.*, 273 B.R. 614, 616-619 (N.D. Cal. 2002); *In S.S. Retail Stores Corp.*, 211 B.R. 699, 703-04 (B.A.P. 9th Cir. 1997) ("[n]o vicarious disqualification is provided for in the applicable sections of the Bankruptcy Code"); *see also In re McDermott Int'l, Inc.*, 614 B.R. 244, 254 (Bankr. S.D. Tex. 2020) (CRO's alleged lack of disinterestedness was not imputed to CRO's firm).

18. Even so, a firm may be disqualified under Section 327(a) if the firm itself functioned as an officer or director of the debtor or otherwise has an adverse interest. *See, e.g.*, *In re Keravision, Inc.*, 273 B.R. at 618-19 ("[i]n certain circumstances a court might conclude that a law firm, by virtue of its partners' involvement with the debtor, has an interest adverse to the estate….[I]f Lathan functioned as the corporate secretary or general counsel … it would not be disinterested ….""); *In re Capitol Metals Co., Inc.*, 228 B.R. 724, 727 (B.A.P. 9th Cir. 1998) ("[w]hile a firm may not be per se disqualified under the circumstances of S.S. Retail, when the only person working with the Debtor is the person who is not disinterested, the disinterestedness standard would be eradicated by corporate form over substance"); *see also In re Hammer*, 2007 WL 7540945, at *7 & FN 11 (B.A.P. 9th Cir. Aug. 17, 2007) (a professional's knowledge and duty of loyalty are imputed to the professional's firm).

19. Although the Application makes clear that the Debtor is moving for the employment of Mr. Gasbarra of PPP as CRO under 11 U.S.C. § 327(a) (*see* Application *generally*), many debtors move to retain CROs under 11 U.S.C. § 363(b) instead. The use of

Section 363(b) as authority for allowing employment of CROs who are not "disinterested persons" as explained *supra* has also been met with criticism and rejected by some bankruptcy courts. *See, e.g., In re Copenhaver, Inc.*, 506 B.R. at 762 (internal citations omitted); *In re Tamarack Resort, LLC*, 2010 WL 4117459 at *14 (Bankr. D. Idaho, Oct. 19, 2010) (denying motion to appoint a "responsible officer," and noting that "Chapter 11 is a flexible process," but non-statutory fiduciaries like CROs are not "so easily transported into the post-bankruptcy context") (*citing In re Kobra Properties*, 406 B.R. 396, 400-01 (Bankr. E.D. Cal. 2009) (noting that debtor in possession's proposal to hire a CRO "elicited skepticism" and was withdrawn, "because of the vagueness of the CRO concept in the context of chapter 11…and the inability to articulate whether and to whom a CRO would owe fiduciary and loyalty duties and how those duties would contrast with the duties of a chapter 11 trustee").

20. In light of the foregoing concerns, the U.S. Trustee opposes the Application, unless the following conditions are included in any order with respect to the Application:

a. As CRO, Mr. Gasbarra will act under the direction, control and guidance of the Debtor's board of directors and shall serve at the Board's pleasure;

b. PPP and its affiliates shall not act in any other capacity (for example, and without limitation, as a financial advisor, claims agent/claims administrator, or investor/acquirer) in connection with the above-captioned cases;

c. In the event the Debtor seeks to have PPP personnel assume executive officer positions that are different than the position(s) disclosed in the Application, or to materially change the terms of the engagement by either (i) modifying the functions of personnel, (ii) adding new personnel, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed;

d. PPP shall file with the Court, with copies to the U.S. Trustee and all official committees, a report of staffing on the engagement for the previous month. Such report shall include the names and functions filled of the individuals assigned. All staffing shall be subject to review by the Court in the event an objection is filed;

e. No principal, employee or independent contractor of PPP and its affiliates shall serve as a director of the Debtor during the pendency of the above-captioned cases;

f. PPP shall file with the Court and provide notice to the U.S. Trustee and all official committees, reports of compensation earned and expenses incurred on a monthly basis. Such reports shall contain summary charts, which describe the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. Time records shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in 1/10/hour increments and the corresponding charge (time multiplied by hourly rate) for each task; where personnel are providing services at a "flat" rate, the time entries shall be kept in hourly increments. All compensation shall be subject to review by the Court in the event an objection is filed;

g. Success fees, transaction fees, or other back-end fees shall be approved by the Court at the conclusion of the case on a reasonableness standard and are not being pre-approved by entry of this order. No success fee, transaction fee or back-end fee shall be sought upon conversion of the case, dismissal of the case for cause, or appointment of a trustee;

h. The Debtor is permitted to indemnify those persons serving as executive officers on the same terms as provided to any other officers and directors of the Debtor under the corporate bylaws and applicable state law, along with insurance coverage under the Debtor's D&O policy;

i. There shall be no indemnification of PPP or its affiliates[4];

j. For a period of three years after the conclusion of the engagement, neither PPP nor any of its affiliates shall make any investments in the Debtor or the Reorganized Debtor;

k. PPP shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtor, its creditors, or other parties in interest. The obligation to disclose identified in this subparagraph is a continuing obligation; and

[4] In no event should the Debtor be permitted to indemnify PPP or any PPP personnel not serving as executive officers for their own negligent acts. *Cf. In re Metricom, Inc.*, 275 B.R. 364, 366-67, 375 (Bankr. N.D. Cal. 2002) (indemnity provision that would have shielded financial advisor from its own negligence was not reasonable).

l. The rights of all parties, to move for the appointment of a trustee or an examiner pursuant to 11 U.S.C. § 1104, shall be preserved.[5]

21. It is the U.S. Trustee's understanding that the Debtor, PPP and Mr. Gasbarra are considering compliance with the foregoing conditions and may not oppose the relief requested by the U.S. Trustee. However, a final decision in this regard has not been communicated to the U.S. Trustee as of the date of the filing of this Opposition.

**C. The Debtor fails to carry its burden of establishing that the terms and conditions for compensation included in the Application are reasonable and appropriate.**

22. While Section 327 addresses employment of professionals, 11 U.S.C. §§ 328 and 330 address compensation of those professionals after they have been employed under Section 327. Section 330 authorizes the bankruptcy court to award the retained professional reasonable compensation "based on an after-the-fact consideration of 'the nature, the extent, and the value of such services, taking into account all relevant factors.'" *In re Smart World Technologies, LLC*, 552 F.3d 228, 232 (2d Cir. 2009) (quoting Section 330(a)).

23. Section 328 operates differently and "permits a professional to have the terms and conditions of its employment pre-approved by the bankruptcy court, such that the bankruptcy court may alter the agreed-upon compensation only 'if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of

---

[5] If the Court orders the appointment of a trustee or an examiner, the U.S. Trustee will comply with the requirements of 11 U.S.C. § 1104 and 11 U.SC. § 101(14). *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989) ("[i]f the court determines that a trustee should be appointed, 'then the United States trustee, after consultation with the parties in interest, *shall* appoint, subject to the court's approval, one *disinterested person* ... to serve as trustee ... in the case.'") (emphasis added); *In re Corona Care Convalescent Corp.*, 527 B.R. 379, 381-82, 388 (Bankr. C.D. Cal. 2015) (holding that, in granting the U.S. Trustee's motion to appoint a Chapter 11 trustee, the U.S. Trustee is authorized and directed to appoint a trustee pursuant to 11 U.S.C. § 1104(d)).

Case 22-14022-mcr Doc 128 Entered 01/19/23 17:19:55 Page 11 of 15

such terms and conditions.'" *In re Circle K Corp.*, 279 F.3d 669, 671 (9th Cir. 2002); *In re Smart World Technologies, LLC*, 552 F.3d at 232 (noting that "[s]ection 328(a) permits a bankruptcy court to forgo a full post-hoc reasonableness inquiry if it pre-approves the "employment of a professional person under [s]ection 327 ... on any reasonable terms and conditions of employment" (quoting Section 328(a)). Thus, pre-approval of compensation pursuant to Section 328 is not lightly permitted. *Owens v. United States Trustee (In re Owens),* 2014 Bankr. LEXIS 3346 at *7 (B.A.P. 9th Cir. August 6, 2014).

24. Section 328 only provides the possible basis for approval of terms of compensation. *See generally In re Circle K Corp.*, 279 F.3d at 671.

25. "The differences between §§ 328 and 330 affect the timing and process of the court's review of fees." *In re Citation Corp.*, 493 F.3d 1313, 1318 (11th Cir. 2007). Under Section 328, "the bankruptcy court reviews the fee at the time of the agreement and departs from the agreed fee only if some unanticipated circumstance makes the terms of that agreement unfair. Under Section 330, the court reviews the fees after the work has been completed and looks specifically at what was earned, not necessarily at what was bargained for at the time of the agreement." *Id.*

26. The burden of proof to establish the terms and conditions of employment – including the imposition of Section 328(a) – is on the applicant. *Nischwitz v. Miskovic (In re Airspect Air, Inc.)*, 385 F.3d 915, 921 (6th Cir. 2004) (quoting *In re Zolfo*, 50 F.3d 253, 262 (3d. Cir. 1995). To meet its burden, the professional must provide specific evidence to establish that "the terms and conditions are in the best interest of the estate." *In re Gillett Holdings, Inc.*, 137 B.R. 452, 455 (Bankr. D. Colo. 1991); *In re Thermadyne Holdings Corp.*, 283 B.R. 749, 756 (B.A.P. 8th Cir. 2002); *In re Potter*, 377 B.R. 305, 307-08 (Bankr. D. N.M. 2007) ("The trustee

seeking to employ a professional under 11 U.S.C. § 328 bears the burden of showing that the provisions of the proposed employment are reasonable.”).

27. Here, the Debtor seeks to have PPP and Mr. Gasbarra’s proposed fee structure approved pursuant to 11 U.S.C. § 328(a). ECF No. 10.

28. Pre-approval of a professional’s terms of compensation as reasonable should not be granted lightly given that the Court may not revisit the issue at the compensation stage unless such terms prove to have been improvident in light of developments not capable of being anticipated at the time the terms or rates were fixed. *See* 11 U.S.C. § 328(a); *see also Friedman Enters. v. B.U.M. Int’l, Inc. (In re B.U.M. Int’l, Inc.)*, 229 F.3d 824, 829 (9th Cir. 2000) (“[t]here is no question that a bankruptcy court may not conduct a § 330 inquiry into the reasonableness of the fees and their benefit to the estate if the court already has approved the professional’s employment under § 328”).

29. Approving an arrangement under Section 328 removes the standard of reasonable compensation based on an after-the-fact consideration of “the nature, the extent, and the value of such services, taking into account all of the relevant factors” under Section 330, and instead replaces it with a standard that severely constrains the Court’s authority to only disallow compensation that is “improvident in light of developments not capable of being anticipated at that time.” 11 U.S.C. §328(a). The Court should not allow counsel to bypass a full post-hoc reasonableness inquiry if employment is approved under 11 U.S.C. § 327.

30. The Debtor has not met its burden of proof to demonstrate why or how PPP and Mr. Gasbarra’s fee structure are reasonable under 11 U.S.C. § 328(a) and should be approved at the outset of representation of the Debtor instead of being subject to review once counsel seeks compensation, including at the end of the case once the Court and parties-in-interest can better

Case 26-00465-ELG Document 65-2 Filed 10/01/26 Page 27 of 29

assess counsel's performance. A professional's requested invocation of Section 328(a) is neither mandatory nor automatic, regardless of the proposed compensation scheme. A professional should not automatically expect approval of its compensation under Section 328 just because it asks for it. Accordingly, the Court should deny the request to pre-approve the fee structure under Section 328.

31. The Court should decline to approve any Section 328 provisions requested in the Application and subject the fee structure to a review unconstrained by pre-approval of any compensation terms and conditions at the beginning of the case.

32. The U.S. Trustee expressly reserves her rights to object to any amendments made to the Debtor's Application and/or any other additional relief requested in any subsequently filed pleadings.

## CONCLUSION

**WHEREFORE**, the U.S. Trustee requests that the Court sustain her Opposition to the Debtor's Application unless the conditions suggested by the U.S. Trustee *supra* in Paragraph 20 herein are included in any order approving the Application along with the disallowance of any pre-approved terms and conditions of employment under Section 328(a), and grant such other relief as is just and equitable under the circumstances.

Dated: January 19, 2023

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By: /s/ *Jared A. Day*
Jared A. Day
Trial Attorney for United States Trustee

**CERTIFICATE OF SERVICE**

I, MELINDA R. DAVIS, under penalty of perjury declare: That declarant is, and was when the herein described service took place, a citizen of the United States, over 18 years of age, and not a party to nor interested in, the within action; that on January 19, 2023, I caused a copy of the foregoing,

**UNITED STATES TRUSTEE'S OPPOSITION AND RESERVATION OF RIGHTS TO DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF PORTAGE POINT PARTNERS, LLC AS RESTRUCTURING ADVISORS AND JEFFREY GASBARRA AS CHIEF RESTRUCTURING OFFICER**

to be served on the following parties:

☑ a. ECF System (attach Notice of Electronic Filing or list of persons & addresses):

- **OGONNA M. BROWN** obrown@lewisroca.com, ogonna-brown-4984@ecf.pacerpro.com,dberhanu@lewisroca.com,ombcalendar@lewisroca.com;jhess@lewisroca.com,klopez@lewisroca.com;gmercado1@lewisroca.com,gmercado@lewisroca.com
- **CHAPTER 11 - LV** USTPRegion17.lv.ecf@usdoj.gov
- **JOHN D. FIERO** jfiero@pszjlaw.com
- **BART K. LARSEN** BLARSEN@SHEA.LAW, 3542839420@filings.docketbird.com
- **BRYAN A. LINDSEY** blindsey@nvfirm.com
- **WILLIAM M. NOALL** wnoall@gtg.legal, bknotices@gtg.legal
- **TRACY M. O'STEEN** tosteen@carlyoncica.com, crobertson@carlyoncica.com;nrodriguez@carlyoncica.com;ccarlyon@carlyoncica.com
- **JASON H. ROSELL** jrosell@pszjlaw.com
- **SAMUEL A. SCHWARTZ** saschwartz@nvfirm.com, ecf@nvfirm.com;schwartzsr45599@notify.bestcase.com;eanderson@nvfirm.com;samid@nvfirm.com
- **ROBERT T. STEWART** rtstewart@foley.com, rgledhill@foley.com
- **STRETTO** ecf@cases-cr.stretto-services.com, aw01@ecfcbis.com,pacerpleadings@stretto.com
- **U.S. TRUSTEE - LV - 11** USTPRegion17.lv.ecf@usdoj.gov
- **MARK M. WEISENMILLER** mweisenmiller@gtg.legal, bknotices@gtg.legal
- **MATTHEW C. ZIRZOW** mzirzow@lzlawnv.com, carey@lzlawnv.com;trish@lzlawnv.com;jennifer@lzlawnv.com;zirzow.matthewc.r99681@notify.bestcase.com

/ / /

I declare under penalty of perjury that the foregoing is true and correct.

Signed: January 19, 2023

/s/ *Melinda R. Davis*
MELINDA R. DAVIS