**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**FAEGRE DRINKER BIDDLE & REATH LLP**
Michael P. Pompeo
600 Campus Drive
Florham Park, NJ 07932
(973) 549-7000 (Telephone)
(973) 360-9831 (Facsimile)
michael.pompeo@faegredrinker.com

-and-

Ian J. Bambrick (*pro hac vice*)
Patrick A. Jackson (*pro hac vice*)
Sarah E. Silveira (*pro hac vice*)
222 Delaware Ave. Suite 1410
Wilmington, DE 19801
(302) 467-4200 (Telephone)
(302) 467-4201 (Facsimile)
ian.bambrick@faegredrinker.com
patrick.jackson@faegredrinker.com
sarah.silveira@faegredrinker.com

*Proposed Counsel to the DAMIS Debtors and Debtors in Possession*

**Order Filed on July 23, 2026**
**by Clerk**
**U.S. Bankruptcy Court**
**District of New Jersey**

| | |
|---|---|
| In re:<br><br>DAMIS Holdings LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16439 (CMG)<br><br>(Jointly Administered) |

**DATED: July 23, 2026**

Honorable Christine M. Gravelle, Chief Judge
United States Bankruptcy Judge

[1] A complete list of the DAMIS Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the DAMIS Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/DAMIS/. The location of DAMIS Holdings LLC's principal place of business and the DAMIS Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

(Page 2)

| | |
|---|---|
| Debtors: | DAMIS HOLDINGS LLC, *et al.* |
| Case No.: | 26-16439 (CMG) |
| Caption of Order: | ORDER (I) APPROVING THE RETENTION AND EMPLOYMENT OF B. RILEY SECURITIES, INC. TO PROVIDE THE DAMIS DEBTORS WITH A CHIEF RESTRUCTURING OFFICER AND ADDITIONAL STAFF EFFECTIVE AS OF THE PETITION DATE; (II) DESIGNATING PERRY M. MANDARINO AS THE CHIEF RESTRUCTURING OFFICER TO THE DAMIS DEBTORS; AND (III) GRANTING RELATED RELIEF |

**ORDER (I) APPROVING THE RETENTION AND EMPLOYMENT OF B. RILEY SECURITIES, INC. TO PROVIDE THE DAMIS DEBTORS WITH A CHIEF RESTRUCTURING OFFICER AND ADDITIONAL STAFF EFFECTIVE AS OF THE PETITION DATE; (II) DESIGNATING PERRY M. MANDARINO AS THE CHIEF RESTRUCTURING OFFICER TO THE DAMIS DEBTORS; AND (III) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through nine (9), is hereby **ORDERED**.

| | |
|---|---|
| Debtors: | DAMIS HOLDINGS LLC, *et al.* |
| Case No.: | 26-16439 (CMG) |
| Caption of Order: | ORDER (I) APPROVING THE RETENTION AND EMPLOYMENT OF B. RILEY SECURITIES, INC. TO PROVIDE THE DAMIS DEBTORS WITH A CHIEF RESTRUCTURING OFFICER AND ADDITIONAL STAFF EFFECTIVE AS OF THE PETITION DATE; (II) DESIGNATING PERRY M. MANDARINO AS THE CHIEF RESTRUCTURING OFFICER TO THE DAMIS DEBTORS; AND (III) GRANTING RELATED RELIEF |

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "DAMIS Debtors"), for entry of an order (this "Order") for authorization to retain and employ B. Riley Securities, Inc. ("B. Riley") to provide the DAMIS Debtors with Perry M. Mandarino as the Chief Restructuring Officer (the "CRO") and certain Additional Staff to assist the CRO, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, effective as of the Petition Date, on the terms set forth in the Engagement Agreement, attached to the Motion as Exhibit 3, all as more fully set forth in the Motion; and upon the Mandarino Retention Declaration; and the Court having jurisdiction to consider the Motion and grant the requested relief in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order; and the DAMIS Debtors having consented to entry of a final order; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the DAMIS Debtors' notice of the Motion and opportunity for a hearing on it were appropriate under the circumstances and that no other notice be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing, if any, establish just cause for the relief requested therein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Case 26-16439-CMG Doc 465 Filed 07/... Entered 10/01/26 ... Page 4 of 43


**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted as set forth herein.

2. The terms of the Engagement Agreement as they apply to the DAMIS Debtors (those entities set forth on **Exhibit 1** hereto and any additional debtors for which chapter 11 case are filed and the Court grants joint administration with the DAMIS Debtors), including without limitation, the compensation provisions and the indemnification provisions, as modified by this Order, are reasonable terms and conditions of employment and are hereby approved. For the avoidance of doubt, the approval provided by this Order is limited exclusively to B. Riley's engagement by the DAMIS Debtors and any additional debtors for which chapter 11 case are filed and the Court grants joint administration with the DAMIS Debtors.

3. Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the DAMIS Debtors are hereby authorized to retain and employ B. Riley to provide the DAMIS Debtors with Mr. Mandarino as the CRO and certain Additional Staff to assist the CRO, effective as of the Petition Date, on the terms set forth in the Engagement Agreement, which is attached as **Exhibit 3** to the Mandarino Retention Declaration.

4. Upon the entry of this Order, B. Riley shall be empowered and authorized to carry out all duties and responsibilities set forth in the Engagement Agreement and, for the avoidance of doubt, Mr. Mandarino is authorized to sign contractual agreements on behalf of the DAMIS Debtors.

5. Notwithstanding anything in the Motion, Mandarino Declaration, or Engagement Agreement to the contrary, the balance of the Retainer shall be held by B. Riley throughout these Chapter 11 Cases; *provided that*, B. Riley shall apply any remaining amounts of the Retainer as a credit towards its final fees and expenses. At the conclusion of B. Riley's engagement by the DAMIS Debtors, if the amount of the Retainer held by B. Riley is in excess of the amount of B. Riley's outstanding and estimated fees, expenses, and costs, B. Riley will pay to the DAMIS Debtors the amount by which the Retainer exceeds such fees, expenses, and costs, in each case in accordance with the Engagement Agreement.

6. Notwithstanding anything to the contrary in the Motion or the Engagement Agreement, B. Riley's engagement is subject to the following provisions:

i. B. Riley and its affiliates shall not act in any other capacity (for example, and without limitation, as financial advisor, claims agent/claims administrator, or investor/acquirer) in connection with these Chapter 11 Cases.

ii. In the event the DAMIS Debtors seek to have B. Riley personnel assume executive officer positions that are different than the positions disclosed in the Motion, or to materially change the terms of the engagement by either: (i) modifying the functions of personnel; (ii) adding new personnel; or (iii) altering or expanding the scope of the engagement, a motion to modify Mr. Mandarino's and B. Riley's retention shall be filed.

iii. B. Riley shall file with the Court, with copies to the U.S. Trustee and any statutory committees appointed in these Chapter 11 Cases (collectively, the "Notice Parties"), a report of staffing on the engagement for the previous month. Such reports shall include the names and functions filled of the individuals assigned (the "Staffing Reports"). The Notice Parties shall have fourteen (14) calendar days after the date each Staffing Report is served to object to such

Staffing Report. The Staffing Reports shall be reviewed by the Court in the event an objection is filed.

iv. B. Riley shall file with the Court, with copies to the Notice Parties, reports of compensation earned and expenses incurred on a monthly basis (the "Compensation Reports"). Such Compensation Reports shall contain summary charts which describe the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. Time records shall (i) be appended to such reports; (ii) contain detailed time entries describing the task(s) performed; and (iii) be organized by project category (but may be redacted to protect any attorney-client privilege or other applicable privilege for filing with the Court). Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in 1/10th hour (0.1) increments and the corresponding charge (time multiplied by hourly rate) for each task; where personnel are providing services at a "flat" rate, the time entries shall be kept in hourly increments. The Notice Parties shall have fourteen (14) calendar days after the date each Compensation Report is served on the Notice Parties to object to such Compensation Report. All compensation shall be subject to review by the Court in the event an objection is filed. All fees and expenses paid to B. Riley are subject to disgorgement to the extent an objection is filed and sustained after payment of any fees and expenses.

v. The DAMIS Debtors and/or B. Riley may file each monthly Staffing Report and each monthly Compensation Report as one joint single report.

vi. Notwithstanding anything to the contrary contained in the Motion, Engagement Agreement, or any exhibits related thereto, during the course of the Chapter 11 Cases, B. Riley will only seek reimbursement of actual and necessary expenses itemized in the monthly Compensation Reports.

vii. Success fees, completion fees, transaction fees, or other back-end fees shall be approved by the Court at the conclusion of these Chapter 11 Cases on a reasonableness standard and are not being pre-approved by entry of this Order. No success fee, completion

fee, transaction fee, or back-end fee shall be sought upon conversion of these Chapter 11 Cases, dismissal of these Chapter 11 Cases for cause, or appointment of a trustee.

viii. No principal, employee, or independent contractor of B. Riley and its affiliates shall serve as a director of the DAMIS Debtors during the pendency of these Chapter 11 Cases.

ix. For a period of three (3) years after the conclusion of the engagement, neither Mr. Mandarino, B. Riley, nor any of its affiliates shall make any investments in the DAMIS Debtors or reorganized DAMIS Debtors.

x. Mr. Mandarino and B. Riley shall disclose any and all facts that may have a bearing on whether Mr. Mandarino, B. Riley, their affiliates, and/or any individuals working on the engagement have any interest adverse to the DAMIS Debtors' estates or of any class of creditors, equity security holders, or other parties-in-interest. The obligation to disclose as set forth in this subparagraph shall be a continuing obligation.

xi. The DAMIS Debtors are permitted to indemnify those persons serving as executive officers, including Mr. Mandarino, on the same terms as provided to the DAMIS Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the DAMIS Debtors' directors and officers liability insurance policies and all other relevant active insurance policies carried by the DAMIS Debtors.

xii. There shall be no other indemnification of B. Riley or its affiliates.

7. The relief granted herein shall be binding upon any chapter 11 trustee appointed in these Chapter 11 Cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these Chapter 11 Cases to cases under chapter 7. Notwithstanding the foregoing, any trustee appointed in these Chapter 11 Cases shall be bound by the terms of this Order with

respect to B. Riley's entitlement to fees earned, but such trustee shall not be obligated to continue B. Riley's engagement.

8. Notwithstanding anything to the contrary in the Motion, the Mandarino Declaration, or the Engagement Agreement, during the pendency of these Chapter 11 Cases, the DAMIS Debtors shall promptly file a notice with the Court to the extent B. Riley terminates its Engagement Agreement pursuant to the terms thereof or resign from such role.

9. Notwithstanding anything to the contrary in the Motion, the Mandarino Declaration, or the Engagement Agreement, paragraphs 6(d), 8 (pg. 5), and 24 of the Engagement Agreement are null and void.

10. Notwithstanding anything to the contrary in the Motion, the Mandarino Declaration, or the Engagement Agreement, paragraph 6(e) is modified to reflect that any modifications to the Transaction Fees set forth in the Engagement Agreement must be approved by the Court upon the filing of a motion on notice to all parties involved in these Chapter 11 Cases.

11. Notwithstanding anything to the contrary in the Motion, the Mandarino Declaration, or the Engagement Agreement including but not limited to paragraph 20 of the Engagement Agreement, this Court shall have exclusive jurisdiction over the engagement of Mr. Mandarino and B. Riley during the pendency of these Chapter 11 Cases.

12. To the extent B. Riley uses the services of third party entity independent contractor entities or subcontractors (collectively, the "Contractors") in these Chapter 11 Cases, (i) B. Riley shall pass through the cost of such Contractors to the DAMIS Debtors at the same rate that B.

Riley pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflicts checks as required for B. Riley; and (iv) file with this Court disclosures pertaining to such Contractors of the kind required by Bankruptcy Rule 2014.

13. To the extent there is inconsistency between the terms of the Mandarino Declaration, the Engagement Agreement, and the Motion, and this Order, the terms of this Order shall govern.

14. Notwithstanding any Bankruptcy Rule to the contrary, this Order shall be effective and enforceable immediately upon entry hereof.

15. The DAMIS Debtors, B. Riley, and Mr. Mandarino are authorized and empowered to take all steps necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

16. Notwithstanding the Motion, the Mandarino Declaration, or any term in the Engagement Agreement to the contrary, this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**EXHIBIT 1**

**Engagement Agreement Entities**

| Case Number | Debtor Name | Petition Date |
|---|---|---|
| 26-16439 | DAMIS Holdings LLC | June 04, 2026 |
| 26-16440 | 1101 East Glendale Boulevard Leasing LLC | June 04, 2026 |
| 26-16441 | 1135 East Chocolate Avenue Leasing LLC | June 04, 2026 |
| 26-16442 | 1101 East Glendale Boulevard Real Estate LLC | June 04, 2026 |
| 26-16443 | 1323 Augusta West Parkway Leasing LLC | June 04, 2026 |
| 26-16444 | 11200 West Florissant Avenue Leasing LLC | June 04, 2026 |
| 26-16445 | 1323 Augusta West Parkway Real Estate LLC | June 04, 2026 |
| 26-16446 | 11200 West Florissant Avenue Realty LLC | June 04, 2026 |
| 26-16447 | 1000 Acres Holdings, LLC | June 04, 2026 |
| 26-16448 | 1401 US Highway 49B Real Estate LLC | June 04, 2026 |
| 26-16449 | 12 Cambridge Drive Leasing LLC | June 04, 2026 |
| 26-16450 | 1912 Memorial Drive Real Estate LLC | June 04, 2026 |
| 26-16451 | 2203 Grand Canal Boulevard Leasing LLC | June 04, 2026 |
| 26-16452 | 2195 Harlem Road Leasing LLC | June 04, 2026 |
| 26-16453 | 2203 Grand Canal Boulevard Real Estate LLC | June 04, 2026 |
| 26-16454 | 12 Cambridge Drive Realty LLC | June 04, 2026 |
| 26-16455 | 1133 Northwest L Street Leasing LLC | June 04, 2026 |
| 26-16456 | 2195 Harlem Road Real Estate LLC | June 04, 2026 |
| 26-16457 | 194 Washington Avenue Leasing LLC | June 04, 2026 |
| 26-16458 | 194 Washington Avenue Real Estate LLC | June 04, 2026 |
| 26-16459 | 348 Morris Avenue Real Estate LLC | June 04, 2026 |
| 26-16460 | 5707 MacCorkle Avenue Real Estate LLC | June 04, 2026 |
| 26-16461 | 1133 Northwest L Street Real Estate LLC | June 04, 2026 |
| 26-16462 | 5707 MacCorkle Avenue Leasing LLC | June 04, 2026 |

| | | |
|---|---|---|
| **26-16463** | **1600 Eastchase Parkway Leasing LLC** | **June 04, 2026** |
| **26-16464** | **1600 Eastchase Parkway Real Estate LLC** | **June 04, 2026** |
| **26-16465** | **250 Progressive Leasing LLC** | **June 04, 2026** |
| **26-16466** | **Splashdown Beach Landco LLC** | **June 04, 2026** |
| **26-16467** | **201 Centre Drive Leasing LLC** | **June 04, 2026** |
| **26-16468** | **2302 Windsong Drive Leasing LLC** | **June 04, 2026** |
| **26-16469** | **2974 Coppercreek Road Leasing LLC** | **June 04, 2026** |
| **26-16470** | **2434 South Interstate 35E Leasing LLC** | **June 04, 2026** |
| **26-16471** | **201 Centre Drive Real Estate LLC** | **June 04, 2026** |
| **26-16472** | **200 Great Pond Drive Leasing LLC** | **June 04, 2026** |
| **26-16473** | **2434 South Interstate 35E Real Estate LLC** | **June 04, 2026** |
| **26-16474** | **3385 Newmark Drive LLC** | **June 04, 2026** |
| **26-16475** | **400 Greens Road Leasing LLC** | **June 04, 2026** |
| **26-16476** | **250 Progressive Real Estate LLC** | **June 04, 2026** |
| **26-16477** | **400 Greens Road Real Estate LLC** | **June 04, 2026** |
| **26-16478** | **45 Commerce Drive Leasing LLC** | **June 04, 2026** |
| **26-16479** | **44 Southpoint Drive Leasing LLC** | **June 04, 2026** |
| **26-16480** | **45 Commerce Drive Real Estate LLC** | **June 04, 2026** |
| **26-16481** | **200 Great Pond Drive Real Estate LLC** | **June 04, 2026** |
| **26-16482** | **4650 Westway Park Boulevard Leasing LLC** | **June 04, 2026** |
| **26-16483** | **7335 Gladiolus LLC** | **June 04, 2026** |
| **26-16484** | **4800 USH 280 Leasing LLC** | **June 04, 2026** |
| **26-16485** | **771 Corporate Drive Real Estate LLC** | **June 04, 2026** |
| **26-16486** | **East Hartford Properties Leasing LLC** | **June 04, 2026** |
| **26-16487** | **4800 USH 280 Real Estate LLC** | **June 04, 2026** |

| | | |
|---|---|---|
| **26-16488** | **4650 Westway Park Boulevard Real Estate LLC** | **June 04, 2026** |
| **26-16489** | **771 Corporate Drive Leasing LLC** | **June 04, 2026** |
| **26-16490** | **90 Pleasant Valley Street Leasing LLC** | **June 04, 2026** |
| **26-16491** | **East Hartford Properties Real Estate LLC** | **June 04, 2026** |
| **26-16492** | **DASMAS Landco LLC** | **June 04, 2026** |
| **26-16493** | **90 Pleasant Valley Street Real Estate LLC** | **June 04, 2026** |
| **26-16494** | **Matteson Center Leasing LLC** | **June 04, 2026** |
| **26-16495** | **Oklahoma Wilshire Lofts Real Estate LLC** | **June 04, 2026** |
| **26-16496** | **Catskill Wine and Food Festival LLC** | **June 04, 2026** |
| **26-16497** | **Matteson Center Real Estate LLC** | **June 04, 2026** |
| **26-16498** | **Montclair Condo Holdings LLC** | **June 04, 2026** |
| **26-16499** | **Rocking Horse Ranch Landco LLC** | **June 04, 2026** |
| **26-16500** | **Oklahoma Wilshire Lofts Leasing LLC** | **June 04, 2026** |
| **26-16501** | **Rocking Horse Ranch Operatingco LLC** | **June 04, 2026** |
| **26-16502** | **DAMIS Venture LLC** | **June 04, 2026** |
| **26-16503** | **South Loop West Leasing LLC** | **June 04, 2026** |
| **26-16504** | **WG Operatingco LLC** | **June 04, 2026** |
| **26-16505** | **Southwest Ohio Associates LLC** | **June 04, 2026** |
| **26-16506** | **Woodlands Eagle Timber Leasing LLC** | **June 04, 2026** |
| **26-16507** | **Fairplain Plaza Leasing LLC** | **June 04, 2026** |
| **26-16508** | **Fairplain Plaza Real Estate LLC** | **June 04, 2026** |
| **26-16509** | **Splashdown Beach Operatingco LLC** | **June 04, 2026** |
| **26-16510** | **Highland Park Partners LLC** | **June 04, 2026** |
| **26-16511** | **Stony Creek Operating Co, LLC** | **June 04, 2026** |
| **26-16512** | **South Loop West Real Estate LLC** | **June 04, 2026** |

| | | |
|---|---|---|
| **26-16513** | **Secondary Paragould LLC** | **June 04, 2026** |
| **26-16514** | **Turnpike Road Holdings LLC** | **June 04, 2026** |
| **26-16515** | **SIMAD Holdings LLC** | **June 04, 2026** |
| **26-16516** | **2547 Brindle Drive Leasing LLC** | **June 04, 2026** |
| **26-16517** | **149 Emerald Street Leasing LLC** | **June 04, 2026** |
| **26-16518** | **SIMAD Venture LLC** | **June 04, 2026** |
| **26-16519** | **3413 Tittabawassee Road Leasing LLC** | **June 04, 2026** |
| **26-16520** | **149 Emerald Street Real Estate LLC** | **June 04, 2026** |
| **26-16521** | **2547 Brindle Drive Real Estate LLC** | **June 04, 2026** |
| **26-16522** | **3413 Tittabawassee Road Real Estate LLC** | **June 04, 2026** |
| **26-16523** | **4200 Park Avenue Leasing LLC** | **June 04, 2026** |
| **26-16524** | **4328 Bay Road Leasing LLC** | **June 04, 2026** |
| **26-16525** | **4328 Bay Road Real Estate LLC** | **June 04, 2026** |
| **26-16526** | **830 County Road 64 Leasing LLC** | **June 04, 2026** |
| **26-16527** | **830 County Road 64 Real Estate LLC** | **June 04, 2026** |
| **26-16528** | **Belmont Apartment Partners LLC** | **June 04, 2026** |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Counsel to the Debtors*
*and Debtors in Possession*

**Order Filed on July 20, 2026**
**by Clerk**
**U.S. Bankruptcy Court**
**District of New Jersey**

In re:

SIMAD HOLDINGS LTD., *et al.*,[1]

Debtors.

Chapter 11

Case No. 26-16439 (CMG)

(Jointly Administered)

**ORDER (I) AUTHORIZING THE SIMAD DEBTORS TO RETAIN AND EMPLOY (A) ELAR GROUP, LLC TO PROVIDE ASSAF RAVID AS CHIEF RESTRUCTURING OFFICER AND (B) DANIEL SASSON AS ASSOCIATE RESTRUCTURING OFFICER, AND (II) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through seven (7), is **ORDERED**.

**DATED: July 20, 2026**

Honorable Christine M. Gravelle, Chief Judge
United States Bankruptcy Judge

[1] A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of SIMAD Debtor SIMAD Holdings Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

Upon the *SIMAD Debtors' Motion for Entry of an Order (I) Authorizing the SIMAD Debtors to Retain (A) Assaf Ravid as Chief Restructuring Officer and (B) Daniel Sasson as Associate Restructuring Officer, and (II) Granting Related Relief* (the "Motion"),[2] for entry of an order (this "Order"): (a) authorizing, but not directing, the SIMAD Debtors to (i) retain and employ Elar Group, LLC to provide the SIMAD Debtors a CRO and designate Assaf Ravid as Chief Restructuring Officer ("CRO") and (ii) retain and employ Daniel Sasson as Associate Restructuring Officer ("ARO" and with CRO, the "Restructuring Officers") of the SIMAD Debtors as of the Petition Date, and (b) granting related relief, all as more fully set forth in the Motion; and each designation on the terms set forth in the Engagement Letters annexed to the Order as Exhibit 1 and Exhibit 2 and the Ravid Declaration annexed to the Motion as Exhibit B and the Sasson Declaration annexed to the Motion as Exhibit C; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the SIMAD Debtors' notice of the Motion and opportunity for a

[2] Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion.

hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"), if any; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED** as set forth herein.

2. Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the SIMAD Debtors are authorized to retain the Restructuring Officers as of the Petition Date in accordance with the terms and conditions set forth in the Ravid Engagement Letter attached as Exhibit 1 and the Sasson Engagement Letter attached as Exhibit 2.

3. The terms of the Engagement Letters, including, without limitation, the indemnification provisions and compensation provisions, as modified by the Motion and this Order, are reasonable terms and conditions of employment and are hereby approved.

4. Upon the entry of this Order, the Restructuring Officers shall be empowered and authorized to carry out all duties and responsibilities set forth in their respective Engagement Letters.

5. Notwithstanding anything to the contrary in the Motion or the Engagement Letters, the Restructuring Officers' engagements are subject to the following terms:

a) The Restructuring Officers, Elar Group, LLC, and their affiliates shall not act in any other capacity (for example, without limitation, as financial advisor, claims agent/claims administrator, or

investor/acquirer) in connection with these Chapter 11 Cases through the confirmation of a plan of reorganization or dismissal of these Chapter 11 Cases; *provided further that*, nothing contained herein shall prohibit the Restructuring Officers, Elar Group, LLC, and/or their affiliates from being appointed as an estate fiduciary in connection with a confirmed plan of reorganization;

b) In the event the SIMAD Debtors seek to have the Restructuring Officers or any personnel at Elar Group, LLC assume executive officer positions that are different than the positions disclosed in the Motion, or to materially change the terms of either of the Engagement Letters by either (i) modifying the functions of the Restructuring Officers, (ii) adding new personnel, (iii) altering or expanding the scope of the engagement, or (iv) modifying the compensation structure or amount of the compensation, a motion to modify the retention shall be filed;

c) The Restructuring Officers shall file with the Court, with copies of the U.S. Trustee, counsel for the Committee and counsel for Mishmeret Trust Company (collectively, the "Notice Parties"), reports of compensation earned and expenses incurred on a monthly basis. Such reports shall contain summary charts which describe the services provided, identify the compensation earned by each Restructuring Officer and itemize the expenses incurred. All compensation shall be subject to review by the Court in the event an objection is filed. All fees and expenses paid to the Restructuring Officers are subject to disgorgement to the extent an objection is filed and sustained after payment of any fees and expenses;[2]

d) No affiliate of the Restructuring Officers and Elar Group, LLC and any of their affiliates shall serve as a director of any of the SIMAD Debtors during the pendency of these Chapter 11 Cases;

e) Success fees, completion fees, transaction fees, or other back-end fees may be sought by separate applications and shall be subject to approval by the Court at the conclusion of these Chapter 11

[2] The SIMAD Debtors' counsel has agreed that the waiver of any U.S. Trustee requirements in this Order shall not be precedential for use in other cases.

Cases on a reasonableness standard and are not being pre-approved by entry of this Order. No success fee, completion fee, transaction fee, or back-end fee shall be sought upon conversion of these Chapter 11 Cases, dismissal of the cases for cause, or appointment of a trustee;

f) The SIMAD Debtors are permitted to indemnify the Restructuring Officers on the same terms as provided to the SIMAD Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the SIMAD Debtors' D&O policy. There shall otherwise be no indemnification of the Restructuring Officers or their affiliates, including Elar Group, LLC and any of its affiliates

g) For a period of three (3) years after the completion of the Restructuring Officers' engagements, neither Mr. Ravid, Elar Group LLC, Mr. Sasson, nor any affiliates shall make any investments in the SIMAD Debtors or the reorganized SIMAD Debtors;

h) To the extent the Restructuring Officers use the services of third party entity independent contractor entities or subcontractors (collectively, the "Contractors") in these Chapter 11 Cases, (i) the Restructuring Officers shall pass through the cost of such Contractors to the SIMAD Debtors at the same rate that the Restructuring Officers pay the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflicts checks as required for the Restructuring Officers; and (iv) file with this Court disclosures pertaining to such Contractors of the kind required by Bankruptcy Rule 2014;

i) The Restructuring Officers shall make appropriate disclosures of any and all facts that may have a bearing on whether the Restructuring Officers, Elar Group, LLC, their affiliates, or any individuals working on the engagement hold or represent any interest materially adverse to the SIMAD Debtors, their creditors, or other parties in interest. The obligation to disclose identified in this subparagraph is a continuing obligation.

Case 26-16388-CMG Doc 46 Filed 07/05/26 Entered 10/07/26 Page 20 of 43



6. The relief granted herein shall be binding upon any chapter 11 trustee appointed in these Chapter 11 Cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these Chapter 11 Cases to cases under chapter 7. Notwithstanding the foregoing, any trustee appointed in these cases shall be bound by the terms of this Order with respect to the Restructuring Officers' entitlement to fees earned, but such trustee shall not be obligated to continue the Restructuring Officers' engagement.

7. During the pendency of these Chapter 11 Cases, the SIMAD Debtors shall promptly file a notice with the Court to the extent the Restructuring Officers terminate their Engagement Letters pursuant to the terms thereof or resign from such roles.

8. Notwithstanding anything to the contrary in the Motion, the Ravid Declaration, and the Ravid Engagement Letter, section 10 of the Ravid Engagement Letter, titled "Governing Law; Jury Trial Waiver; Jurisdiction", the Court shall have exclusive jurisdiction over the engagement of Elar Group, LLC and the CRO during the pendency of these Chapter 11 Cases.

9. Notwithstanding anything to the contrary in the Motion, the Sasson Declaration, and the Sasson Engagement Letter, section 10 of the Sasson Engagement Letter, titled "Governing Law; Jury Trial Waiver; Jurisdiction", the Court shall have exclusive jurisdiction over the engagement of ARO during the pendency of these Chapter 11 Cases

10. To the extent there is any inconsistency between the terms of the Engagement Letters, the Motion, and this Order, the terms of this Order shall govern.

11. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

12. Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, the terms and conditions of this Order shall be effective and enforceable immediately upon entry hereof.

13. The SIMAD Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

14. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order, the Engagement Letters and/or the services provided by the Restructuring Officers.

**<u>Exhibit 1</u>**

**Ravid Engagement Letter**

## ELAR GROUP LLC

**CRO Engagement Letter**

Draft for review | Confidential

As of June 2, 2026

CONFIDENTIAL

BY ELECTRONIC MAIL ([Board email])

Board of Directors

Simad

98 Yigal Alon st. Tel Aviv, Israel

Re: Engagement as Chief Restructuring Officer

Dear Board of Directors:

I am pleased to provide this engagement letter agreement (this "Agreement"), dated as of the date above (the "Effective Date"), whereby SIMAD Holdings Limited and any legally authorized affiliated debtor or operating entity designated in writing and identified on Schedule 1 attached hereto (each, a "Company" or "Debtor" and collectively, the "Company Parties") engage Elar Group LLC ("Elar Group") to provide Asaf Ravid ("Ravid") to serve as Chief Restructuring Officer ("CRO") and to provide strategic restructuring, management, and financial advisory services under the terms and conditions set forth herein. Elar Group, Ravid, and the Company Parties are referred to collectively as the "Parties."

**Section 1: Scope of Engagement and Services**

The Company Parties hereby appoint Ravid, through Elar Group, subject to any applicable law and court approval, as CRO of the Company Parties, vested with authority to act on the Company Parties' behalf, including, as applicable, authority to assist with or authorize restructuring steps, bankruptcy-related filings, financing, transactions, reporting, and communications with creditors and other constituents. Elar Group and Ravid shall have authority, subject to applicable fiduciary duties to all stakeholders, to:

(a) evaluate liquidity options, including restructuring, refinancing, reorganizing, capital raising, or a sale of assets;

(b) open, close, maintain, access, and administer bank accounts, treasury accounts, lockboxes, cash management systems, payment platforms, and related banking services for the Company and each of its direct and indirect subsidiaries, and have full signatory

authority with respect to all such accounts, services, checks, wires, ACH transfers, bank documents, resolutions, authorizations, and related instruments;

(c) hire, terminate, suspend, discipline, supervise, direct, and determine the roles, responsibilities, compensation, and reporting lines of the Company's officers, employees, contractors, consultants, agents, and other personnel or third party advisors;

(d) approve and authorize the filing of pleadings, declarations, reports, and other papers, and provide information or testimony in connection with court filings and hearings;

(e) consult with and coordinate with B. Riley and Perry Mandarino on the related non-Company Parties' matters, provided that neither Elad Group not Ravid shall have any fiduciary or other duties to such non-Company Parties;

(f) Serve as manager of each direct and indirect subsidiary of SIMAD Holdings Limited with power to act as manager for each such entity solely in accordance with the terms of its operating agreement;

(g) support negotiations with lenders, creditors, landlords, contract counterparties, equity holders, investors, and other stakeholders;

(h) negotiate the terms of debtor-in-possession financing, use of cash collateral, forbearance, restructuring support, sale, or other transaction documents;

(i) pursue, defend, settle, or otherwise manage litigation, claims, insurance matters, and disputes as may be appropriate, in consultation with counsel;

(j) negotiate, propose, and execute a plan of reorganization, liquidation, sale, refinancing, or other restructuring transaction, subject to any required approvals; and

(k) assume any other corporate authority or obligation as may be deemed prudent to facilitate the foregoing, subject to Elar Group's and Ravid's agreement.

**Section 2: Performance of Services**

Upon execution of this Agreement, Ravid, through Elar Group, is prepared to begin immediately and will perform the duties and responsibilities set forth herein in good faith and to the best of his abilities. Ravid, through Elar Group, will devote the time reasonably necessary to the business and affairs of the Company Parties during the term of this Agreement. Nothing herein shall create an employee-employer relationship between Elar Group, Ravid, and any Company.

**Section 3: Compensation; Monthly Billing in Advance**

Monthly Fee: In consideration for the services provided by Elar Group and Ravid, the Company Parties shall pay Elar Group a monthly nonrefundable cash fee in the amount of $70,000 (the "Monthly Fee"). The Monthly Fee shall be billed monthly in advance, beginning on the Effective Date and thereafter on the first day of each month during the term of this Agreement. Each Monthly Fee shall be deemed fully earned when billed and payable within [5] business days after invoice. If the Effective Date or Termination Date occurs other than on the first day of a month, the Monthly Fee for that month shall be [prorated / not prorated].

**Additional Services:** Services outside the scope of Section 1, or materially exceeding the ordinary CRO scope contemplated by this Agreement, shall be subject to separate written agreement by the Parties and, if applicable, approval of the Bankruptcy Court.

Expense Reimbursement: Elar Group shall be reimbursed for all reasonable and documented out-of-pocket expenses incurred in connection with the services provided under this Agreement, including travel, transportation, lodging, filing-related costs, and reasonable fees and disbursements of counsel incurred in connection with any request or requirement to appear at a hearing, deposition, interview, investigation, or litigation matter relating to the engagement. Expenses shall be invoiced monthly and payable within [15] days.

The Parties acknowledge that any payments (including the purchase of any insurance to the extent required (as detailed in section 8) under this Agreement shall be funded by dedicated funds transferred specifically for this purpose by the controlling shareholder and/or the bonds trustee.

Section 4: Company Representations; Information; Court Approval

The Company Parties shall promptly provide Elar Group and Ravid with such information about the Company Parties and their operations as Elar Group or Ravid may reasonably request. The Company Parties represent that they are unaware of any material misrepresentation or misstatement in information provided or to be provided to Elar Group or Ravid and shall promptly notify Elar Group and Ravid in writing if they discover any such misrepresentation or misstatement.

To the extent Bankruptcy Court approval is required or advisable for the Company Parties to retain Elar Group and appoint Ravid, the Company Parties shall use best efforts to promptly seek entry of an order authorizing this engagement, nunc pro tunc to the Effective Date, in form and substance reasonably acceptable to Elar Group and Ravid. If the Bankruptcy Court declines to approve this engagement, this Agreement may be terminated without liability to any Party for such termination, except for accrued fees, expenses, indemnification, and other surviving obligations.

**Section 5: Confidentiality; Privilege; Reliance**

Elar Group and Ravid will use commercially reasonable efforts to maintain the confidentiality of the Company Parties' confidential documents and information, subject to applicable law, court order, subpoena, legal process, or regulatory request. Communications among Elar Group, Ravid, the Company Parties, and counsel are intended to be made for the purpose of assisting counsel in providing legal advice and to be protected by applicable privileges and work-product protections.

The Company Parties acknowledge that actual outcomes may differ from projections, estimates, analyses, or advice included in the Company's publicly available information without fault by Elar Group or Ravid.

**Section 6: Nature of Services; No Professional Advice**

Advice rendered by Elar Group or Ravid is intended solely for the use of the Company Parties in connection with the matters covered by this Agreement and may not be relied upon by any other person or used for any other purpose without Elar Group's and Ravid's prior written consent. Neither Elar Group nor Ravid is undertaking to provide legal, tax, accounting, regulatory,

insurance, or other similar professional advice, and the Company Parties shall rely on their own counsel, accountants, and other advisors for such advice.

**Section 7: Term and Termination**

This engagement shall commence on the Effective Date and continue until terminated: (i) by mutual agreement of the Parties; (ii) upon 30 days' written notice by any Party; Any Monthly Fee billed in advance and deemed earned before termination shall not be refundable, and any accrued but unpaid fees or expenses shall be paid on the Termination Date. Sections 3, 5, 6, 8, 9, 10, 11, and 12 shall survive expiration or termination of this Agreement.

**Section 8: Insurance; Indemnification; Limitation of Liability**

The Company Parties shall make best efforts to include Ravid as an insured person under the Company's directors' and officers' liability insurance policy, or if this is not possible, issue a policy for the CRO with coverage no less favorable than that provided to the Company's directors and officers. The Company Parties shall furnish copies of the applicable D&O policy and endorsements evidencing such coverage to Elar Group and Ravid promptly upon request.

The Company Parties shall indemnify and hold harmless Elar Group, Ravid, and their respective affiliates, representatives, members, managers, employees, contractors, agents, heirs, successors, and assigns from and against any loss, claim, damage, liability, or expense, including reasonable attorneys' fees and expenses, arising out of or relating to this Agreement, the engagement, or the services provided hereunder, except to the extent finally determined by a court of competent jurisdiction to have resulted from Elar Group's or Ravid's bad faith, fraud, or willful misconduct. In no event shall Elar Group or Ravid be liable for consequential, indirect, incidental, punitive, or special damages, including lost profits or business opportunity costs.

**Section 9: Notices**

All notices shall be in writing and delivered by electronic mail or recognized overnight courier. Notices to Elar Group and Ravid shall be addressed to Elar Group LLC and Asaf Ravid at aravid@circleinv.com and [mailing address]. Notices to the Company Parties shall be addressed to Board of Directors, [Board email], [Simad mailing address], or to such other address as a Party may designate in writing.

**Section 10: Governing Law; Jury Trial Waiver; Jurisdiction**

THIS AGREEMENT WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED ENTIRELY IN SUCH STATE. EACH PARTY KNOWINGLY, VOLUNTARILY, AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM RELATED TO OR ARISING OUT OF THIS AGREEMENT OR THE SERVICES CONTEMPLATED HEREBY. EACH PARTY IRREVOCABLY CONSENTS TO THE EXCLUSIVE JURISDICTION OF ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION SITTING IN THE COUNTY OF NEW YORK, STATE OF NEW YORK, AND

WAIVES ANY OBJECTION BASED ON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, OR FORUM NON CONVENIENS.

**Section 11: Entire Agreement; Amendments; Counterparts; Severability**

This Agreement represents the entire agreement between the Parties and supersedes all previous agreements relating to the subject matter hereof. This Agreement may not be modified or amended except in writing signed by all Parties. This Agreement may be executed in counterparts and by electronic signature, each of which shall constitute an original and all of which together shall constitute one agreement. The invalidity or unenforceability of any provision shall not affect the validity or enforceability of any other provision.

**Section 12: Publicity**

Following the Termination Date, Elar Group and Ravid may list the engagement on their resumes, biographies, websites, LinkedIn profiles, or similar professional materials, provided that any public description identifying the Company Parties by name shall be subject to the Company Parties' reasonable prior approval.

Please confirm that the foregoing correctly sets forth our understanding and indicate your acceptance in the space provided below, whereupon this Agreement and your acceptance shall constitute a binding agreement among us.

Very truly yours,

Elar Group LLC

By: *Asaf Ravid* ____________________

By: Asaf Ravid

Title: Authorized Signatory

Accepted and agreed to as of the date first written above:

Simad Holdings Limited

By: ____________________

Name: Doron Turgeman

Title: External director

## ELAR GROUP LLC

## SCHEDULE 1

INTERMEDIATE SIMAD I LLC

SIMAD EQUITIES LLC

[DAMIS HOLDINGS LLC]

ACHIM LANDCO LLC

ACHIM OPERATINGCO LLC

BANNER LANDCO LLC

BANNER OPERATINGCO LLC

BLUESTAR LANDCO LLC

BLUESTAR OPERATINGCO LLC

CHATEAUGAY LANDCO LLC

CHATEAUGAY CAMPCO LLC

BAHS OPERATING INC.

BAHS HOLDINGS LLC

CLUB GETAWAY OPERATINGCO LLC

CLUB GETAWAY LANDCO LLC

COUNTRY ROADS LANDCO LLC

COUNTRY ROADS OPERATINGCO LLC

MILL ROAD LANDCO LLC

EAGLE'S LANDING DAY CAMP LLC

SHAB OPERATING INC.

SHAB HOLDINGS LLC

GREEN LANE LANDCO LLC

GREEN LANE OPERATINGCO LLC

GREENVILLELAND LLC

MALKA OPERATINGCO LLC

IAFALANDCO LLC

IAFAOPERATINGCO LLC

ISLAND LAKE LANDCO LLC

## ELAR GROUP LLC

ISLAND LAKE CAMPCO LLC

KIWI OPERATINGCO LLC

LAVCO LLC

LAVLAND LLC

RDM CAMPS LLC

MEADOWBROOK OPERATINGCO LLC

MEADOWBROOK LANDCO LLC

CAMP MED-O-LARK, INC.

WASHINGTON LAKE LLC

MESORAHCO LLC

MESORAHLAND LLC

MOGENAVCO LLC

MOGENAVLAND LLC

MOHAWKCAMPCO LLC

MOHAWKLAND LLC

MOHAWK COUNTRY DAY SCHOOL, INC.

BELGRADE LAKES SUMMER CAMPS LLC

POLAND LANDCO LLC

POLAND CAMPCO LLC

PINE FOREST CAMPCO LLC

PINE FOREST LANDCO LLC

ROLLING HILLS LANDCO LLC

ROLLING HILLS OPERATINGCO LLC

SUMMIT CAMP LLC

WAUKEELA OPERATINGCO LLC

WAUKEELA LANDCO LLC

## ELAR GROUP LLC

WEKEELAND LLC

MAINEWEKEELACO LLC

WILLOW LAKE DAY CAMPS LLC

WILLOW LAKE LAND CORPORATION

WM CAMP LLC

WM LAND LLC

WIKI OPERATINGCO LLC

Case 26-00046-CMG Doc 5-1 Filed 07/20/26 Entered 07/20/26 16:31:59 Desc
Page 14 of 43

**Exhibit 2**

**Sasson Engagement Letter**

# DANIEL Y. SASSON

66 Leonard Street, Unit 6B
New York, New York 10013
Telephone (516) 286-3320
dsasson.simad@gmail.com

As of June 1, 2026

CONFIDENTIAL

**BY ELECTRONIC MAIL**
Board of Directors
Simad Holdings Limited

Re: Engagement as Associate Restructuring Officer

To whom is may concern,

I am pleased to provide you with this agreement ("Agreement") dated as of the date above (the "Effective Date"), whereby Simad Holdings Limited ("Simad"), its various property owning entities (collectively, the "PropCos") and its various operating entities (collectively, the "OpCos", together with Simad and the PropCos, the "Debtors"; each individually referred to as the "Company" and together, the "Company Parties") each agree to engage Daniel Sasson ("Sasson", together with the Company Parties, the "Parties") to provide certain strategic restructuring and financial advisory services to the Company Parties, to be engaged as an associate restructuring officer of any Debtors under the terms and conditions set forth herein.

For identification purposes, Simad, the PropCos and OpCos are identified on Annex A attached hereto.

**Section 1**: <u>Scope of Engagement and Services</u>

The Agreement contemplates each Company's imminent commencement of a chapter 11 bankruptcy case (the "Bankruptcy Case"). Pursuant to this Agreement, the Company Parties hereby appoint Sasson as the Associate Restructuring Officer of each Company vested with authority to act at the direction of the Chief Restructuring Officer of each Company. In addition, Sasson shall:

(a) Assist, as necessary, the Company and its counsel in preparing and filing the chapter 11 petition and any necessary and required reporting in the Bankruptcy Case;
(b) open and close bank accounts;
(c) assist the Company with the preparation of any schedules, statements, debtor in possession financing budgets and other documents as may be required or prudent in the Chapter 11 Case;
(d) perform any other ancillary services or assume any other corporate authority or obligation(s) as may be deemed prudent to facilitate the above; and
(e) Provide such other services to assist the Company regarding a-d, as may be ancillary to the foregoing services or which are additionally agreed upon in writing by Sasson and the Company, and approved by the Bankruptcy Court, as necessary.

Notwithstanding anything to the contrary herein, and unless otherwise agreed, Sasson shall not be under any obligation to provide fairness, solvency opinions or valuations with respect to any entity or transaction.

Without limitation, Sasson shall have no duty, no responsibility, and no authority with respect to regulatory compliance duties, including, without limitation: (1) the management, handling, transport, disposal or remediation of hazardous wastes or hazardous substances; (2) compliance with applicable federal, state or local statutes, ordinances, regulations, orders and requirements of common law in any way affecting or pertaining to health, safety or the environment; and (3) filings with federal and state securities authorities and federal, state and local taxing authorities

Company Representations

The Company shall promptly provide the Sasson with such information about the Company and its operations as Sasson may reasonably request. The Company is unaware of any material misrepresentation or misstatement with respect to information provided or to be provided to Sasson and will immediately notify Sasson in writing if at any time such Company discovers that there have been such material misrepresentations.

To the extent Bankruptcy Court approval is required or necessary for the Company to retain Sasson, the Company shall use their best efforts to cause the Company to promptly file an appropriate motion (such motion to be in a form acceptable to Sasson) for an order pursuant to Sections 105 and 363 of the Bankruptcy Code authorizing the debtors, as Debtor and Debtor-in-Possession to retain Sasson to provide the services set forth herein, *nunc pro tunc,* to the Effective Date of the this Agreement. Any order authorizing the Debtor's assumption of this Agreement or, if this Agreement is deemed not to be an executory contract, an order authorizing Sasson's engagement, must be in a form acceptable to Sasson in its sole discretion. In the event the Bankruptcy Court declines to issue the aforementioned order, the engagement shall be terminated without liability to any party for such termination.

**Section 2**: Performance of Services

Upon execution of this Agreement, Sasson is prepared to begin immediately and will perform the duties and responsibilities as forth herein in good faith and to the best of his abilities. Sasson will devote the time reasonably necessary to the business and affairs of the Debtors during the term of its services under this Agreement.

**Section 3:** Compensation

(a) Intentionally Omitted
(b) A monthly nonrefundable cash fee in the amount of $18,000.00 (the "Monthly Fee). The Monthly Fee shall begin to accrue starting on June 1, 2026 and shall continue to accrue monthly thereafter, on the first of each month, until this Agreement terminates. Each Monthly Fee shall be deemed earned on the first day of each Month. For avoidance of doubt, the Monthly Fee shall only include the services as provided in Section 1 (a) through (f) herein.
(c) Expense Reimbursement: Sasson shall be entitled to reimbursement on a monthly basis of all reasonable and documented out-of-pocket expenses (the "Expenses") incurred by Sasson (including commuting costs) in connection with the services to be provided under this Agreement, including costs of travel and transportation. Expenses shall include amounts incurred by Sasson in connection with any request or requirement to appear at a court hearing or as a witness in any pending or threatened litigation that is brought by or against the Company Parties and/or its principals, affiliates, directors or officers or that otherwise relates to this Agreement or the services rendered by Sasson hereunder, and shall include expenses incurred in appearing and preparing to

appear as such a witness, including without limitation, the reasonable fees and disbursements of legal counsel. Expenses are payable upon rendition of monthly invoices setting forth in reasonable detail the nature and amount of Expenses. Such Expenses shall be paid promptly by the Company Parties.

(d) Payment obligations:

1. Sasson will at all times be engaged as an independent contractor for all purposes of this agreement. As such the Debtor will not deduct or withhold any deferral, state or local income taxes from the amounts due Sasson pursuant to this Agreement and on January 31 of each year during the term of this Agreement and for the year following the termination of this Agreement the Company Parties shall issue to Sasson one or more forms 1099 in connection with amounts paid Sasson during the previous year.
2. To the extent not otherwise provided, Sasson shall be paid promptly when due pursuant this Section 3 all amounts owed to it in connection with this Agreement, with payment to be made within 15 days.

**Section 4**: Reasonableness of Fees

The Company Parties acknowledge that they believe that Sasson's experience and expertise regarding restructurings, management, legal and capital and banking markets will inure to its benefit, that the value of Sasson's services derives in substantial part from that experience and expertise, and that Sasson is foregoing the opportunity to undertake alternative engagements related to potential engagements. Accordingly, each of the parties hereto acknowledge that the structure and amount of the advisory fees paid to Sasson hereunder are reasonable regardless of the number of hours to be expended by Sasson's professionals in the performance of the services to be provided hereunder. Each party hereto also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Sasson and that the actual time and commitment required of Sasson to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for Sasson. Given the numerous issues which may arise in engagements such as this, Sasson's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of Sasson that will be required in this engagement, and the market rate for Sasson's services of this nature, the parties agree that the fee arrangement provided herein is reasonable, fairly compensates Sasson, and provides requisite certainty to the parties hereto.

**Section 5**: Information; Privilege

(a) The Company agrees to use its best efforts to provide Sasson access to all of its financial and other information and records pertinent to this engagement and to the Debtor's directors, officers, employees, representatives, creditors, and other stakeholders as Sasson reasonably deems appropriate.

(b) Sasson will be using and relying on publicly available information and on public or non-public data, material and other information furnished to Sasson by the Company and its advisors and other interested parties. It is understood that in performing under this engagement, Sasson may assume

and rely upon the accuracy and completeness of and is not assuming any responsibility for independent verification of, information so gathered or furnished.

(c) The Company acknowledges that actual outcomes may differ from Sasson's predictions and projections without fault by Sasson. The Company shall advise Sasson promptly upon obtaining actual knowledge of the occurrence of any event or any other change in fact or circumstance upon which it is known Sasson formed part or all of its opinions, advice or conclusions, or which could reasonably be expected to result in some or all of the Information being incorrect, inaccurate, or misleading.

In connection with this retention, all oral or written communications between Sasson and counsel for the Company as well as communications between Sasson and any attorney, expert, agent, or employee acting on behalf of their counsel, shall be treated as confidential and made solely for the purpose of assisting Counsel in providing legal advice to the Company. Sasson acknowledges that such communications are intended to be protected by the attorney-client privilege, the work-product doctrine, and other applicable privileges and agrees not to disclose any such communication to a third party without Counsel's prior consent or understanding except pursuant to a subpoena or court order or as otherwise required by law or upon the request or demand of any regulatory authority, in which events Sasson shall provide notice to Counsel so Counsel at their cost may seek a protective order or other appropriate remedy.

(d) Sasson shall use commercially reasonable efforts to maintain the confidentiality of the Company's documents and confidential information, to the extent required by applicable professional standards and as requested by the Company and as permitted by law and legal process. Sasson acknowledges that the confidentiality obligations survive the termination of this Agreement. When the engagement is concluded, the Company may request that confidential documents provided to Sasson be returned or destroyed and Sasson shall return or destroy them; provided that Sasson shall be entitled to retain a copy of any information that it is required by law or legal process to retain but will keep such information confidential in accordance with this Section 5(d). In the event that no such request is made, Sasson shall not be under any obligation to retain copies of such documents but must adhere to commercially reasonable standards of security in the event the documents are not destroyed. The Company understands that Sasson shall not serve as a document or records custodian for the Company under the terms of this Agreement. If requested by counsel to the Company, Sasson agrees to execute and comply with the terms of any reasonable Confidentiality, Common Interest, Joint Defense, Non-Disclosure or other agreement pertaining to the treatment and exchange of confidential information related to the matters covered by this Agreement.

**Section 6**: Nature of Services; Use of Advice

(a) Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than the parties hereto, any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Sasson hereunder.

(b) Any advice rendered by Sasson pursuant to this Agreement is intended solely for the use of the respective Company in considering the matters to which this Agreement relates, and such advice may not be relied upon by any other person or used for any other purpose. In addition, the specific terms of this Agreement shall not be referred to without Sasson's prior written consent.

(c) Subject to section 5(c) above, Company and you understand that Sasson is not undertaking to provide any legal, regulatory, accounting, insurance, tax or other similar professional advice and the Company confirms that they are relying on their own counsel, accountants and similar advisors for such advice. **The Company Parties each acknowledge that even though Sasson is an attorney licensed to practice law in various jurisdictions Sasson will not provide legal services pursuant to this Agreement and that no attorney-client relationship exists between the Parties.**

(d) Sasson's compensation is not contingent in any way upon Sasson's recommendations, findings, or conclusions. Sasson shall be entitled to compensation hereunder, even if it is not asked to provide testimony or in the event that a court or other tribunal determines, for any reason not to permit Sasson to provide testimony or to qualify Sasson's testimony. Sasson does not warrant or predict results or the final outcome of these matters. It is understood that, as of this date, Sasson has not arrived at any conclusions respecting any matters on which it may provide testimony. It is further understood that Sasson shall be entitled to receive payment in full of all fees and expenses due under this Agreement regardless of the conclusions at which it may arrive.

**Section 7**: Term of Agreement

(a) Term: This engagement may be terminated (i) by mutual agreement of the Parties, (ii) upon 10 days' written notice without cause by either Sasson or the Company, or (iii) immediately with cause by either Sasson or the Company (the date specified in any such notice is herein referred to as the "Termination Date"). If any amounts set forth in Section 3 have accrued but remained unpaid on the Termination Date, Sasson shall be entitled to any such deficiency on the Termination Date as "liquidated damages" unless this Agreement was terminated by the Company with Cause. Notwithstanding anything to the contrary in the foregoing, the provisions in Section 3, Section 5, Section 6 and Sections 8-11 shall survive the expiration or termination of this Agreement.

For purposes of this Agreement, "Cause" shall be defined as: (i) an intentional act of fraud, embezzlement, theft or any material violation of law involving moral turpitudes; (ii) intentional damage to the Debtor's assets; (iii) engagement in any competitive activity which would constitute a breach of Sasson's duty of loyalty of its obligations under this Agreement; (iv) the failure by Sasson to perform its duties under this Agreement; or (v) willful conduct that is demonstrably and materially injurious to the Debtors, monetarily or otherwise.

**Section 8**: Limitation of Liability; Hold Harmless

(a) Limitation of Liability: Sasson shall have no liability (whether direct or indirect, in contract, tort or otherwise) to the Company Parties, nor any of their members, partners, directors, officers, employees, or agents or their respective affiliates, security holders, creditors or regulators for or in

Case 26-10388-CMG Doc 541 Filed 10/01/26 Entered 10/01/26 Page 37 of 43

connection with Sasson's engagement or any conduct in connection therewith (including activities prior to the date hereof), except to the extent that any loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final and no longer subject to appeal or review to have resulted primarily from Sasson's bad faith or willful misconduct in connection with any of the advice, actions, inactions or services provided other than an action or failure to act undertaken at the request or with the consent of the Company Parties; provided further that in no event shall Sasson be liable in an aggregate amount in excess of the amount of fees and expenses actually received by Sasson pursuant to this Agreement within the six months preceding the alleged misconduct; provided further that in no event shall Sasson be liable for any consequential, indirect, incidental, punitive, or special damages (including, but not limited to, lost profits or business opportunity costs).

(b) Hold Harmless: In consideration of the benefits that the Company Parties will receive from Sasson's services, the Company Parties agree to indemnify up to an aggregate amount of $250,000.00 and hold harmless Sasson from and against any loss, claim, damages, liability or expense including Expenses (collectively, "Losses") (i) related to or arising out of (a) the Company Parties' actions or failures to act (including statements or omissions made or information provided by the Company Parties or its respective agents) in connection with the engagement or (b) actions or failures to act by an indemnified person with the Company Parties' consent or otherwise on reasonable reliance on the Company Parties' actions or failures to act in each case in connection with the engagement or (ii) otherwise related to or arising out of the engagement, Sasson's performance thereof or any other services Sasson is asked to provide to the Company Parties (in each case, including activities prior to the date hereof), except that this clause (ii) shall not apply to any Losses to the extent that they are determined by a court of competent jurisdiction in a final, non-appealable judgment to have resulted from the bad faith or willful misconduct by Sasson, provided further that in no event shall the Company Parties be liable for any consequential, indirect, incidental, punitive or special damages (including, but not limited to, lost profits or business opportunity costs).

(c) Each of the Company Parties also covenants that it will not pursue any causes of action, charges, damages or claims of any kind against Sasson arising from or related to its engagement, except to the extent of any such claims are based upon a claim of bad faith, self-dealing, or fraud.

(d) To the extent Sasson is appointed an officer of any of the Company Parties, the Company Parties shall use their best efforts to provide Sasson with full coverage under applicable insurance policies that protect officers and directors from liability, including by adding Sasson as a specifically insured party. A copy of each applicable policy satisfying such required insurance coverage requirement, including endorsements, shall be furnished to Sasson within fourteen days of execution of this Agreement.

(e) Alternatively, if coverage under subsection (d) is impracticable, Sasson will obtain separate professional liability insurance and/or errors and omissions insurance for the services provided hereunder and the Company Parties shall bear the full cost thereof.

(f) Intentionally Omitted

(g) The Company Parties acknowledge that the compensation to Sasson under Section 3 of this Agreement was reduced specifically in consideration for each Debtor’s agreement to these limitations of liability and indemnification provisions.

(h) The Company Parties’ obligations pursuant to this Section 8 shall inure to the benefit of any successors, assigns, heirs, and personal representatives of Sasson and are in addition to any rights that Sasson may have at common law or otherwise. The obligations of the Company Parties pursuant to this Section 8 shall survive any expiration or termination of this Agreement or Sasson’s engagement hereunder.

**Section 9**: <u>Miscellaneous</u>

(a) Each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement and to perform its obligations hereunder. Each party hereto further represents and warrants that this Agreement has been duly and validly authorized by all necessary corporate actions and has been duly exercised and delivered by each such party and constitutes the legal, valid and binding agreement of each such party, enforceable in accordance with its terms.

(b) NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT, EXCEPT AS SET FORTH IN SECTION 9(a) HEREOF, SASSON MAKES NO WARRANTIES, EXPRESS OR IMPLIED, WHETHER ARISING BY OPERATION OF LAW, COURSE OF PERFORMANCE OR DEALING, CUSTOM, USAGE IN THE TRADE OR PROFESSION OR OTHERWISE, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY, NONINFRINGEMENT AND FITNESS FOR A PARTICULAR PURPOSE.

(c) All notices to be given to a party hereunder shall in writing and delivered by electronic mail, addressed (i) in the case of Sasson, to Daniel Sasson, 66 Leonard Street, Unit 6B, New York, New York 10013, dsasson.simad@gmail.com; and (ii) in the case of the Company Parties to [XXX], or to such other address as such party shall provide to the other parties in accordance with this Section 9(c).

(d) No party may assign this Agreement, by operation or law or otherwise, without the prior written consent of the other parties.

**Section 10**: <u>Governing Law; Jury Trial Waiver; Jurisdiction</u>

THIS AGREEMENT WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED ENTIRELY IN SUCH STATE. EACH OF SASSON AND THE COMPANY PARTIES KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF OR IN CONNECTION

WITH THE ENGAGEMENT OF SASSON PURSUANT TO, OR THE PERFORMANCE OF SASSON OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY AIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT AND MAINTAINED IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION SITTING IN THE COUNTY OF NEW YORK IN THE STATE OF NEW YORK, WHICH COURTS SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY HERETO FURTHER IRREVOCABLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT, AND HEREBY WAIVES IN ALL RESPECTS ANY CLAIM OR OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON-CONVENIENS. EACH PARTY HERETO AGREES THAT A FINAL NON-APPEALABLE JUDGMENT IN ANY SUCH ACTION BROUGHT IN ANY SUCH COURT SHALL BE CONCLUSIVE AND BINDING UPON IT AND MAY BE ENFORCED IN ANY OTHER COURTS HAVING JURISDICTION OVER IT BY SUIT UPON SUCH JUDGMENT. EACH OF THE PARTIES HERETO HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF ANY OTHER PARTY HERETO HAS REPRESENTED EXPRESSLY OR OTHERWISE THAT SUCH PARTY WOULD NOT SEEK TO ENFORCE THE PROVISIONS OF THIS WAIVER. EACH OF THE PARTIES HERETO HEREBY ACKNOWLEDGES THAT IT HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY AND IN RELIANCE UPON, AMONG OTHER THINGS, THE PROVISIONS OF THIS SECTION 10.

**Section 11**: Entire Agreement; Amendments; Counterparts; Severability: This Agreement represents the entire agreement between the parties, supersedes all previous agreements relating to the subject matter hereof (should they exist) and may not be modified or amended except in writing signed by all of the parties hereto. This Agreement may be executed in counterparts (and by facsimile or other electronic means), each of which shall constitute an original and all of which together will be deemed to be one and the same document. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision.

**Section 12:** Publicity

The Company Parties acknowledge and agree that, following the Termination Date, Sasson may list their engagement on their CV and/or Linkedin profile and in such other publications as may be customary describing its services in connection with any transaction, following the completion of such transaction, provided that the Company Parties may reasonably approves the proposed description and may elect not to be identified by name.

[The rest of this Page is Left Intentionally Blank]

Please confirm that the foregoing correctly sets forth our understanding and indicate your acceptance thereof in the space provided below, whereupon this Agreement and your acceptance shall constitute a binding agreement between and among us.

Very truly yours,

By:______________________________
Daniel Sasson

Accepted and Agreed to as
of the date first written above:

Simad Holdings Limited

By: Asaf Ravid ______________________________
Name: Assaf Ravid
Title: Chief Restructuring Officer

SCHEDULE A

INTERMEDIATE SIMAD I LLC

SIMAD EQUITIES LLC

[DAMIS HOLDINGS LLC]

ACHIM LANDCO LLC

ACHIM OPERATINGCO LLC

BANNER LANDCO LLC

BANNER OPERATINGCO LLC

BLUESTAR LANDCO LLC

BLUESTAR OPERATINGCO LLC

CHATEAUGAY LANDCO LLC

CHATEAUGAY CAMPCO LLC

BAHS OPERATING INC.

BAHS HOLDINGS LLC

CLUB GETAWAY OPERATINGCO LLC

CLUB GETAWAY LANDCO LLC

COUNTRY ROADS LANDCO LLC

COUNTRY ROADS OPERATINGCO LLC

MILL ROAD LANDCO LLC

EAGLE’S LANDING DAY CAMP LLC

SHAB OPERATING INC.

SHAB HOLDINGS LLC

GREEN LANE LANDCO LLC

GREEN LANE OPERATINGCO LLC

GREENVILLELAND LLC

MALKA OPERATINGCO LLC

IAFALANDCO LLC

IAFAOPERATINGCO LLC

ISLAND LAKE LANDCO LLC

ISLAND LAKE CAMPCO LLC

KIWI OPERATINGCO LLC

LAVCO LLC

LAVLAND LLC

RDM CAMPS LLC

MEADOWBROOK OPERATINGCO LLC

MEADOWBROOK LANDCO LLC

CAMP MED-O-LARK, INC.

WASHINGTON LAKE LLC

MESORAHCO LLC

MESORAHLAND LLC

MOGENAVCO LLC

MOGENAVLAND LLC

MOHAWKCAMPCO LLC

MOHAWKLAND LLC

MOHAWK COUNTRY DAY SCHOOL, INC.

BELGRADE LAKES SUMMER CAMPS LLC

POLAND LANDCO LLC

POLAND CAMPCO LLC

PINE FOREST CAMPCO LLC

PINE FOREST LANDCO LLC

ROLLING HILLS LANDCO LLC

ROLLING HILLS OPERATINGCO LLC

SUMMIT CAMP LLC

WAUKEELA OPERATINGCO LLC

WAUKEELA LANDCO LLC

WEKEELAND LLC

MAINEWEKEELACO LLC

WILLOW LAKE DAY CAMPS LLC

WILLOW LAKE LAND CORPORATION

WM CAMP LLC

WM LAND LLC

WIKI OPERATINGCO LLC