# ACCEPTANCE OF COLLATERAL IN PARTIAL SATISFACTION AGREEMENT (UNITED STATES AND CANADA)

This ACCEPTANCE OF COLLATERAL IN PARTIAL SATISFACTION AGREEMENT (this "**Agreement**") is entered into as of October 2, 2026, by and among Synergy CHC Corp., a Nevada corporation (the "**Borrower**"), Hand MD Corp., a Delaware corporation, as a guarantor ("**Hand MD**") and Synergy CHC Inc., a corporation organized under the laws of the Province of Alberta, Canada, as a guarantor ("**Synergy Canada**" and together with Hand MD and the Borrower, the "**Grantors**" and each, a "**Grantor**"), ACP Agency, LLC, in its capacity as Administrative Agent and Collateral Agent (collectively, in such capacities, the "**Agent**"), ACME Credit Partners Fund I, LP, as the sole Lender (the "**Lender**"), Force Factor Holdings LLC, a Delaware limited liability company ("**US NewCo**"), and Force Factor Holdings Canada Inc., a corporation organized under the laws of the Province of Ontario ("**Canadian NewCo**" and, together with US NewCo, the "**NewCos**" and each, a "**NewCo**"). Each of the foregoing is a "**Party**" and they are collectively the "**Parties**".

## RECITALS

A. The Grantors, the Agent and the Lender are parties to that certain (a) Term Loan Credit Agreement, dated as of May 30, 2025, by and among the Borrower, as borrower, Hand MD and Synergy Canada, as guarantors, the Lender and the Agent, as amended by that certain First Amendment to Term Loan Credit Agreement, dated as of June 24, 2025, that certain Second Amendment to Term Loan Credit Agreement, dated as of March 24, 2026, and that certain Limited Waiver to Term Loan Credit Agreement, dated as of March 24, 2026 (as so amended and as otherwise amended, restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**"), (b) Pledge and Security Agreement, dated as of May 30, 2025, as supplemented by the Security Agreement Supplement, dated as of June 9, 2025, made by each of the Grantors in favor of the Agent (as so supplemented and as otherwise amended, restated, amended and restated, supplemented or otherwise modified and in effect from time to time prior to the date hereof, the "**US Security Agreement**"), and (c) General Security Agreement, dated as of (i) May 30, 2025 made by the Borrower and the Synergy Canada, in favor of the Agent and (ii) June 9, 2025 made by Hand MD, in favor of the Agent (each as so supplemented and as otherwise amended, restated, amended and restated, supplemented or otherwise modified and in effect from time to time prior to the date hereof, the "**Canadian Security Agreement**" and together with the US Security Agreement, the "**Security Agreement**"). Capitalized terms not defined herein have the meaning ascribed to such terms in the Security Agreement and/or the Credit Agreement, as applicable.

B. As a result of the Events of Default that have occurred and are continuing (collectively, the "**Existing Events of Default**"), the Agent has declared all of the Loans and other Obligations under the Credit Agreement due and payable and, pursuant to Article X of the Credit Agreement, each of Hand MD and Synergy Canada has fully guaranteed the payment in full of the Guaranteed Obligations, including such Obligations. Pursuant to the Security Agreement, the Agent holds a security interest in all of the present and after-acquired personal property of each Grantor. Each Grantor is in default of the Obligations, and the Agent's security in respect of the Collateral pursuant to the Security Agreement has become enforceable.

C. On September 4, 2026 (the "**Petition Date**"), each Grantor commenced a voluntary

case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Columbia (the "**Bankruptcy Court**"), which cases are jointly administered under Case No. 26-00465-ELG (collectively, the "**Chapter 11 Cases**"). Each Grantor is a debtor and debtor in possession in the Chapter 11 Cases.

D. On September 14, 2026, the Grantors filed the *Motion to Abandon Encumbered Assets* [Docket No. 33] (the "**Abandonment Motion**"), by which the Grantors seek authority under Section 554(a) of the Bankruptcy Code to abandon the property of the estates that is subject to the Agent's perfected Liens, which property includes the Collateral. The Parties intend that the Enforcement Actions (as defined below) are consummated immediately upon the abandonment of the Collateral pursuant to an order of the Bankruptcy Court (i) granting the Abandonment Motion at which time the Collateral shall cease to be property of the Grantors' estates and shall revest in the Grantors and (ii) modifying the automatic stay under Section 362(d) of the Bankruptcy Code to permit the Parties to consummate the transactions set forth in this Agreement and to exercise their rights and remedies with respect to the Collateral (such order, the "**Abandonment Order**").

E. The Agent has offered, and the Grantors have agreed, that the Enforcement Actions, including the US Foreclosure and Acceptance, shall be in partial, and not full, satisfaction of the Obligations, in an aggregate amount equal to $5,000,000 (the "**Partial Satisfaction Amount**"), allocated $3,750,000 to the US Collateral (the "**US Partial Satisfaction Amount**") and $1,250,000 to the Canadian Collateral (the "**Canadian Partial Satisfaction Amount**"). Following the consummation of the Enforcement Actions, the Credit Agreement and the other Loan Documents will remain in full force and effect with all covenants thereunder remaining in place, all Obligations in excess of the Partial Satisfaction Amount will remain outstanding (subject only to reduction by any Sale Proceeds Adjustment as provided in Section 5), the guarantees of Hand MD and Synergy Canada will remain in full force and effect, and the Existing Events of Default will continue to exist.

F. Each of the Grantors are the only Persons entitled to notification of the Enforcement Actions under Section 9-621 of the UCC or under any of the PPSAs (each as defined below). No other Person holds a security interest in or other Lien on any of the Collateral that is perfected by the filing of a financing statement, by registration under any PPSA, or by compliance with any statute, regulation or treaty described in Section 9-311(a) of the UCC, and no Grantor or affiliate thereof has received an authenticated notification of, or any written notice of, a claim of an interest in any of the Collateral. Accordingly, no notice of this Agreement or of the Enforcement Actions is required to be given to any Person other than the Grantors as identified on Schedule C attached hereto, each of which is a party hereto.

G. Pursuant to (i) Sections 9-620 and 9-621 *et seq.* of the Uniform Commercial Code, as adopted in the State of New York, and solely to the extent applicable to the transactions contemplated hereby, as adopted in other states (the "**UCC**") and (ii) the US Security Agreement, the Agent (at the direction of the Lender, constituting all Lenders) shall, at the Effective Time, accept, in its capacity as the secured party under the US Security Agreement and not through any designee or nominee, on behalf of the Lender, all of each Grantor's right, title, and interest in and to the US Collateral (as defined in Section 3) in partial satisfaction of the Guaranteed Obligations (including the Obligations) of each Grantor under the Credit Agreement and the Secured Obligations of each Grantor under the Security Agreement (the "**US Foreclosure and Acceptance**"). Concurrently with the consummation of the US Foreclosure and Acceptance, each Grantor shall irrevocably transfer, convey and assign to

the Agent, on account of its Liens, all of each Grantor's right, title, and interest in and to the Canadian Collateral (as defined in Section 3), and the Agent agrees to accept the Canadian Collateral, in exchange for a reduction and partial satisfaction of the Guaranteed Obligations (including the Obligations) in the amount of the Canadian Partial Satisfaction Amount (the "**Canadian Collateral Acceptance**" and, together with the US Foreclosure and Acceptance, the "**Enforcement Actions**"). Subject to the terms and conditions of this Agreement at the Effective Time (as defined in Section 11) and immediately following (and conditioned upon) the Enforcement Actions, automatically and without any further action on the part of any Person, (i) such US Collateral shall be transferred, conveyed and assigned by the Agent to US NewCo, and (ii) such Canadian Collateral shall be transferred, conveyed and assigned by the Agent to Canadian NewCo. Subject to and in accordance with the terms herein, upon the consummation of the Enforcement Actions and following the transfers, conveyances and assignments described in the preceding sentence, (x) US NewCo shall own, all of each Grantor's right, title, and interest in and to the US Collateral and (y) Canadian NewCo shall own all of each Grantor's right, title, and interest in and to the Canadian Collateral.

H. The aggregate amount of the Obligations owing to the Agent and the Lender and secured by the Security Agreement is $19,229,199.97 as of the Petition Date for principal, interest and fees (excluding legal fees and costs). The US Foreclosure and Acceptance shall constitute an "acceptance" of collateral in partial satisfaction of the Obligations, Guaranteed Obligations and Secured Obligations under the Loan Documents, in accordance with and to the extent required by Sections 9-620(a)(1) and 9-620(c)(1) of the UCC.

## AGREEMENT

NOW THEREFORE, in consideration of the foregoing premises, the promises, the representations, warranties and covenants set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

### 1. RECITALS INCORPORATED.

The recitals and prefatory phrases and paragraphs set forth above are hereby incorporated in full and made a part of this Agreement.

### 2. ACKNOWLEDGEMENTS OF THE GRANTORS.

Each Grantor hereby acknowledges, confirms and agrees that:

(a) the aggregate amount of the Obligations owing to the Agent and the Lender by the Borrower and the other Grantors was not less than $19,229,199.97 as of the Petition Date, consisting of Term Loans in the outstanding principal amount of $18,109,171.67, accrued and unpaid interest, including interest at the Post-Default Rate, in the amount of $757,844.87, and the Applicable Premium in the amount of $362,183.43, and the foregoing indebtedness, together with all related costs, fees and expenses including, without limitation, expenses reimbursable to the Agent and the Lenders pursuant to the Loan Documents, are due and owing by the Borrower and the other Grantors to the Agent, on behalf of the Agent and the Lenders, without offset, defense, claim, counterclaim, or right to recoupment of any kind, nature or description whatsoever;

(b) the Liens created pursuant to the Security Agreement and the other Loan Documents are hereby ratified, confirmed and reaffirmed in all respects that they continue unimpaired and in full force and effect, except as expressly modified by this Agreement, and secure, and shall continue to secure, all of the Obligations; and

(c) the Existing Events of Default exist, all notices of such Events of Default required under the Credit Agreement and the other Loan Documents have been received (or are hereby waived), and the Obligations are payable in full without offset, defense claim, counterclaim or right to recoupment of any kind, nature or description whatsoever.

## 3. DESCRIPTION OF THE COLLATERAL

(a) As used herein, "**US Collateral**" means, collectively, each item of property listed on Schedule A attached hereto, "**Canadian Collateral**" means, collectively, each item of property listed on Schedule B attached hereto, "**Excluded Assets**" means, collectively, each item of property listed on Schedule D attached hereto, and "**Collateral**" means, collectively, the US Collateral and the Canadian Collateral, in each case excluding the Excluded Assets.

(b) The property and assets set forth on Schedule E (the "**Non-Agreed Assets**") shall not be subject to the Enforcement Actions at the Effective Time except as provided in this Section 3(b). Upon the written mutual agreement of the Agent and the Grantors, each Non-Agreed Asset shall either (i) be an Excluded Asset deemed set forth on Schedule D or (ii) be part of the US Collateral or the Canadian Collateral, as applicable, and deemed set forth on Schedule A or Schedule B, as applicable; provided that, if no agreement is reached as to such determination with respect to any Non-Agreed Asset within thirty (30) days after the Effective Time, then either the Agent or the Grantors may seek relief from the Bankruptcy Court to make such determination, and each Party hereby submits to the jurisdiction of the Bankruptcy Court for such purpose. Any Non-Agreed Asset that becomes part of the US Collateral or the Canadian Collateral pursuant to this Section 3(b) shall be deemed to have been accepted by the Agent and transferred to the applicable NewCo at the Effective Time, automatically and without any further action on the part of any Person and without any further credit against, or any further reduction of, the Obligations, and clauses (ii) and (iii) of Section 7(b) shall apply to such Non-Agreed Asset as if it were an After-Discovered Asset that is the subject of an After Discovered Asset Election Notice. Pending such determination, no Grantor shall sell, transfer, encumber or otherwise dispose of any Non-Agreed Asset, or apply, disburse, set off or otherwise use any Non-Agreed Asset consisting of cash or funds on deposit, in each case without the prior written consent of the Agent.

## 4. FORECLOSURE TRANSACTION; TRANSFER OF COLLATERAL.

At the Effective Time (as defined below):

(a) All legal, equitable and beneficial right, title and interest in and to all of the (i) US Collateral pledged (or purported to be pledged) by each Grantor shall, pursuant to Section 9-620 of the UCC, be accepted by the Agent, in its capacity as the secured party under the US Security Agreement, on behalf of the Lender, in partial satisfaction of the Obligations in an amount equal to the US Partial Satisfaction Amount and (ii) Canadian Collateral pledged (or purported to be pledged) by each Grantor shall be transferred, conveyed and assigned by the Grantors to, and accepted by, the Agent, on account of its Liens, in exchange for a credit against the Obligations in an amount equal to

the Canadian Partial Satisfaction Amount. Each Grantor shall execute or deliver to the Agent, US NewCo and Canadian NewCo such further instruments or documents, or take such further action, as is necessary or desirable to the Agent or as requested by the Agent to evidence the transfer, conveyance and assignment of the Collateral by the Agent and the transfers of the Collateral to US NewCo and Canadian NewCo contemplated hereby in accordance with its obligations under the Credit Agreement and the Security Agreement.

(b) At the Effective Time, immediately following the Enforcement Actions described in clause (a) above, automatically and without any further action on the part of the Agent, the Lender, any Grantor, US NewCo, Canadian NewCo or any other Person, (i) the Agent shall transfer, convey and assign to US NewCo, and US NewCo shall accept, all legal, equitable and beneficial right, title and interest in and to the US Collateral, and (ii) the Agent shall transfer, convey and assign to Canadian NewCo, and Canadian NewCo shall accept, all legal, equitable and beneficial right, title and interest in and to the Canadian Collateral, in each case to the fullest extent of the right, title and interest accepted by the Agent pursuant to clause (a) above. The acceptance and disposition described in clause (a) above and the transfer described in this clause (b) shall each occur at the Effective Time and shall be deemed to occur sequentially in the order set forth herein, and none of the Agent, the Lender, US NewCo or Canadian NewCo shall be deemed to have assumed any liability or obligation of any Grantor by reason thereof.

(c) The US Foreclosure and Acceptance and the Canadian Collateral Acceptance shall occur concurrently at the Effective Time and shall constitute a single, integrated transaction. Neither shall be effective unless the other is effective, and no Party shall be obligated to consummate either absent the concurrent consummation of the other. The aggregate credit to be applied against the Obligations in respect of the Enforcement Actions is the Partial Satisfaction Amount, which shall be applied once and only once, and in no event shall the Obligations be reduced by more than the Partial Satisfaction Amount by reason of the Enforcement Actions, other than by any Sale Proceeds Adjustment pursuant to Section 5.

## 5. PARTIAL SATISFACTION; DEFICIENCY.

(a) Effective on the Effective Time, the Agent (acting at the direction of the Lender, constituting all Lenders), hereby accepts, (i) in its capacity as the secured party under the Security Agreement and for the benefit of the Lender, the transfer of all of each Grantor's rights, title, and interest in and to the US Collateral in partial satisfaction of the Obligations in an amount equal to the US Partial Satisfaction Amount pursuant to Section 9-620 of the UCC and any other Requirements of Law and (ii) the transfer of all of each Grantor's rights, title, and interest in and to the Canadian Collateral in partial satisfaction of the Obligations in an amount equal to the Canadian Partial Satisfaction Amount.

(b) The Obligations shall be reduced by, and only by, the Partial Satisfaction Amount and any Sale Proceeds Adjustment. All Obligations in excess of the Partial Satisfaction Amount (the "**Deficiency Obligations**") shall remain outstanding and in full force and effect as the obligations of the Borrower and, pursuant to Article X of the Credit Agreement, of each of Hand MD and Synergy Canada, together with all interest, fees, costs and expenses accruing thereon under the Loan Documents. As of the Effective Time, and after giving effect to the Partial Satisfaction Amount, the Deficiency Obligations are $14,229,199.97 (the "**Deficiency Amount**") (excluding legal fees and

costs), and the Deficiency Amount shall not be reduced other than by payment or by any Sale Proceeds Adjustment. The Credit Agreement and the other Loan Documents shall remain in full force and effect in accordance with their terms, and none of the Agent and the Lender releases, but instead specifically reserves, all security interests, Liens and other encumbrances and all rights related thereto in and to all property of the Grantors other than the Collateral accepted or disposed of pursuant to the Enforcement Actions, including the Excluded Assets and the Non-Agreed Assets.

(c) If, during the period commencing at the Effective Time and ending on the date that is six (6) months after the Effective Time (the "**Adjustment Period**"), US NewCo, Canadian NewCo or the Agent consummates one or more sales, assignments or other dispositions of all or any portion of the Collateral which was transferred as of the Effective Time to any Person that is not an affiliate of the Agent, the Lender or either NewCo (each, a "**Qualifying Sale**"), and the aggregate Net Cash Proceeds of all Qualifying Sales consummated during the Adjustment Period exceed the Partial Satisfaction Amount, then the Deficiency Amount shall be reduced, dollar-for-dollar, by the amount of such excess (the **"Sale Proceeds Adjustment**"), effective upon receipt of such Net Cash Proceeds. No Qualifying Sale shall include (i) any collection, transfer or application of cash, funds on deposit or other cash equivalents constituting Collateral, or (ii) any sale or other disposition of any After-Discovered Asset. In no event shall any Sale Proceeds Adjustment reduce the Deficiency Amount below zero or result in any payment by the Agent, the Lender or either NewCo to any Grantor or any other Person.

(d) The Agent and the Lender reserve all rights to assert, file, amend and prosecute a claim on account of the Deficiency Obligations in the Chapter 11 Cases and in any case to which any of the Chapter 11 Cases is converted, and to vote, object and otherwise participate in the Chapter 11 Cases and any such converted case in respect of such claim, in each case without prejudice by reason of this Agreement or the Enforcement Actions. No Grantor shall object to, or support any objection to, the allowance of any such claim on the ground that the Partial Satisfaction Amount understates the value of the Collateral.

(e) For the avoidance of doubt, this Agreement and the Enforcement Actions relate solely to the Grantors' obligations under the Credit Agreement and Security Agreement and not to any other matters or claims (the "**Other Matters**"), including without limitation with respect to any officers, directors or equity owners of any of the Grantors, and all of such Other Matters shall not be affected hereby.

**6. CONSENT AND WAIVERS OF THE GRANTORS.**

(a) It is the express intent of the Parties that the US Foreclosure and Acceptance be consummated pursuant to, and constitute an "acceptance" of collateral in partial satisfaction of the Obligations in the amount of the Partial Satisfaction Amount in accordance with, Sections 9-620, 9-621 and 9-622 of the UCC. This Agreement constitutes the consent of each Grantor to the US Foreclosure and Acceptance on the terms set forth herein. The provisions of this Agreement constitute each Grantor's post-default agreements and waivers, to the maximum extent permitted under Article 9 of the UCC and any other applicable law, and each Grantor hereby voluntarily: (i) acknowledges that its execution of this Agreement constitutes a "record authenticated after default" for purposes of, and within the meaning of, Section 9-620(c)(1) of the UCC, and that the consent of each Grantor in a record authenticated after default is required for, and is hereby given with respect to, an acceptance of

collateral in partial satisfaction of the Obligations; (ii) waives any right to receive a separate proposal of foreclosure pursuant to Section 9-620 of the UCC; (iii) agrees, pursuant to Section 9-624 of the UCC, to waive its right to notification of disposition of the US Collateral under Sections 9-611 and 9-620 of the UCC and any Enforcement Actions Loan Document, and to waive its right to redeem the US Collateral under Section 9-623 of the UCC, the Loan Documents or otherwise; (iv) agrees that it is not entitled to receive an accounting of the disposition of the US Collateral or any other notice in respect of the US Foreclosure and Acceptance under Section 9-601 *et seq.* of the UCC, other applicable law or the Loan Documents; (v) waives any right to a public disposition of the US Collateral pursuant to Section 9-610(c) of the UCC; (vi) agrees that it is not entitled to any surplus in respect of the US Collateral under Section 9-608 or Section 9-615 of the UCC, the Loan Documents or otherwise; (vii) waives any right to object to this Agreement or to the transactions contemplated hereby; and (viii) agrees that the transactions leading up to, and the consummation of, the US Foreclosure and Acceptance are commercially reasonable to the extent required under Article 9 of the UCC.

(b) This Agreement constitutes the consent of each Grantor to the Canadian Collateral Acceptance on the terms set forth herein. Each Grantor hereby voluntarily acknowledges and agrees that the Canadian Collateral Acceptance is being completed contractually without reliance on any provision of the PPSAs, including, without limitation, Section 65(2) of the Ontario PPSA and Section 62(1) of each of the Alberta PPSA and the NS PPSA (as such terms are defined below).

**7. AFTER-DISCOVERED COLLATERAL.**

(a) The US Collateral and the Canadian Collateral are intended to include all property of the types described on Schedule A and Schedule B, respectively, in which any Grantor had an interest immediately prior to the Effective Time, whether or not specifically identified therein and whether or not known to any Party as of the Effective Time, in each case other than the Excluded Assets. If at any time after the Effective Time any asset is identified or discovered that (a) constituted Collateral immediately prior to the Effective Time but was not disclosed to the Agent prior to the hearing of the Abandonment Motion and (b) is not an Excluded Asset (each, an "**After-Discovered Asset**"), then the applicable Grantor shall promptly, and in any event within five (5) Business Days after becoming aware of the same, deliver to the Agent written notice describing such After-Discovered Asset and its location, if any, in reasonable detail together with any relevant books, records and documents with respect to same. The Agent shall, within ten (10) Business Days after the receipt of such notice advise the applicable Grantor if the Agent will elect to either (x) deem such After Discovered Asset to have been included as part of the US Collateral or Canadian Collateral and subject to the applicable Enforcement Actions on the Effective Time, as further provided in this Section 7, or (y) deem such After Discovered Asset as an Excluded Asset as of the Effective Time (each such election notice, an "**After Discovered Asset Election Notice**"). Unless and until the Agent delivers an After Discovered Asset Election Notice electing that such After Discovered Asset has been deemed to be an Excluded Asset, no Grantor shall sell, transfer, encumber or otherwise dispose of any After-Discovered Asset without the prior written consent of the Agent, and any After-Discovered Asset consisting of cash, funds on deposit, deposit account or securities account balances, or other identifiable cash proceeds of Collateral, wherever located and whether or not commingled with other funds ("**After-Discovered Cash**") shall be held in a separate account, shall not be commingled with any other funds, and shall not be applied, disbursed, set off or otherwise used for any purpose.

(b) No After-Discovered Asset shall be accepted by the Agent or transferred to the

applicable NewCo unless and until the Agent delivers an After Discovered Asset Election Notice providing for same. None of the Agent, the Lender, US NewCo and Canadian NewCo has any obligation to accept, acquire or assume any After-Discovered Asset or any Liability relating to any After-Discovered Asset. Upon delivery of an After Discovered Asset Election Notice by the Agent to the applicable Grantor with respect to any After-Discovered Asset: (i) such After-Discovered Asset shall be deemed to have been accepted by the Agent and transferred to the applicable NewCo, at the Effective Time, automatically and without any further action on the part of any Person and without any further credit against, or any further reduction of, the Obligations; (ii) in the case of After-Discovered Cash, the applicable Grantor shall, within one (1) Business Day after delivery of the Election Notice, transfer such funds by wire transfer of immediately available funds to an account designated by the Agent, in full and without set-off, counterclaim, deduction or withholding of any kind, and shall deliver to the Agent statements and transaction records for each account in which such funds were held; it being understood and agreed that the applicable Grantor shall hold such After-Discovered Asset, and any proceeds thereof, in trust for the benefit of the applicable NewCo, pending such transfer; and (iii) the applicable Grantor shall promptly upon request execute and deliver such bills of sale, assignments, account transfer and closing instructions, intellectual property assignments and other instruments and documents, and take such further action, as the Agent may reasonably request to vest title to such After-Discovered Asset in the applicable NewCo. For the avoidance of doubt, in no event shall the acceptance of any After-Discovered Asset by the Agent, or the transfer thereof to either NewCo, cause a reduction in the Deficiency Obligations.

(c) Each Grantor agrees that the Agent may identify cash proceeds of Collateral by any method of tracing permitted under Section 9-315(b)(2) of the UCC, under the *Personal Property Security Act*, R.S.O. 1990, c.P.10 (Ontario) (the "**Ontario PPSA**"), *Personal Property Security Act*, R.S.A. 2000, c P-7 (Alberta) (the "**Alberta PPSA**") and *Personal Property Security Act*, S.N.S. 1995-96, c.13 (Nova Scotia) (the "**NS PPSA**" and together with the Ontario PPSA and the Alberta PPSA, collectively, the "**PPSAs**") or under other applicable law, including the lowest intermediate balance rule and other equitable principles, and no Grantor shall contest, or support any contest of, the application of any such method or assert that any funds are not identifiable proceeds of Collateral by reason of having been commingled with other funds. Each Grantor shall, promptly upon request and at its own expense, deliver to the Agent all bank and account statements, transaction and wire records, payment processor and merchant account records, general ledgers, books of account and other records, and shall execute such authorizations to third parties, as the Agent reasonably requests in order to identify, trace and recover After-Discovered Cash.

(d) If the Agent delivers an After Discovered Asset Election Notice with respect to any After-Discovered Asset electing that such asset be deemed an Excluded Asset, such After-Discovered Asset shall remain the property of the applicable Grantor.

(e) The obligations of each Grantor under this Section 7 survive the Effective Time.

## 8. EXCLUDED ASSETS; LIMITED LICENSE; COOPERATION AND FURTHER ASSURANCES.

(a) The Excluded Assets are excluded from the Enforcement Actions, shall not be accepted by the Agent or acquired by either NewCo, and shall remain the property of the applicable Grantor. Nothing in this Agreement constitutes a release, termination or subordination of any Lien of

the Agent on or in any Excluded Asset or Non-Agreed Asset, each of which is expressly reserved.

(b) To the extent the Mexican IP becomes part of the US Collateral and the Inventory located in Mexico becomes an Excluded Asset, then, US NewCo (on behalf of itself and its successors or assigns with respect to the Mexican IP (collectively, the "**IP Holder**")) hereby grants to each Grantor a limited non-exclusive, royalty free, non-transferable and non-sublicensable license to use the Trademarks registered or applied for in Mexico (the "**Mexican IP**") with respect to its Inventory located in Mexico described in clause (a) of Schedule D existing as of the Effective Time that is branded with the Mexican IP (the "**Branded Inventory**") for the period beginning on the Effective Time and ending automatically upon the earlier of (i) the sale or other disposition of substantially all of the Branded Inventory and (ii) the date that is six (6) months after the Effective Time, solely to the extent necessary for the purpose of selling or otherwise disposing of the Branded Inventory. The Grantors shall not use the Mexican IP pursuant to such license in any manner inconsistent with their use of the Mexican IP prior to the Effective Time. The limited license granted in this paragraph is (x) granted "as is," without any representation or warranty, and none of the Agent, the Lender or either NewCo shall have any liability or obligation with respect to the Branded Inventory or any sale or other disposition thereof and (y) not permitted to be used for the manufacture, relabeling, repackaging, advertising or sale of any other or additional product other than the Branded Inventory existing as of the Effective Time.

(c) The Chief Restructuring Officer will reasonably cooperate and cause the Grantors to reasonably cooperate with the Agent and NewCos to the extent required to effect the transfer of the Collateral as provided herein, including attending meetings and teleconferences, transferring books, records and data and the necessary access thereto, responding to diligence requests, executing and delivering to the Agent and the NewCos such further instruments and documents, and taking such further actions, as are necessary or desirable, or as the Agent may reasonably request, to evidence and effectuate the Enforcement Actions, including assignments of United States, Canadian and other foreign trademark registrations and applications suitable for recordation with the United States Patent and Trademark Office, the Canadian Intellectual Property Office and each applicable foreign registry, financing change statements under the PPSAs, domain name transfer authorizations, and instructions to each depository, securities intermediary and payment processor holding funds constituting Collateral directing the transfer of such funds to an account designated by US NewCo or Canadian NewCo, as applicable. Each Grantor hereby irrevocably appoints the Agent as its attorney-in-fact, with full power of substitution, to execute and file any such document in the name of and on behalf of such Grantor if such Grantor fails to do so within five (5) Business Days of request. The obligations of each Grantor under this Section 8 survive the Effective Time.

## 9. SEVERABILITY.

Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under Requirements of Law, but in case any one or more of the provisions contained in this Agreement is, for any reason, held to be invalid, illegal, or unenforceable in any respect in any jurisdiction, such invalidity, illegality or unenforceability will not affect any other provision of this Agreement or the validity, legality or enforceability thereof in any other jurisdiction, and this Agreement will be construed for purposes of such jurisdiction as if such invalid, illegal, or unenforceable provision or provisions had never been contained herein unless the deletion of such provision or provisions would result in such a material change as to cause completion of the

transactions contemplated hereby to be unreasonable.

**10. POSSESSION OR CONTROL OF COLLATERAL; NO ASSUMPTION OF LIABILITIES; DISCLAIMER.**

Notwithstanding anything to the contrary in this Agreement, in consummating the Enforcement Actions contemplated herein, none of the Agent, the Lender, US NewCo, Canadian NewCo nor their respective designees shall be deemed to have assumed any of the liabilities of the Grantors, and none of them has assumed any liability with respect to any of the Collateral.

**11. EFFECTIVE TIME; CONDITIONS PRECEDENT.**

The Enforcement Actions contemplated by this Agreement shall become effective, and the US Foreclosure and Acceptance and the Canadian Collateral Acceptance shall each occur and be deemed to have occurred concurrently, immediately upon the abandonment of the Collateral pursuant to the Abandonment Order, which shall be deemed to occur at the time of entry of the Abandonment Order on the docket of the Chapter 11 Cases or, if the Abandonment Order does not provide that the fourteen (14) day stay under Bankruptcy Rule 4001(a) is waived, upon the expiration of such stay (such time, the "**Effective Time**"), so long as each of the following conditions has been satisfied, or waived in writing by the Agent, at or prior to such time: (i) the Agent shall have received a copy of this Agreement duly executed and delivered by each Grantor, the Agent, the Lender and each NewCo; (ii) the Abandonment Order shall be in full force and effect and shall not have been stayed, vacated, reversed or modified in any manner adverse to the Agent, the Lender or either NewCo, and the Collateral shall have been abandoned pursuant to Section 554(a) of the Bankruptcy Code and shall have revested in the Grantors; (iii) no law shall be in effect, and no order of any court shall have been issued, that stays, enjoins or prohibits any of the US Foreclosure and Acceptance or the Canadian Collateral Acceptance; and (iv) each Grantor shall have executed and delivered the instruments of transfer, conveyance, assignment and instructions contemplated by Section 8. Thereafter, the Agent and US NewCo shall be entitled to hold or dispose of the US Collateral free of any right or interest of any Grantor and of any Person whose interest is subordinate to that of the Agent. Each Grantor's agreement to the terms of the US Foreclosure and Acceptance is given in a record authenticated after default for purposes of Section 9-620(c)(1) of the UCC. For the avoidance of doubt, and as provided by Section 9-620(a)(2) of the UCC, each Grantor is the only Person entitled to notification under Section 9-621 of the UCC, and each Grantor has consented to the Enforcement Actions, and waived any right to object thereto, by its execution of this Agreement.

**12. REPRESENTATIONS AND WARRANTIES OF THE GRANTORS.**

Each Grantor represents, warrants and covenants, for and solely with respect to itself on a several and not joint basis, that: (a) it is a corporation duly organized or incorporated and validly existing under the laws of its jurisdiction of organization or incorporation; (b) neither the execution and delivery of this Agreement nor the consummation of the transactions contemplated hereby will, to the best of its knowledge, violate any law or other restriction of any Governmental Authority to which it is subject, including without limitation, the UCC and the PPSAs, or violate any provision of its charter, bylaws, articles of incorporation or other similar governance document; (c) it has full entity power and authority to execute and deliver this Agreement and to perform its obligations hereunder, subject only to entry of the Abandonment Order, and this Agreement has been duly executed and

delivered by it and constitutes its legal, valid and binding obligation, enforceable against it in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting creditors' rights generally or by equitable principles relating to enforceability; (d) no authorization, approval or other action by, and no notice to or filing with, any Governmental Authority or other Person is required in connection with its execution, delivery and performance of this Agreement, other than entry of the Abandonment Order; (e) it owns of record and beneficially all right, title and interest in and to the Collateral described on Schedule A and Schedule B as being owned by it, free and clear of all Liens other than the Liens of the Agent and Liens that are subordinate to the Liens of the Agent; (f) as of ten (10) days before its execution of this Agreement, no Person other than the Agent, on behalf of the Lender, held a security interest in or other Lien on any of the Collateral that was perfected by compliance with a statute, regulation or treaty described in Section 9-311(a) of the UCC, by the filing of a financing statement that identified any of the Collateral, was indexed under such Grantor's name and was filed in the office or offices in which to file a financing statement against such Grantor covering any of the Collateral, in each case as contemplated by Section 9-621(a)(2) of the UCC, or by registration under any PPSA; (g) it has not received an authenticated notification of, or any written notice of, a claim of an interest in any of the Collateral at any time on or prior to its execution and delivery of this Agreement; (h) no Grantor has granted, and there is not registered or recorded in any jurisdiction outside of the United States and Canada, any security interest, charge, hypothec or other Lien in or on any Intellectual Property of any Grantor, and no such Intellectual Property has been sold, assigned, licensed on an exclusive basis or otherwise transferred to any Person; and (i) it is not an individual, none of the transactions contemplated by the Loan Documents is a "consumer transaction" and none of the Collateral constitutes "consumer goods," in each case within the meaning of Section 9-102 of the UCC, such that Section 9-620(g) of the UCC does not apply to the US Foreclosure and Acceptance.

**13. AVOIDANCE.**

Notwithstanding any other provision of this Agreement, in the event that any of the transactions contemplated hereby, including the US Foreclosure and Acceptance, the transfer of the US Collateral to US NewCo, the Canadian Collateral Acceptance or the transfer of the Canadian Collateral to Canadian NewCo, or any part thereof, is subsequently rescinded, invalidated, voided, declared to be a fraudulent or preferential transfer or set aside, or any property transferred hereby is required to be returned to a trustee, receiver or any other Person, whether under the Bankruptcy Code, any other Debtor Relief Law, state, provincial or federal law, common law or equitable cause, or otherwise, then the Obligations in the amount of the Partial Satisfaction Amount shall be automatically revived and reinstated and shall continue in full force and effect until the Agent has received payment in full thereof, and each Grantor shall perform all acts and execute and deliver all further instruments necessary or required to ensure that the Agent, for the benefit of the Lender, holds a first priority perfected security interest in all such Collateral to secure the Obligations.

**14. NO WAIVER.**

No failure or delay by the Agent or its designees in exercising any right, power, or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power, or privilege. The rights and remedies herein and therein provided shall be cumulative and not exclusive of any rights or remedies provided by applicable law. The Agent reserves its rights in respect of the Existing Events of Default

together with any other Events of Default under the Credit Agreement and the other Loan Documents which is not described herein and nothing contained in this Agreement shall constitute a waiver of any such Events of Default or the Agent's rights thereunder.

**15. AMENDMENTS.**

Any provision herein may be amended, waived or otherwise modified if, but only if, such amendment, waiver or modification is in writing and signed by the Agent (acting at the direction of the Lender, constituting all Lenders), each NewCo and each Grantor.

**16. CAPTIONS; INTERPRETATION.**

The captions herein are for convenience of reference only, do not constitute part of this Agreement and shall not be deemed to limit or otherwise affect any of the provisions hereof. The terms "include," "includes" and "including" as used in this Agreement are not intended to be limiting and shall be deemed to be followed by the words "without limitation" (whether or not they are in fact followed by such words) or words of like import. Whenever the context and construction so require, all words herein in the singular number herein shall be deemed to have been used in the plural, and vice versa.

**17. COUNTERPARTS.**

This Agreement (and any amendments to this Agreement) may be executed in multiple counterparts, each of which will constitute an original and all of which, when taken together, will constitute one and the same agreement. Transmission of an executed signature page by email or other electronic means is as effective as a manually executed counterpart of this Agreement (and any amendments to this Agreement). Any counterpart, to the extent signed and delivered by means of a .PDF, DocuSign, or other electronic transmission, will be treated in all manner and respects as an original agreement and will be considered to have the same binding legal effects as if it were the original signed version of such Agreement delivered in person. Minor variations in the form of the signature page to this Agreement, including footers from earlier versions of any such other document, will be disregarded in determining the effectiveness of such signature.

**18. GOVERNING LAW; WAIVER OF JURY TRIAL.**

THIS PROPOSAL AND ALL MATTERS ARISING HEREUNDER OR RELATED HERETO SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW YORK AND OTHERWISE APPLICABLE TO SECURITY AGREEMENT MADE AND TO BE PERFORMED ENTIRELY WITHIN SUCH JURISDICTIONS, WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES. EACH PARTY HERETO HEREBY CONSENTS TO THE EXCLUSIVE JURISDICTION OF THE FEDERAL OR STATE COURTS IN THE STATE OF NEW YORK, AND IRREVOCABLY AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS PROPOSAL SHALL BE LITIGATED IN SUCH COURTS. EACH PARTY HERETO EXPRESSLY SUBMITS AND CONSENTS TO THE JURISDICTION OF THE AFORESAID COURTS AND WAIVES ANY DEFENSE OF FORUM NON CONVENIENS. NOTWITHSTANDING THE FOREGOING, TO THE EXTENT THE LAW OF ANOTHER STATE IS AS A MATTER OF MANDATORY APPLICATION UNDER APPLICABLE STATUTORY CHOICE OF LAW RULES DETERMINED TO BE THE GOVERNING LAW, THIS PROPOSAL

AND ALL MATTERS ARISING HEREUNDER OR RELATED HERETO SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAW OF SUCH STATE INCLUDING THE UNIFORM COMMERCIAL CODE OF SUCH STATE, AS ADOPTED. NOTWITHSTANDING THE FOREGOING, THE ACCEPTANCE OF THE CANADIAN COLLATERAL BY THE AGENT, THE TRANSFER OF THE CANADIAN COLLATERAL TO CANADIAN NEWCO AND ALL MATTERS ARISING UNDER OR RELATING TO THE PPSAS SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE APPLICABLE PROVINCE OF CANADA AND THE FEDERAL LAWS OF CANADA APPLICABLE THEREIN, AND EACH PARTY HERETO SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF THE COURTS OF SUCH PROVINCE IN RESPECT THEREOF.

EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

[*Remainder of page intentionally left blank;*
*signatures begin on following page*]

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized officers as of the date first above written.

**ADMINISTRATIVE AGENT AND COLLATERAL AGENT:**

**ACP AGENCY, LLC**

By: ______________________________
Name: Peter Eschmann
Title: Authorized Person

**LENDER:**

**ACME CREDIT PARTNERS FUND I, LP, constituting all Lenders**

By: Acme Credit Investors LLC, its general partner

By: Acme Credit Partners LLC, its managing member

By: ______________________________
Name: Peter Eschmann
Title: Managing Partner

**US NEWCO:**

**FORCE FACTOR HOLDINGS LLC**

By: ______________________________
Name: Peter Eschmann
Title: Authorized Person

**CANADIAN NEWCO:**

**FORCE FACTOR HOLDINGS CANADA INC.**

By: ______________________________
Name: Peter Eschmann
Title: Director

**GRANTORS:**

**SYNERGY CHC CORP.**

By: Signed by: ______________________________
3561D70660234AD...
Name: Lauren P. Berret
Title: Chief Restructuring Officer

**HAND MD CORP.**

By: Signed by: ______________________________
3561D70660234AD...
Name: Lauren P. Berret
Title: Chief Restructuring Officer

**SYNERGY CHC INC.**

By: Signed by: ______________________________
3561D70660234AD...
Name: Lauren P. Berret
Title: Chief Restructuring Officer

cc: Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, MA 02111
Attention: James W. Bartling, Esq.
Email: jim.bartling@nelsonmullins.com

## Schedule A

## US Collateral

For purposes of this Agreement, the "**US Collateral**" means the following personal property and Fixtures, wherever located, in which each Grantor holds an interest, pledged by each Grantor pursuant to the US Security Agreement:

(a) all Accounts;

(b) all Chattel Paper (whether tangible or electronic);

(c) all Commercial Tort Claims;

(d) all Deposit Accounts, all cash, and all other property from time to time deposited therein or otherwise credited thereto and the monies and property in the possession or under the control of the Collateral Agent, the Administrative Agent or any Lender or any affiliate, representative, agent or participant of the Collateral Agent, the Administrative Agent or any Lender;

(e) all Documents;

(f) all General Intangibles (including, without limitation, all Payment Intangibles, Intellectual Property and Licenses);

(g) all Goods, including, without limitation, all Equipment, Fixtures and Inventory;

(h) all Instruments (including, without limitation, Promissory Notes);

(i) all Investment Property (including any Securities Account or Commodity Account, but excluding any Pledged Shares in any Subsidiaries or Affiliates of any Grantor);

(j) all Letter-of-Credit Rights;

(k) all Pledged Debt;

(l) all Supporting Obligations;

(m) all Additional Collateral;

(n) all other tangible and intangible personal property and Fixtures of such Grantor (whether or not subject to the UCC), including, without limitation, all bank and other accounts and all cash and all investments therein, all proceeds, products, offspring, accessions, rents, profits, income, benefits, substitutions and replacements of and to any of the property of such Grantor described in the preceding clauses (including, without limitation, any proceeds of insurance thereon and all causes of action, claims and warranties now or hereafter held by such Grantor in respect of any of the items listed above), and all books, correspondence, files and other Records, including, without limitation, all tapes, disks, cards, Software, data and computer programs in the possession or under the control of such Grantor or any other Person from time to time acting for such Grantor that at any time evidence or contain information relating to any of the property described in the preceding clauses of this Schedule A hereof or are otherwise necessary or helpful in the collection or realization thereof; and

(o) all Proceeds, including all Cash Proceeds and Noncash Proceeds, and products of any and all of the foregoing Collateral.

Notwithstanding the foregoing, the "US Collateral" does not include (i) any Pledged Shares, (ii) any other property expressly excluded from the definition of "Collateral" in Section 2 of the Security Agreement, and (iii) the Excluded Assets.

Capitalized terms not defined herein have the meaning ascribed to such terms in the Security Agreement and/or the Credit Agreement, as applicable.

**Schedule B**

**Canadian Collateral**

For purposes of this Agreement, the "**Canadian Collateral**" means all of each Grantor's right, title, and interest in and to the following property, pledged by each Grantor pursuant to the Canadian Security Agreement :

(a) all Accounts;

(b) all Goods, including Equipment, Inventory and Fixtures;

(c) all Chattel Paper;

(d) all deposit accounts and Securities Accounts;

(e) all Intangibles, Intellectual Property, and Intellectual Property Licenses, including without limitation, the Trademarks bearing Registration Nos. TMA1070387, TMA1023459, TMA1028125, TMA1101412, TMA1028071, TMA1101411, TMA1047043, TMA1046990, TMA1028111, TMA1046985, TMA1046986, TMA1046991, TMA926000 and TMA906488;

(f) all Investment Property (excluding any Pledged Interests in any Subsidiaries or Affiliates of any Grantor);

(g) all Negotiable Collateral;

(h) all supporting obligations;

(i) all books and records;

(j) all money or other assets of the Debtor that now or hereafter come into the possession, custody, or control of the Secured Party (or its designee); and

(k) all Proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance.

Notwithstanding the foregoing, the "Canadian Collateral" does not include the Excluded Assets. Unless otherwise defined in this Agreement, capitalized terms used in this Schedule B shall have the meanings ascribed thereto in the Canadian Security Agreement.

**Schedule C**

**<u>Persons Entitled to Notification</u>**

Synergy CHC Corp., 3 Kimball Drive, Standish, Maine 04084

Hand MD Corp., 3 Kimball Drive, Standish, Maine 04084

Synergy CHC Inc., 639 5th Avenue S.W., Suite 1250, Calgary, Alberta T2P 0M9


#1938744v3<IMANAGE> - Synergy - Acceptance of Collateral in Partial Satisfaction Agreement (US and Canada)

## Schedule D

## Excluded Assets

Claims and causes of action arising under chapter 5 of title 11 of the United States Code

## Schedule E

## Non-Agreed Assets

The "**Non-Agreed Assets**" means, collectively:

(a) all Inventory located in Mexico;

(b) all Intellectual Property of each Grantor registered, applied for or otherwise existing under the laws of any jurisdiction other than the United States and Canada; and

(c) the funds on deposit in or credited to the following accounts of the Borrower, solely in the amounts set forth below:

| Account Name | Account Type | Account Number – Last 4 Digits | Balance |
|---|---|---|---|
| TD Bank – The Synergy Effect | Checking | 4396 | $45.91 |
| TD Bank – Think Fuel | Checking | 9345 | $33.24 |
| TD Bank – Sneaky Vaunt Corp | Checking | 6015 | $0.00 |
| TD Bank – Neuragen Corp | Checking | 6316 | $61.85 |
| TD Bank – Perfekt Beauty | Checking | 6061 | $53.13 |
| TD Bank – Mane Game | Checking | 9189 | $49.00 |
| TD Bank – Hand MD | Checking | 6007 | $55.35 |
| TD Bank | Checking | 4416 | $2,746.68 |
| TD Bank – Focus Factor | Checking | 5992 | $65,890.50 |
| TD Bank – COCO White | Checking | 9270 | $78.91 |
| PayPal – TSE | PayPal | | $53.24 |
| PayPal – TQP | PayPal | TGZ2 | $35.56 |
| PayPal – SV | PayPal | VVDE | $6.73 |
| PayPal – HMD | PayPal | W7Q6 | $57.98 |
| PayPal – FTT | PayPal | YL8U | $4.05 |
| PayPal – FF | PayPal | 8ZZE | $534.70 |
| Royal Bank of Canada – Synergy CHC Inc. | Current | 2911 | CDN$250.00 |
| Royal Bank of Canada – Synergy CHC Inc. | Current | 4181 | CDN$(2,345.81) |
| Monex – Synergy | | 0579 | Mex$11,390.00 |

| | | | |
|---|---|---|---|
| CHC Mexico SA de CV | | | US$222.40 |

The designation of any asset as a Non-Agreed Asset does not constitute a release, termination or subordination of any Lien of the Agent thereon, each of which is expressly reserved.