Maurice B. VerStandig, Esq.
Bar No. MD18071
Christianna A. Cathcart, Esq.
Bar No. ND0008
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 991-1101
mac@mbvesq.com
christianna@dcbankruptcy.com
*Counsel for the Debtors*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 26-465-ELG |
| | ) | (Chapter 11) |
| Synergy CHC Corp.[1] | ) | |
| | ) | |
| Debtors. | ) | Jointly Administered |

**SUPPLEMENT TO MOTION TO APPROVE COMPROMISE WITH JACK ROSS**

Come now Synergy Reorg, LLC.; Synergy CHC Corp.; Synergy CHC Inc.; Hand MD Corp.; Synergy CHC Mexico; and NomadChoice Pty, Ltd. (collectively, the "Debtors"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 9019, and supplement their previously-filed motion to approve a compromise of any claims held against Jack Ross ("Mr. Ross"), *see* ECF No. 11 (the "9019 Motion"), and state as follows:

## I. Introduction

Three alterations are being made to the agreement referenced in the 9019 Motion (the "Agreement"): (i) the Debtors are now receiving $200,000.00, in lieu of $100,000.00; (ii) Mr. Ross

[1] The Debtors in these cases are Synergy Reorg, LLC, Case No. 26-464-ELG.; Synergy CHC Corp., Case No. 26-465-ELG; Synergy CHC Inc., Case No. 26-466-ELG; Hand MD Corp., Case No. 26-467-ELG; NomadChoice Pty, Ltd., Case No. 26-468-ELG; and Synergy CHC Mexico, Case No. 26-469-ELG.

is releasing any claims he may hold against any or all of the Debtors' estates (as previously indicated on the record by his counsel); and (iii) as consideration for the increased monetary payment, Mr. Ross is being assigned all of the Debtors' intellectual property rights—as set forth in Exhibit C to Schedule A/B in the Synergy case, *see* ECF No. 1 at pp. 36-40, as well as scheduled in any of the other Debtors' cases—free and clear of any liens or encumbrances, *see* 11 U.S.C. § 363(f), *except* Mr. Ross is not being assigned those rights registered in the United States of America and Canada (with it being recognized the intellectual property rights in the United States and Canada have already been abandoned in favor of a creditor who held a validly-perfected pre-petition lien thereupon, *see* ECF No. 69).

The benefit of receiving more money is somewhat self-explanatory and need not be harped upon herein. Similarly, the upside to having Mr. Ross mutually release the estates is facially advantageous to the Debtors and has already been addressed on the record. There is merit, however, in further exploring the assignment of intellectual property rights to Mr. Ross, which chiefly invites the filing of this brief, as well as in revisiting the global *bona fides* of this settlement.

## II. The Rights Being Bartered

As noted above, the Debtors' intellectual property assets are exhaustively delineated on the schedules filed alongside the Debtors' petitions for relief. While the status of one such right has since changed slightly (the Islamic Republic of Iran has made clear it will not honor the Debtors' intellectual property), the others remain as described. *See* ECF No. 1 at pp. 36-40.

These intellectual property rights can be generally placed into two categories: (i) those arising under the laws of the United States and Canada; and (ii) those arising under the laws of other sovereign countries.

The Debtors do not dispute that the intellectual property assets falling into the former category were subject to the properly perfected liens of a secured creditor. Not only were security agreements drafted and filed in both the United States and Canada, pertaining to those rights, but the Debtors even paid for the legal work underlying that drafting and filing. The security agreements are properly perfected and, as observed *supra*, the correlative rights have accordingly been abandoned in favor of the correlative secured creditor.

The intellectual property rights arising under non-United States and non-Canadian laws, however, were never properly subjected to a perfected lien. The only effort to fix a lien upon these assets appears to have been a UCC filing in Nevada. Yet there is little reason to believe any sovereign, foreign country would regard a lien in Nevada as being valid and binding upon an intellectual property mark registered in (and issued by) that country. Indeed, if filing in Nevada were all that was needed, the secured creditor's insistence upon perfecting in Canada (a foreign, sovereign nation)—and charging the Debtor for so doing—would have been a bad faith exercise in redundant waste aimed solely at enriching attorneys.

Additionally, while the 9019 Motion is assuredly *not* a section 544 adversary proceeding, it is also relatively clear that a hypothetical judgment creditor, in any country other than the United States and Canada, would have been able to obtain a judicial lien (under the correlative country's laws) on the intellectual property marks of the Debtors issued by that country. *See* 11 U.S.C. § 544(a). So even if a blanket UCC filing in Nevada were to be regarded as a security agreement potentially capable of encompassing multinational rights, such a filing assuredly cannot be regarded as properly perfecting an enduring lien upon those rights.

For want of ambiguity: there does not appear to exist any case law (seemingly whatsoever) on this issue. While there is a generalized theory that a United States court will follow domestic

law in looking to a domestic UCC filing to track intangible assets, there does not appear to be precedent touching upon such in the prism of trademarks registered in foreign countries (something that is notable insofar as foreign trademarks are intellectually property rights issued—or at least expressly recognized—by foreign governments, subject to recission by foreign governments, and subject to other maintenance conditions and transfer restrictions imposed by foreign governments, all without any indicia that foreign governments wish to render these marks alienable in accord with the whims of a legislative scheme promulgated in Carson City, Nevada). Nor does there appear to exist any case law discussing whether or not a hypothetical creditor under section 544 is presumed to be an American person (though the Debtors would note that the Bankruptcy Code is not shy to reference "State or local law" when so intended, *see* 11 U.S.C. § 346(b); 11 U.S.C. § 522(b)(3)(A); 11 U.S.C. § 1145(a); 11 U.S.C. § 1308(c), while section 544 is conspicuously devoid of any such limiting reference).

## III. Argument: The Agreement Still Merits Approval

As observed in the 9019 Motion and expounded upon during prior hearings, the Agreement merits approval for a litany of reasons. Those will not be exhaustively rehashed herein, other than to generally observe the following:

1. The Debtors need money. Having been denied leave to use cash collateral, the estates do not presently have access to unrestricted funds with which to pay even day-to-day expenses (online bookkeeping license renewal, insurance premiums, etc.).

2. The claims against Mr. Ross still appear to be of *de minimis* value, with projected legal fees correlative to pursuing such claims being likely greater than any probable recovery therein. The Debtors' chief restructuring officer has studied the information made available to her pre-petition and even more information made available to her since; this core analysis remains

largely unchanged. While the Debtors do not believe filing suit would run afoul of the doctrine of barratry, they are also loath to invite this Honorable Court to make such a determination.

3. Synergy is bound—per its own bylaws—to indemnify Mr. Ross for legal fees in connection with any suit that may be brought. So not only would suing Mr. Ross being inordinately expensive by virtue of engaging litigation counsel (or using existing reorganization counsel to litigate), but the payment of Mr. Ross' fees to defend the suit would make this all the more financially problematic.

4. The doctrine of champerty appears to bar any sale of the rights to sue Mr. Ross, *see In re Columbia Hosp. for Women Med. Ctr., Inc.*, 461 B.R. 648, 678 (Bankr. D.D.C. 2011); *Merlaud v. Nat'l Metro. Bank of Washington, D.C.*, 84 F.2d 238, 240 (D.C. Cir. 1936); *Papageorge v. Banks*, 81 A.3d 311, 313 n. 1 (D.C. 2013), and even if, *arguendo*, such a prohibition did not exist, the foregoing indemnity obligation would remain an obstacle to engaging a sale.

## IV. Conclusion

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) approve the Agreement; and (ii) afford such other and further relief as may be just and proper.

*[Signatures on Following Page]*

Respectfully submitted,

Dated: November 6, 2026 By: /s/ Maurice B. VerStandig

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 991-1101
mac@mbvesq.com

Christianna A. Cathcart, Esq.
Bar No. ND0008
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 655-2066
christianna@dcbankruptcy.com
*Counsel for the Debtors*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of November, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig