Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 991-1101
mac@mbvesq.com
*Counsel for the Debtors*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 26-465-ELG |
| | ) | (Chapter 11) |
| Synergy CHC Corp.[1] | ) | |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ______________________________ | ) | |
| | ) | |
| Synergy CHC Corp., | ) | |
| | ) | Adv. Case No. ____________ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Cedar Advance LLC | ) | |
| | ) | |
| Defendant. | ) | |
| ______________________________ | ) | |

**<u>COMPLAINT</u>**

Comes now Synergy CHC Corp. ("Synergy" or the "Debtor"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7003 and Federal Rule of Civil

[1] The Debtors in these cases are Synergy Reorg, LLC, Case No. 26-464-ELG.; Synergy CHC Corp., Case No. 26-465-ELG; Synergy CHC Inc., Case No. 26-466-ELG; Hand MD Corp., Case No. 26-467-ELG; NomadChoice Pty, Ltd., Case No. 26-468-ELG; and Synergy CHC Mexico, Case No. 26-469-ELG.

Procedure 3, and as and for its complaint against Cedar Advance LLC ("Cedar" or the "Defendant") states as follows:

**Introduction**

1. In the two years immediately preceding the filing of a petition for bankruptcy relief, the Debtor paid at least $4,983,070.21 to the Defendant, pursuant to a series of merchant cash advance ("MCA") transactions.

2. The MCA transactions are each titularly sales of future receivables, in exchange for upfront cash.

3. If the MCA transactions are, in fact, actual sales of future receivables, each such transaction (and every payment made thereunder) is a constructively fraudulent conveyance, being a sale made at the time the Debtor was insolvent, with Synergy receiving well less than reasonably equivalent value for the receivables putatively sold.

4. If the MCA transactions are not, in fact, actual sales of future receivables, each such transaction is a poorly-disguised usurious loan that, pursuant to Florida law (which governs each transaction, per the Defendant's own agreement), is wholly invalid.

5. Under either eventuality, each payment made to the Defendant, by the Debtor, constitutes a fraudulent conveyance and is thusly avoidable under both title 11 of the United States Code (the "Bankruptcy Code") and District of Columbia law.

6. The Debtor accordingly now brings suit to avoid at least $4,983,070.21 in fraudulent conveyances, seeking a money judgment as against the Defendant in the same sum.

**Parties**

7. The Debtor is Nevada corporation that petitioned for chapter 11 relief on September 4, 2026 and that—at all times since—has been a debtor-in-possession, serving pursuant to section 1107 of title 11 of the United States Code.

8. Cedar is a limited liability company, formed pursuant to the laws of the State of Florida on or about July 7, 2022, carrying on the business of entering into MCA agreements.

**Jurisdiction and Venue**

9. This Honorable Court enjoys jurisdiction over the instant proceeding pursuant to the allowances of section 1334 of title 28 of the United States Code, insofar as the causes of action set forth herein arise under title 11 of the Bankruptcy Code.

10. This Honorable Court further enjoys jurisdiction over the instant proceeding pursuant to the allowances of section 1332 of title 28 of the United States Code, insofar as this case is between citizens of different states and the amount in controversy exceeds Seventy Five Thousand Dollars and No Cents ($75,000.00).

11. Venue is properly laid in this Honorable Court pursuant to the allowances of section 1409 of title 28 of the United States Code insofar as the chapter 11 case of the Debtor is pending in this Honorable Court.

12. To whatever extent this case may be brought in the United States District Court for the District of Columbia, on account of there existing diversity jurisdiction *sub judice*, this case is nonetheless properly referred to this Honorable Court pursuant to the allowances of DCt.LBR 5011-1(a).

## General Allegations

13. Over the course of approximately 21 months, the Debtor and the Defendant entered into at least four "Standard Merchant Cash Advance Agreements" (the "Purchase Agreements"), pursuant to which the Debtor sold percentages of future, undefined receivables to the Defendant in exchange for cash.

14. The first Purchase Agreement, from December 2024, provided Cedar with an annualized return of approximately 95.6% on the $760,000.00 disbursed to the Debtor.

15. The second Purchase Agreement, from January 2025, provided Cedar with an annualized return of approximately 95.8% on the $1,496,250.00 disbursed to the Debtor.

16. The third Purchase Agreement, from November 2025, provided Cedar with an annualized return of approximately 74.2% on the $2,000,000.00 disbursed to the Debtor.

17. The fourth Purchase Agreement, from March 2026, provided Cedar with an annualized return of approximately 405% (not a typographical error) on the $980,000.00 disbursed to the Debtor.

18. Each of the Purchase Agreements is governed by the laws of the State of Florida.

19. In total, the Debtor remitted at least $4,983,070.21 to the Defendant, pursuant to the four aforesaid Purchase Agreements, during a span of just under two years.

## Count I: Fraudulent Conveyance
## (11 U.S.C. § 548)

20. The Debtor repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

21. The Debtor had financial liabilities that exceeded the Debtor's assets, from December 1, 2024 forward, and was thusly insolvent at the time of entering into each agreement with the Defendant.

22. The Debtor was without the ability to pay its debts, as they came due, at all times from December 1, 2024 forward.

23. Assuming, *arguendo*, the Purchase Agreements are *bona fide* sales agreements, the sale of future receivables was always made for markedly less than reasonably equivalent value.

24. Between December 13, 2024 and June 8, 2026, the Debtor paid the Defendant at least $4,983,070.21 pursuant to the Purchase Agreements.

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) avoid the Purchase Agreements, as well as all payments made thereunder, pursuant to the allowances of section 548(a)(1)(B) of title 11 of the United States Code; (ii) enter judgment in favor of the Debtor, and against the Defendant, in the sum of $4,983,070.21; and (iii) afford such other and further relief as may be just and proper.

**Count II: Fraudulent Conveyance**
**(11 U.S.C. § 544; DC Code § 28-3104)**

25. The Debtor repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

26. Each Purchase Agreement caused the Debtor to have remaining assets that were unreasonably small in relation to the obligations incurred thereunder, with the cash furnished through each such agreement being insufficient to retire the obligations simultaneously incurred therewith.

27. The Debtor was without the ability to pay its debts, as they came due, at all times from December 1, 2024 forward.

28. Each Purchase Agreement denoted the incursion of a debt beyond the Debtor’s ability to pay, with payments on each such Purchase Agreement necessarily coming at the expense of the timely retirement of the Debtor's other monetary obligations.

29. Assuming, *arguendo*, the Purchase Agreements are *bona fide* sales agreements, the sale of future receivables was always made for markedly less than reasonably equivalent value.

30. Between December 13, 2024 and June 8, 2026, the Debtor paid the Defendant at least $4,983,070.21 pursuant to the Purchase Agreements.

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) avoid the Purchase Agreements, as well as all payments made thereunder, pursuant to the allowances of section 544 of title 11 of the United States Code and section 28-3104 of the District of Columbia Code; (ii) enter judgment in favor of the Defendant, and against the Defendant, in the sum of $4,983,070.21; and (iii) afford such other and further relief as may be just and proper.

**Count III: Fraudulent Conveyance**
**(11 U.S.C. § 544; DC Code § 28-3105)**

31. The Debtor repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

32. The Debtor had financial liabilities that exceeded the Debtor's assets, from December 1, 2024 forward, and was thusly insolvent at the time of entering into each agreement with the Defendant.

33. The Debtor was without the ability to pay its debts, as they came due, at all times from December 1, 2024 forward.

34. Assuming, *arguendo*, the Purchase Agreements are *bona fide* sales agreements, the sale of future receivables was always made for markedly less than reasonably equivalent value.

35. The Debtor has been justly indebted to at least one creditor, at all times, from December 1, 2024 forward.

36. Between December 13, 2024 and June 8, 2026, the Debtor paid the Defendant at least $4,983,070.21 pursuant to the Purchase Agreements.

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) avoid the Purchase Agreements, as well as all payments made thereunder, pursuant to the allowances of section 544 of title 11 of the United States Code and section 28-3105 of the District of Columbia Code; (ii) enter judgment in favor of the Defendant, and against the Defendant, in the sum of $4,983,070.21; and (iii) afford such other and further relief as may be just and proper.

**Count IV: Fraudulent Conveyance**
**(11 U.S.C. § 548)**

37. The Debtor repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

38. In the alternative, if the Purchase Agreements with the Defendant did not represent sales of future receivables, the agreements where each a loan agreement governed by the laws of the State of Florida.

39. The interest rate under each of the Purchase Agreements is well in excess of the statutory rate of usury promulgated pursuant to chapter 687 of the Florida Statutes.

40. As usurious loan agreements, each of the foregoing agreements is unenforceable and a nullity.

41. The Debtor thusly made at least $4,983,070.21 in payments pursuant to unenforceable loan agreements that are nullities.

42. The Debtor did not receive reasonably equivalent value for the subject payments, insofar as they were made pursuant to agreements that are nullities.

43. The Debtor had financial liabilities that exceeded the Debtor’s assets, from December 1, 2024 forward, and was accordingly insolvent at the time the foregoing agreements were entered into.

44. The Debtor became further insolvent as a result of entering into each of the foregoing agreements.

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) avoid the Purchase Agreements, as well as all payments made thereunder, pursuant to the allowances of section 548(a)(1)(B) of title 11 of the United States Code; (ii) enter judgment in favor of the Debtor, and against the Defendant, in the sum of $4,983,070.21; and (iii) afford such other and further relief as may be just and proper.

**Count V – Unjust Enrichment**
**(District of Columbia Common Law)**

45. The Debtor repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

46. The Debtor paid at least $4,983,070.21 pursuant to the Purchase Agreements, with such payments constituting a legal benefit to the Defendant.

47. The Defendant has retained the foregoing benefits, continuing to hold the monies paid over by the Debtor.

48. It is inequitable for the Defendant to retain payments made pursuant to a series of agreements that provide for the Defendant to receive a return on investment—regardless of whether or not characterized as loans—at a rate of well in excess of 74%.

49. Specifically, the Purchase Agreements are either usurious loans that are nullities pursuant to their own choice of law provision or, alternatively, are so facially unconscionable as to offend notions of equity.

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) enter judgment against the Defendant, and in favor of the Debtor, in the sum of $4,983,070.21; and (ii) afford such other and further relief as may be just and proper.

**Count VI: Securities Fraud**
**(Securities and Exchange Commission Rule 10b-5)**

50. The Debtor repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

51. Cedar drafted each Purchase Agreement.

52. Cedar presented each Purchase Agreement to the Debtor, for execution.

53. The Debtor did not edit any Purchase Agreement.

54. Each of the Purchase Agreements contain various material misrepresentations and omissions.

55. Specifically, the Purchase Agreement provides, *inter alia*, "the transaction encompassed by this Agreement is not a loan and does not have an interest rate," when the transaction occasioned by the Purchase Agreement is, in actuality, a loan.

56. It was the intent of Cedar that the at-issue transactions be, materially, loans, with Cedar being in the business of lending monies and disguising such loans as future receivables purchases.

57. Specifically, despite being loan, the Purchase Agreements do not set forth an interest rate and thereby omits a material fact, despite providing, *inter alia*, "[a]lthough certain jurisdictions require the disclosure of an Annual Percentage Rate or APR in connection with this Agreement, those disclosures do not change the fact that the transaction encompassed by this Agreement is not a loan and does not have an interest rate."

58. Cedar made these misrepresentations and omissions with scienter, as Cedar is motivated to deceive merchants (like the Debtor).

59. Specifically, Cedar would not garner as much business if Cedar disclosed transactions to actually be loans, because presentation of the associated interest rates would cause potential counterparties to decline to enter into agreement on such conscious-shocking terms.

60. Specifically, the Debtor—a publicly traded entity subject to public scrutiny—would not have agreed to borrow money, on four separate occasions, at interest rates in excess of 74% per annum.

61. It is further evident Cedar made these misrepresentations and omissions with scienter insofar as the inclusion of these misrepresentations—and the exclusion of these omitted material terms—from Cedar's standardized agreement permits Cedar to conduct business in states with commercial usury limits, by allowing Cedar to feign to be a purchaser and not a lender.

62. The Debtor has suffered an economic loss on account of the Purchase Agreements by paying to Cedar monies of not less than $4,983,070.21.

63. A loan is a security within the definitional ambit of section 78c(a)(10) of title 15 of the United States Code.

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) enter judgment against Cedar, and in favor of the Debtor, in a sum equal to all monies paid to the Defendant pursuant to any Purchase Agreements; and (ii) afford such other and further relief as may be just and proper.

**Count VII: Usury**
**(Fla. Stat. 687.071)**

64. The Debtor repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

65. At least the first three Purchase Agreements constitute criminal usury—of the third degree, felonious variety—under section 687.071(3) of the Florida Statutes.

66. Pursuant to section 687.071(7) of the Florida Statutes, a criminally usurious loan is not collectable and, in the words of one court, "[t]he civil penalty for criminal usury is . . . forfeiture of the right to collect the debt at all." *Velletri v. Dixon*, 44 So. 3d 187, 189 (Fla. 2d DCA 2010).

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) enter judgment against Cedar, and in favor of the Debtor, in a sum equal to all monies paid to the Defendant pursuant to any Purchase Agreements; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: November 15, 2026

By: /s/ Maurice B. VerStandig

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel to the Debtors*