**CAPLIN & DRYSDALE, CHARTERED**
Jeffrey A. Liesemer
Kevin M. Davis
Lucas H. Self (admitted *pro hac vice*)
Alec G. Schwartz
1200 New Hampshire Ave. NW, 8th Floor
Washington, DC 20036
Telephone: (202) 862-5000
Facsimile: (202) 429-3301
jliesemer@capdale.com
kdavis@capdale.com
lself@capdale.com
aschwartz@capdale.com
*Counsel to ACP Agency LLC and*
*Acme Credit Partners LLC*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re: | Chapter 11 |
| SYNERGY REORG, LLC, *et al.*, | Case Nos. 26-465-ELG |
| Debtors.[1] | |

**SUPPLEMENTAL OBJECTION OF ACP AGENCY LLC, AND ACME CREDIT PARTNERS, LLC TO THE DEBTORS' MOTION TO APPROVE COMPROMISE WITH JACK ROSS AND MOTION TO SHORTEN TIME**

ACP Agency LLC and Acme Credit Partners LLC (collectively, "**ACP**"), by and through its undersigned counsel, hereby submits this supplemental objection (the "**Supplemental Objection**") to the previously filed *Objection of ACP Agency LLC, and Acme Credit Partners,*

[1] The debtors in these cases are Synergy Reorg, LLC.; Synergy CHC Corp.; Synergy CHC Inc.; Hand MD Corp.; Synergy CHC Mexico; and NomadChoice Pty, Ltd. (collectively, "**Debtors**").

*LLC to the Debtors' Motion to Approve Compromise with Jack Ross* (Dkt. No. 22)[2] (the "**Objection**"),[3] and in response to the *Supplement to Motion to Approve Compromise with Jack Ross* (Dkt. No. 79) ("**Supplement**"). ACP further opposes the *Motion to Shorten Time* (Dkt. No. 81) ("**Motion to Shorten**"). In support of its Supplemental Objection, ACP states as follows:

## PRELIMINARY STATEMENT

The Supplement filed by the Debtors manages to violate the Due Process Clause, the Bankruptcy Code, the Bankruptcy Rules, the Foreclosure and Acceptance Agreement, and this Court's Order entering the same all in just five pages. The procedurally deficient and unsound settlement set forth in the Supplement must be denied. The Debtors do not dispute that ACP asserts that it has perfected liens on the intellectual property that they now seek to somehow sell to Mr. Ross free and clear of ACP's liens. Nor do they dispute that they have failed to institute the prerequisite adversary proceeding to challenge the validity of these liens. But the Debtors cannot use a Rule 9019 settlement as a basis to seek substantive relief restricted to Sections 363 and 544 of the Bankruptcy Code, much less can they do so in a mere "supplemental" motion. What is more, the Debtors have not valued—or even allocated what portion of the proffered settlement funds would go toward the purchase of—the relevant intellectual property. Consequently, it is possible that the $200,000 "deal" set forth in the Supplement is actually *worse* than the prior proposed settlement, which did not include Mr. Ross receiving the relevant intellectual property, much less free and clear of all claims and interests.

[2] On September 22, 2026, this Court entered the *Order Granting Motion for Joint Administration* designating Case No. 26-465 as the "Lead Case" in these proceedings. *See* Dkt. No. 51. Unless otherwise noted, "Dkt. No." refers to the docket in the Lead Case.

[3] Terms used but not otherwise defined herein shall have the meaning ascribed to them in the Objection.

Each of these problems with the Supplement should be fatal to the proposed settlement. But, at the very least, these problems compound the insurmountable flaws with the rushed, cursorily investigated, and deficient insider settlement proposed by the Debtors, who cannot come close to showing the deal is appropriate under heightened scrutiny. Indeed, ACP maintains in full all of its prior objections to the settlement, as each also applies to the new proposed settlement and warrants its denial.

## **BACKGROUND**

ACP fully incorporates the factual background in its Objection, and the evidence adduced at the hearing on September 11, 2026.

On October 2, 2026, this Court entered the *Order Granting Motion to Abandon Encumbered Property, Lift the Automatic Stay, and Authorize and Approve the Foreclosure and Acceptance Agreement* (Dkt. No. 69), which incorporated the *Acceptance of Collateral in Partial Satisfaction Agreement (United States and Canada)* ("**Foreclosure and Acceptance Agreement**") (Dkt. No. 69-1).

On November 6, 2026, the Debtors filed the Supplement, whereby they purport to not only settle the claims against Mr. Ross contemplated in the Debtors' *Motion to Approve Compromise with Jack Ross* (Dkt. No. 11), but also sell estate property that is encumbered by perfected liens of ACP.

On November 12, 2026, the Debtors filed the Motion to Shorten, where they admit for the first time that they are seeking "some relief . . . that is grantable under section 363 of the Bankruptcy Code. And that, in turn, requires an elongated notice period." Motion to Shorten at 2. Even if the Debtors could show that shortened notice to consider wholly new relief under section 363 is appropriate under the circumstances (they cannot), this still would not cure the Debtors'

failure to institute an adversary proceeding regarding the validity of ACP's liens, which the Motion to Shorten also makes clear that they are challenging. *Id.*

## ARGUMENT

### I. The Debtors' Supplement Is Procedurally Defective and Should Not Be Heard on Shortened Notice

The Court should deny outright the relief sought in the Debtors' Supplement due to its failure to provide procedural safeguards to all creditors and parties in interest.[4] The Supplement seeks wholly new relief that was nowhere contemplated in the Debtors' original 9019 Motion. *See In re Auto-Train Corp., Inc.*, 810 F.2d 270, 278 (D.C. Cir. 1987) (notice of a proceeding in bankruptcy, *inter alia*, "must reasonably inform the recipient of the nature of the upcoming proceeding"). The Debtor (1) seeks to strip ACP's liens from certain non-U.S. and Canadian intellectual property and (2) sell those assets free and clear without any marketing process or valuation of those assets. At a minimum, such extraordinary relief should not be buried in a supplement and should be re-presented in procedural compliance with the requirements of section 363 and section 544. *See, e.g.*¸ *In re Auto-Pak, Inc.*, 52 B.R. 3, 5 (Bankr. D.D.C. 1985) (denying a lift stay where the defendant failed to make the request in a separate motion and instead "buried [it] in a reply to an opposition to a motion seeking entirely different relief"). As explained below, seeking relief in this manner also violates the previously Court approved Foreclosure and Acceptance Agreement where the Debtors agreed not to sell "Non-Agreed Assets" (which includes the foreign intellectual property at issue in the Supplement) unless and until the court finds it to

---

[4] ACP notes for the Court that its objection is based on the description of the revised settlement agreement in the Supplement. As if the due process, procedural and the other concerns set forth in this Supplemental Objection were not enough, the Debtors have not even filed the proposed revised settlement agreement. Hence, to the extent the settlement agreement is actually submitted, ACP reserves its right to object to other terms or provisions that may be contained therein.

constitute an Excluded Asset (*i.e.*, collateral in which ACP does *not* hold a perfected lien). *See* Foreclosure and Acceptance Agreement Dkt. 69-1 ¶ 3(b).

Apparently, realizing the deficiency of the Supplement, the Debtors have filed a Motion to Shorten almost a week later and without prior notice to ACP. The Motion to Shorten admits that the Debtors are (improperly) seeking to use the Supplement to turn a Rule 9019 settlement motion into a section 363 sale motion and "a mechanism to resolve the estate's ownership of certain foreign intellectual property marks." Motion to Shorten at 2. This is not a mere tweak to a previously noticed settlement offer. It is a wholly different transaction—indeed, now a set of transactions—for which the Code and Rules require wholly different processes and standards. Accordingly, the Motion to Shorten makes crystal clear that both it and the Supplement are procedurally deficient and inappropriate.

What is more, even if any part of the Supplement were not procedurally deficient, nowhere in the Motion to Shorten do the Debtors provide a single basis for seeking the new and extraordinary relief proposed in the Supplement on an expedited basis.

## II. Any Determination of the Perfection of ACP's Liens Must Be Made Via Adversary Proceeding

The Debtors' Supplement is deficient to the extent it seeks a determination that ACP's liens on the intellectual property that it purports to sell are not perfected. It is undisputed that ACP maintains that its liens are validly perfected. Under Federal Rule of Bankruptcy Procedure 7001(b), "a proceeding to determine the validity, priority, or extent of a lien or interest in property" must be brought via an adversary proceeding.[5] *See, e.g.*, *In re Kinion*, 207 F.3d 751, 757 (5th Cir.

---

[5] The two exceptions enumerated in Rule 7001(b), proceedings under Rule 3012(b) (determining the amount of a secured claim) and Rule 4003(d) (avoiding a lien on exempt property) do not apply.

2000) ("[I]f at some point the [debtors] believed they had grounds to challenge the secured status of [a creditor's] loan, the procedure sanctioned by the Bankruptcy Rules calls for an adversary proceeding").[6]

The Debtors admit that "the 9019 Motion is assuredly *not* a section 544 adversary proceeding" (Supplement at 3) but nonetheless ask the Court to approve a settlement that would require a ruling that ACP's asserted liens are not perfected and hence can be avoided. Allowing the Debtors to go forward in such a summary fashion would strip important procedural protections inherent in adversary proceedings from ACP. *See In re Mansaray-Ruffin*, 530 F.3d 230, 242 (3d Cir. 2008) ("[W]here the Rules require an adversary proceeding—which entails a fundamentally different, and heightened, level of procedural protections—to resolve a particular issue, a creditor has the due process right not to have that issue resolved without one."). Allowing them to do so on shortened notice would only exacerbate that injury to ACP.

The Debtors' arguments that ACP's liens are unperfected as to the non-U.S. and Canadian intellectual property are without merit.[7] But regardless, such a determination cannot be made in

---

[6] *Fed. Nat. Mortg. Ass'n v. CG Bellkor, LLC*, 980 F. Supp. 2d 703, 711 (E.D. Va. 2013) ("[D]ebtors wishing to challenge the validity of a lien must file an adversary action against the lienholder.") *aff'd sub nom. Fed. Nat. Mortg. Ass'n v. Bell*, 576 F. App'x 196 (4th Cir. 2014); *In re Seibold*, 351 B.R. 741, 747 (Bankr. D. Idaho 2006) ("[A]n adversary proceeding is necessary to obtain a judgment or order of the Court deeming an otherwise enforceable lien 'avoided.'") (internal quotation omitted).

[7] The Debtors assert that ACP's security interests in the intellectual property were never perfected because (i) foreign governments would not regard a Nevada Uniform Commercial Code ("**UCC**") filing as binding on trademarks they register, (ii) ACP separately recorded its security interests in the United States and Canada, and (iii) a judgment creditor in a foreign country could have obtained a lien on the foreign trademarks under that country's law. The Debtors cite no authority for their position and acknowledge that there does not appear to be any case law on the issue. The reason for such absence of case law on the issue is plain: each of these arguments goes to whether ACP could *enforce* its security interests in a foreign jurisdiction, not whether those security interests were *perfected*. Section 544(a)(1) asks only whether a security interest was perfected under the governing law when the trustee became a lien creditor on the petition date, and so questions as to enforcement are irrelevant.

the context of approving a Rule 9019 settlement; indeed, the Code demands that it be made only in an adversary proceeding.

## III. The Proposed Settlement Violates the Foreclosure and Acceptance Agreement and This Court's Order Approving the Foreclosure and Acceptance Agreement

The Supplement seeks to sell assets subject to the Foreclosure and Acceptance Agreement contrary to the terms of that agreement. The Foreclosure and Acceptance Agreement states that until it is determined that ACP does not possess a valid lien on the foreign intellectual property, "no Grantor [Debtor] shall sell, transfer, encumber or otherwise dispose of any Non-Agreed Asset, or apply, disburse, set off or otherwise use any Non-Agreed Asset consisting of cash or funds on deposit, in each case without the prior written consent of the Agent [ACP]." Foreclosure and

---

The relevant question is whether the secured party perfected under Article 9 of the UCC as enacted in the Debtors' jurisdiction of organization, and not any other jurisdiction (including any U.S. federal jurisdiction or any foreign jurisdiction). *See, e.g., Morris v. Hicks (In re Hicks)*, 491 F.3d 1136, 1140 (10th Cir. 2007) ("the rights of [a hypothetical lien creditor] are determined under state law"); *In re Cybernetic Servs., Inc.*, 252 F.3d 1039, 1043 (9th Cir. 2001) (holding, where a secured creditor recorded its security interest in a patent under Article 9 of California's UCC, that "neither the Patent Act nor Article 9" required a secured party to record its security interest in a patent with the U.S. Patent and Trademark Office to prevail over a chapter 7 trustee asserting the rights of a hypothetical lien creditor under section 544(a)(1)); *In re Kors, Inc.*, 819 F.2d 19, 22–23 (2d Cir. 1987) ("Once the trustee has assumed the status of a hypothetical lien creditor under § 544(a)(1), state law is used to determine what the lien creditor's priorities and rights are"); *In re Duplan Corp.*, 455 F. Supp. 926, 929 (S.D.N.Y. 1978) (holding, under the former Bankruptcy Act's predecessor to section 544(a)(1), that a foreign creditor's security interest in goods delivered to the debtor was not perfected, and could not prevail over the trustee's lien, where the creditor did not file a prepetition financing statement, even where such interest would be valid and enforceable under English and Netherlands law without a financing statement). If a U.S. federal registry such as the U.S. Patent and Trademark Office does not displace Article 9 as against the trustee, a foreign registry, which falls outside Article 9 altogether, does not either. D.C. Code Section 28:9-301, the District of Columbia's enactment of UCC Section 9-301, provides that, "while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral" such as general intangibles. ACP perfected its lien by filing UCC-1 financing statements in Nevada and Delaware before the petition date, and its security interests are perfected as against a hypothetical judicial lien creditor under section 544(a)(1), regardless of where that lien creditor is located. Nothing in the Supplement (or raised previously by the Debtors) is contrary to this statement.

Acceptance Agreement ¶ 3(b). ACP has not consented to the transfer of the foreign intellectual property (a Non-Agreed Asset) proposed in the Supplement; the Debtors, therefore, cannot go forward on the Supplement until there is a determination that ACP does not possess a valid lien on that foreign intellectual property. Consequently, the Supplement violates the Foreclosure and Acceptance Agreement and the order approving it.

While the Foreclosure and Acceptance Agreement provides that the parties "may seek relief from the Bankruptcy Court to make such determination [as to the validity of ACP's liens]" (*id.*), it does not purport to short-circuit the procedural requirements for seeking relief from the Bankruptcy Court, *i.e.*, any relief must be sought through an adversary proceeding, as discussed above. Rather it merely confirms that the Court has jurisdiction over this particular determination. *Compare id.* ¶ 18 (otherwise submitting parties to the jurisdiction of state and federal courts in New York).

## IV. A Section 363 Sale Is Premature until the Court Determines Whether ACP's Liens Are Perfected

The Court has already entered an order "authorizing the abandonment of all estate property that is encumbered by the perfected liens of [the Debtors'] secured creditors [ACP]." Dkt. No. 69 at 1. If ACP's liens are perfected, then the collateral is automatically abandoned to ACP, and no section 363 sale can be brought because the collateral is no longer part of the estate. By assuming the foreign intellectual property remains in the estate, the Supplement gets the order of operations backwards. Only once the Court makes a determination that ACP does not have a perfected lien in the collateral at issue (through an adversary proceeding) can the Debtors even attempt a section 363 sale. For the reasons explained in footnote 7 *supra*, ACP's liens are perfected, but until the Court makes that determination, the section 363 sale is premature.

## V. The Supplement Improperly Transforms the 9019 Settlement into a Section 363 Sale

Even if the Court were to find that ACP liens are not perfected as to the collateral at issue and consider the section 363 relief sought by the Debtors, the Debtors have not come close to satisfying the requirements for a section 363 sale to an insider. The Debtors' Supplement goes far beyond the relief sought in the Debtors' original 9019 motion by purporting to sell foreign intellectual property—property subject to ACP's liens. "When a settlement agreement in a bankruptcy proceeding involves the sale of the debtor's property, such agreement triggers the requirements of § 363." *Matter of VCR I, L.L.C.*, 922 F.3d 323, 327 (5th Cir. 2019). The Debtors do not invoke, much less satisfy, the requirements of a section 363 sale.[8]

The Debtors have not satisfied the 21-day notice requirement for a sale in Rule 6004(a) and Rule 2002(a)(2) and filed a belated Motion to Shorten to attempt to cure that deficiency. But the Debtors have not shown that expedited consideration of a sale of the intellectual property is warranted.[9] To the contrary, through their bait-and-switch, the Debtors are attempting to deprive ACP of its lien and the estate of the intellectual property with improper notice, no valuation, and no showing that the requirements of section 363(b) have been met. "The need for expedition . . . is not a justification for abandoning proper standards." *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 450 (1968)).

---

[8] Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]" 11 U.S.C. § 363(b).

[9] *See, e.g.*, *Matter of A. Cordero Badillo, Inc.*, No. 10-10705(SEK), 2012 WL 13341730, at *1 (Bankr. D.P.R. Nov. 28, 2012) (refusing to shorten notice of a sale where there was "no evidence of the 'emergency' that requires such drastic action; no evidence of liens . . . ; no evidence that the sale price is indeed fair market vale and beneficial to creditors").

Accordingly, the relief sought in the Supplement should be summarily denied for this independent reason.

In considering whether to approve the sale, the Court must consider whether the purchase price is fair and whether the buyer acted in good faith. *See, e.g.*, *In re Exaeris, Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008). Moreover, under *Pepper v. Litton*, dealings between insiders and a bankrupt company "are subject to rigorous scrutiny," and when their agreements are "challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein." 308 U.S. 295, 306 (1939). The Debtors have not even attempted to show that the proposed sale holds up under heightened scrutiny.

### A. The Debtors Have Not Provided Sufficient Evidence of the Value of the Assets

There has been no marketing of the intellectual property and no bidding on the intellectual property. The Debtors have the burden of demonstrating that the sale price is fair, but they have offered no valuation analysis regarding the assets to be purchased. *See, e.g.*, *Exaeris*, 380 B.R. at 745 ("It is the burden of the proponents of the [s]ale to establish that the price is fair which would require information on the value of the assets being sold, including the business, claims being released, inventory, and the like."); *In re Planned Sys., Inc.*, 82 B.R. 919, 923 (Bankr. S.D. Ohio 1988) (noting that absent evidence of value court cannot approve a proposed sale as in the best interest of an estate); s*ee In re Diocese of Camden*, 653 B.R. 722, 740 (Bankr. D.N.J. 2023) ("The [sale proponent] must provide some evidence regarding the value of the asset to be sold in order for the court to judge the fairness of the sale.") (citation omitted). Here, the Debtors have offered no evidence of the valuation of the intellectual property; indeed, the Debtors fail to even set forth what portion of $200,000 offered by Mr. Roth is attributable to the sale of the relevant intellectual property assets.

Without a valuation of the intellectual property or an allocation of the proceeds between the intellectual property and causes of action, it is impossible to assess whether the proposed sale is fair. What is more, it is impossible to determine whether the "increased monetary payment" (Supplement at 2) even represents a material improvement over the prior proposed settlement. Thus, the Debtors' assertion that the deal is "uniformly *more* beneficial to the estate creditors" (Motion to Shorten at 2) is unsupported.

**B. The Debtors Have Not Established the Good Faith of the Purchaser**

"[W]hen a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is required to make a finding with respect to the 'good faith' of the purchaser." *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986). The burden of establishing good faith lies squarely with the movant. *T.C. Invs. v. Joseph* (*In re M Cap. Corp.)*, 290 B.R. 743, 745 (B.A.P. 9th Cir. 2003) (holding that "the opponent of good faith does not have the burden to demonstrate the absence of good faith. Without the requisite determination, we do not assume . . . good faith"). The Debtors have not shown the good faith of Mr. Ross, who is seeking relief from claims of misconduct, including siphoning millions of dollars from the Debtors and moving assets in an attempt to evade ACP's liens, while at the same time seeking to secure estate property free and clear of ACP's liens through the proposed insider settlement.

**C. The Debtors Have Not Established the Necessary Requirements for a Sale Free and Clear Under Section 363(f)**

The Supplement asserts that the assets should be transferred free and clear of liens under § 363(f) (Supplement at 2), without any analysis or citation to case law. Once again, it is the burden of the Debtors to establish that they are entitled to a sale free and clear under § 363(f). *See, e.g., In re Mitchell*, 525 B.R. 38, 41-42 (Bankr. M.D.N.C. 2014) (debtor bears the burden); *In re*

*Smith*, No. BR 13-61627-TMR7, 2014 WL 738784, at *3 (Bankr. D. Or. Feb. 26, 2014) (same). The Debtors have not met that burden.

## VI. The Debtors' Other Justifications for the Settlement Fail

For all of the reasons stated in the Objection, as well as the procedural deficiencies discussed above, the settlement proposed in the Supplement cannot be approved. The Debtors' additional arguments in favor of the settlement do not hold up to scrutiny either.

### A. The Debtors' Purported Indemnification Obligations Do Not Justify the Settlement

The Debtors' claim that Mr. Ross's right to indemnification justifies the settlement (Supplement at 5) should be given little, if any, weight. In the first instance, the Debtors have not produced or put into evidence the bylaws from which the Debtor's purported indemnification rights arise. Thus, it is impossible to fully assess the scope of any indemnification rights or whether indemnification would even apply. Moreover, because the actions of Mr. Ross occurred prepetition, he would have at most a general unsecured claim for indemnification that would at most share pro rata with other unsecured creditors. *See In re Manville Forest Prods. Corp.*, 209 F.3d 125, 129 (2d Cir. 2000) (holding that a "right to payment based on a written indemnification contract arises at the time the indemnification agreement is executed" and is thus a prepetition claim); *In re Hemingway Transp., Inc.*, 954 F.2d 1, 8 (1st Cir. 1992) (holding that "an unliquidated, contingent right to payment under a prepetition indemnification agreement executed by the debtor [arose prepetition], even though the triggering contingency does not occur until *after* the filing of the petition under the Bankruptcy Code"). And this is assuming that the indemnification rights would not be subject to disallowance or subordination.

### B. The Doctrine of Champerty Does Not Bar the Sale of the Causes of Action Against Mr. Ross to Interested Parties

Assuming that an interested purchaser of the causes of action against Mr. Ross was a creditor of the Debtors, then the doctrine of champerty would not bar a purchaser from pursuing the causes of action against Mr. Ross. *See, e.g.*, *In re Quivus Sys., LLC*, No. 17-00119, 2017 WL 5198117, at *5 (Bankr. D.D.C. Nov. 9, 2017) (upholding a chapter 7 trustee's sale of the debtor's cause of action to "a creditor of the estate and a holder of a majority interest in the debtor, [who] has a financial interest in the debtor's claims succeeding, so the sale at issue is not the type of sale that the doctrine of champerty is intended to prevent."). Indeed, the Debtors' own case notes that champerty does not apply where a party has "any interest whatever in the subject of the suit . . . . Whether this interest is great or small, vested or contingent, certain or uncertain, it affords a just reason to him who has such an interest to participate in the suit of another, who also has or claims some right to the same subject." *Papageorge v. Banks*, 81 A.3d 311, 319 (D.C. 2013) (internal quotation omitted). In any event, champerty is a risk assumed by the buyer of the causes of action, not the estate.

## RESERVATION OF RIGHTS

ACP expressly reserves the right to supplement or amend this objection based on any new information, evidence, or change in circumstances. As noted in footnote 4, the Debtors have not even submitted the agreement for which they are seeking to approve. Hence, to the extent the settlement agreement is actually submitted, ACP reserves its right to object to other terms or provisions that may be contained therein.

## CONCLUSION

For the reasons set forth above, the Court should deny the Motion to Shorten and the Settlement Motion even as augmented by the Supplement.

Dated: November 16, 2026

Respectfully submitted,

**CAPLIN & DRYSDALE, CHARTERED**

_/s/ Kevin M. Davis_______________
Jeffrey A. Liesemer
Kevin M. Davis
Lucas H. Self (admitted *pro hac vice*)
Alec G. Schwartz
1200 New Hampshire Ave NW, 8th Floor
Washington, DC 20036
Telephone: (202) 862-5000
Facsimile: (202) 429-3301
jliesemer@capdale.com
kdavis@capdale.com
lself@capdale.com
aschwartz@capdale.com

*Counsel to ACP Agency LLC and Acme Credit Partners LLC*